

FILED
JUL 01 2008
~MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Mark J. Kronenberg,
Plaintiff

v.

Internal Revenue Service (IRS),
Defendant

*United States, defendant*

)
)
)
)
)
)
)
)

United States District Court
Northern District of Illinois

08 C 50 1 28

## COMPLAINT

1. Through appeal of an IRS Letter of Determination, I seek a declaratory judgment from this court regarding my status as non-US Citizen and non-Resident and thereby non-taxpayer.

2. I am presently not filing quarterly estimated tax payments in anticipation of not filing a Form 1040 for 2008 earnings. If I am required by law to make these filings, I will incur penalties and interest on the unpaid estimated income taxes. I seek a judgment from this court at this time to avoid these damages.

3. I wish to be recognized as free to pursue my Christian religious conviction to renounce the Oath of Allegiance to the US and terminate my status as state resident while remaining an inhabitant without juristic benefits. I desire to pursue a livelihood to support my family and live peaceably with my fellow Americans within the geographical area defined as the United States of America.

4. In a letter to the IRS dated 10/13/06 and titled "Notice of Citizenship and Residency Renunciation, Rejection of Benefits, Notice as Non-Taxpayer" (Attachment 5.d.), I explain why I believe my status of taxpayer has changed to non-taxpayer.

5. In response, the IRS sent me three documents:
   a. A determination letter numbered LTR3175C and dated 02/09/07 (Attachment 1). In this letter, the IRS states "We have determined that the arguments you raised are frivolous and have no basis in law."
   b. Publication 2105 (Rev. 4-2006) titled "Why do I have to Pay Taxes?" (Attachment 2)
   c. "The Truth About Frivolous Tax Arguments" dated Nov 30, 2007 (Attachment 3)

6. In these documents, the IRS addresses an array of frivolous arguments. My argument regarding my status change to non-citizen and non-resident is not listed among the frivolous arguments. The IRS has not demonstrated why my argument is frivolous and without basis in law. I believe my argument has a basis in law as presented in Attachments 5 and 6.

7. I have appealed to the IRS regarding the Letter of Determination through a series of phone calls. In response, the IRS has provided no opportunity for a formal appeal.

## FACTS UPON WHICH THE CLAIM IS BASED

8. An individual such as I (Attachment 4, Birth Certificate), born within the several states of America, is not compelled by the 14th Amendment of the US Constitution or any other law to be a citizen or resident and is free to choose to live as an inhabitant without juristic benefits. Such an inhabitant has forfeited all taxable benefits and services.

9. A public statement filed in a timely manner documenting the state of mind of an individual who intends to forfeit taxable benefits and services rebuts the presumption of state residency and US citizenship.

10. Statements documenting my state of mind were timely filed with the Carroll County, IL Recorder in 2006 and 2007 (Attachments 5, 6).

11. As of 01/01/08, I have waived, forfeited and rejected all federal, state and local benefits and services including but not limited to:
    a. Bank accounts and other financial accounts
    b. Professional engineering license
    c. Voter's registration
    d. Right to sue in federal and state courts
    e. Judicial enforcement of private contracts
    f. Application for a passport
    g. Police protectorate benefits including US Marshals, state and local police, fire protection
    h. Social Security and other state and federal welfare benefits (Attachment 5b)
    i. Employment protections
    j. Corporate ownership
    k. Public school system and Public Library
    l. Insurance policies (except automobile liability which is required by law)
    m. Beneficent taxable commercial status on driver's license (Attachment 7)
    n. Admiralty benefits including limited debt liability and protective benefits of the public trust (Attachment 5e)
    o. Marriage license and related family health and welfare benefits and enforcements (Attachment 6a)
    p. Holder in Due Course of Federal Reserve Notes (Attachment 5c)

12. The jurisdiction of state and federal income tax laws apply to US Citizens and Resident Aliens.

13. I believe, to the best of my knowledge that I am accepting no benefits or services that would identify me as a US Citizen, State Citizen or a Resident Alien, thereby terminating all corresponding contracts for Failure of Consideration. I intend to maintain this status for the remainder of my life.

14. I have paid all taxes due as of 12/31/07 and have no other outstanding obligations to the US, any of the several states or municipalities.

15. Wherefore, on 01/01/08 my status as taxpayer has changed to non-taxpayer. I demand judgment for the recognition by the US and IRS as a non-taxpayer.

Signed: _____*Mark J Kronenberg*_____          Date: _*6/30/08*_
Mark J. Kronenberg

Non-Residential Address:
P.O. Box 88
Milledgeville, IL 61051

Non-Commercial , Non-Residential Phone No.
815-535-3914

INDEX TO ATTACHEMENTS

1. Internal Revenue Service Determination Letter LTR3175C, Dated 02/09/07
2. Internal Revenue Service Publication 2105 revision 4-2006 "Why Do I Have To Pay Taxes?"
3. Internal Revenue Service document "The Truth About Frivolous Tax Arguments" Dated November 30, 2007
4. Birth Certificate, Mark James Kronenberg
5. Notice, County Record Book 868 Page 01 Dated 11/06/06
   a. Objection to the Assertion of Beneficent Taxable Juristic Commercial Status on Driver's License
   b. Social Security Waiver, Forfeiture and Rejection of Benefits
   c. Notice of Objection and Protest Use of Federal Reserve Notes
   d. Notice of Citizenship and Residency Renunciation, Rejection of Benefits, Notice as Non-Taxpayer
   e. Notice of Severance, Waiver, Forfeiture, and Rejection of Admiralty Benefits
6. Notice, County Record Book 912 Page 45 Dated 10/12/07
   a. Rejection and Waiver of State Protectorate Benefits for Married Persons and Lawful Children
7. State of Illinois, Application for Drivers License, Dated 10/13/06, with Attachment – Exhibit A, "Objection to the Assertion of Beneficent Taxable Juristic Commercial Status on Driver's License"

1

OGDEN   UT   84201-0030

_____  MARK J & KIMBERLY S KRONENBERG
_____  31198 IL ROUTE 40
_____  MILLEDGEVILLE   IL   61051-9324982

Dear Taxpayer:

    This is in reply to your correspondence dated Dec. 11, 2006.

    We have determined that the arguments you raised are frivolous and
have no basis in law.  Federal courts have consistently ruled against
such arguments and imposed significant fines for taking such frivolous
positions.

    You can obtain IRS Publication 2105, Why do I Have to Pay Taxes?,
from our internet website at www.irs.gov/pub/irs-pdf/p2105.pdf.  We
also refer you to a document entitled The Truth About Frivolous Tax
Arguments.  It is also on our website at www.irs.gov/pub/irs-utl/
friv_tax.pdf.  If you do not have internet access, you can obtain
copies of these documents from your local IRS office.

    There are some people who encourage others to violate our nation's
tax laws by arguing that there is no legal requirement for them to
file income tax returns or pay income taxes.  These people base their
arguments on legal statements taken out of context and on frivolous
arguments that have been repeatedly rejected by federal courts.
People who rely on this kind of information can ultimately pay more in
taxes, interest and penalties than they would have paid simply by
filing correct tax returns.

    People who violate the tax laws also may be subject to federal
criminal prosecution and imprisonment.  Information about the IRS's
criminal enforcement program is available on the internet at
www.irs.gov.  Once there, enter the IRS keyword: fraud.

    The IRS is working with the United States Department of Justice
and state taxing authorities to ensure that all taxpayers pay their
lawful share of taxes and to seek criminal indictments or civil
enforcement actions against people who promote or join in abusive and
fraudulent tax schemes.

    The claims presented in your correspondence do not relieve you
from your legal responsibilities to file federal tax returns and pay
taxes.  We urge you to honor those legal duties.

    If you persist in sending frivolous correspondence, we will not
continue to respond to it.  Our lack of response to further

```
                                          0469004352
                        Feb. 09, 2007  LTR 3175C   0
                        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  000000 00 000
                                          00014232
```

MARK J & KIMBERLY S KRONENBERG
31198 IL ROUTE 40
MILLEDGEVILLE   IL   61051-9324982

correspondence does not in any way convey agreement or acceptance of
the arguments advanced.  If you desire to comply with the law
concerning your tax liability, you are encouraged to seek advice from
a reputable tax practitioner or attorney.

    This letter advises you of the legal requirements for filing and
paying federal individual income tax returns and informs you of the
potential consequences of the position you have taken.  Please observe
that the Internal Revenue Code sections listed below expressly
authorize IRS employees that act on behalf of the Secretary of the
Treasury to: 1.)examine taxpayer books, papers, records, or other data
which may be relevant or material; 2.) issue summonses in order to
gain possession of records so that determinations can be made of the
tax liability or for ascertaining the correctness of any return filed
by that person; and 3.) collect any such liability.

General Information on Filing Requirements and Authority to Collect
Tax

    Title 26, United States Code
        Section 6001  Notice or regulations requiring records,
        statements, and special returns
        Section 6011  General requirement of return, statement, or list
        Section 6012  Persons required to make returns of income
        Section 6109  Identifying numbers
        Section 6151  Time and place for paying tax shown on returns
        Section 6301  Collection Authority
        Section 6321  Lien for taxes
        Section 6331  Levy and distraint
        Section 7602  Examination of books and witnesses

INTERNAL REVENUE CODE SECTION 6702 (FRIVOLOUS INCOME TAX RETURN)
PROVIDES:

CIVIL PENALTY - If -
    (1)  any individual files what purports to be a return of the tax
         imposed by subtitle A but which -
         (A)  does not contain information on which the substantial
              correctness of the self-assessment may be judged, or
         (B)  contains information that on its face indicates that
              the self-assessment is substantially incorrect; and
    (2)  the conduct referred to in paragraph (1) is due to -
         (A)  a position which is frivolous, or
         (B)  a desire (which appears on the purported return) to
              delay or impede the administration of Federal income
              tax laws, then such individuals shall pay a penalty

```
                                           0469004352
                        Feb. 09, 2007  LTR 3175C   0
                        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  000000 00 000
                                           00014233
```

MARK J & KIMBERLY S KRONENBERG
31198 IL ROUTE 40
MILLEDGEVILLE   IL   61051-9324982

            of $500.00

PENALTY IN ADDITION TO OTHER PENALTIES - The penalty imposed by
subsection (a) shall be in addition to any other penalty provided
by law.

    If you any have questions, please write to us at the address
shown at the top of the first page of this letter.  Or, you may call
us toll free at 1-866-899-9083.  Whenever you write, please include
this letter and, in the spaces below, give us your telephone number
with the hours we can reach you.  You may also wish to keep a copy of
this letter for your records.

Your Telephone Number (___)_____  Hours _____

                        Sincerely yours,

                        *Scott Prentky*

                        Scott Prentky
                        Field Director, Compliance Services

Enclosure(s):
Copy of this letter
Publication 1
Publication 2105

**2**



about those who

believe they don't have

to pay taxes?

here have always been individuals who, for a variety of reasons, argue various taxes are illegal. They use false, misleading, or unorthodox tax advice to gain followers. The courts have repeatedly rejected their arguments as frivolous and routinely impose financial penalties for raising such frivolous tax arguments. Take the time to learn the truth about frivolous tax arguments and more about recent criminal prosecutions at the following web sites:

THE TRUTH ABOUT FRIVOLOUS TAX ARGUMENTS
http://www.irs.gov/pub/irs-utl/friv_tax.pdf)

THE NONFILER WEB SITE
http://www.irs.gov/ keyword: fraud)

The promoters of this tax advice often charge hefty fees or commissions to subscribe to their philosophies. Unfortunately, in the end, you may pay more in penalties, interest, and legal fees for following their bad advice. Their philosophies have led to the financial ruin of innocent tax-payers deceived by false information. Believe it or not – a number of individuals who market these ideas actually pay taxes.

he IRS has focused its efforts against willful nonfilers and noncompliance schemes by adopting a twofold approach:

**1.**
Assist taxpayers to correct their filing status and comply with the tax law.

**2.**
Vigorously apply both civil and criminal sanctions against individuals who persist in violating the tax law.

Report suspicious or misleading tax information to your local IRS office

Maintaining public confidence in the fairness of tax laws is paramount. Recommending prosecution of those who willfully violate tax laws demonstrates the IRS' commitment to ensuring that everyone pays their fair share of taxes




IRS
Department of the Treasury
Internal Revenue Service
w w w . i r s . g o v
Publication 2105 (Rev. 4-2006)
Catalog Number 23871N



Why do I Pay TAXES



Just the Facts

**The United States Constitution,** Article 1, Section 8, Clause 1, states "The Congress shall have the Power To lay and collect Taxes, Duties, Imposts and Excises to pay the Debts and provide for the common Defense and general Welfare of the United States."

**The Sixteenth Amendment to the Constitution,** ratified on February 3, 1913, states, "The Congress shall have the power to lay and collect taxes on income, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

**Congress** used the power granted by the Constitution and Sixteenth Amendment and made laws requiring all individuals to pay tax.

**Sources of taxable income** are indentified under Title 26 of the Internal Revenue Code. Congress enacts the tax laws, IRS enforces them.

**Gross Income Defined.** The list of sources under this section is not all inclusive.

**Courts** have historically held there are no Constitutional or legal grounds for failure to file tax returns and failure to pay taxes.

**While taxpayers have the right to contest** their tax liabilities in the courts, taxpayers do not have the right to violate and disobey tax laws.

**Failing to file** required returns and failing to pay taxes may result in criminal prosecution and/or civil penalties.

**The term voluntary compliance** means that each of us is responsible for filing a tax return when required and for determining and paying the correct amount of tax

## Commonly Used Frivolous Arguments:

Unscrupulous individuals and promoters advocating willful noncompliance with the tax laws have used a variety of false or misleading arguments for not paying taxes. Here are some of the most common arguments:

**Constitutional Argument:** Filing a Form 1040 violates the Fifth Amendment right against self incrimination or the Fourth Amendment right to privacy.

**The Truth:** The courts have consistently held that disclosure of the type of routine financial information required on a tax return does not incriminate an individual or violate the right to privacy.

**Religious Arguments:** Use the freedom of religion clause of the First Amendment by taking a vow of poverty or fraudulently claiming charitable contributions of 50% or more of your adjusted gross income.

**The Truth:** Claiming a vow of poverty or claiming fraudulent charitable contributions to a church for money which is ultimately used to pay personal expenses is not legal.

**Internal Revenue Code (IRC) Arguments:** (1) The filing and paying of tax is voluntary, (2) The Internal Revenue Code doesn't apply to me because I am not a government employee nor I am a resident of a sovereign state.

**The Truth:** The tax law is found in Title 26 of the United States Code. Section 6012 of the Code makes clear that only individuals whose income falls below a specified level do not have to file returns. While our tax system is based on self-assessment and reporting, compliance with tax laws is mandatory. State citizenship does not negate the applicability of the IRC on individuals working and residing in the United States

**Wages are not Income Arguments:** Labor worth a certain amount is exchanged for money worth the same amount and therefore there is no income to be taxed.

**The Truth:** The arguments that taxes on income derived from property are unconstitutional, or that income is limited to gain or profit, are consistently dismissed by the courts. Congress has determined

through the IRC, that all income is taxable unless specifically excluded by some part of the Internal Revenue Code.

**Forming a Trust Argument:** Forming a business trust to hide your income and assets will avoid taxes. A family estate trust will allow you to reduce or eliminate your tax liability.

**The Truth:** Establishing a trust, foreign or domestic, for the sole purpose of hiding your income and assets from taxation is illegal and will not absolve you of your tax liability.

How are your tax dollars used to benefit the citizens of the United States? Which of these services have you or your family used lately or will use in the future?

**Income and Outlays:** These charts show the relative size of the major categories of Federal income and outlays for fiscal year 2004.

### Income



Social Security, Medicare, unemployment, and other retirement — 32%
Personal income taxes — 35%
Corporate income taxes — 18%
Excise, customs, estate, gift, and miscellaneous taxes — 7%
Borrowing to cover deficit — 8%

### Outlays

Social Security, Medicare, and other retirement — 36%
Social programs — 23%
National defense, veterans, and foreign affairs — 27%
Physical, human, and community development — 10%
Law enforcement and general government — 3%
Net interest on the debt — 7%



3

# THE TRUTH ABOUT FRIVOLOUS TAX ARGUMENTS
## NOVEMBER 30, 2007

I. FRIVOLOUS TAX ARGUMENTS IN GENERAL ............................................. 1

A. The Voluntary Nature of the Federal Income Tax System ........................... 1
 1. Contention: The filing of a tax return is voluntary. ............................... 1
 2. Contention: Payment of tax is voluntary. ........................................... 3
 3. Contention: Taxpayers can reduce their federal income tax liability by filing a "zero return." .......................................................................... 6
 4. Contention: The IRS must prepare federal tax returns for a person who fails to file. .................................................................................... 8
 5. Contention: Compliance with an administrative summons issued by the IRS is voluntary. .............................................................................. 9

B. The Meaning of Income: Taxable Income and Gross Income ................... 11
 1. Contention: Wages, tips, and other compensation received for personal services are not income. .............................................................. 11
 2. Contention: Only foreign-source income is taxable. ............................ 16
 3. Contention: Federal Reserve Notes are not income. .......................... 18

C. The Meaning of Certain Terms Used in the Internal Revenue Code .......... 19
 1. Contention: Taxpayer is not a "citizen" of the United States, thus not subject to the federal income tax laws. ......................................................... 19
 2. Contention: The "United States" consists only of the District of Columbia, federal territories, and federal enclaves. ........................................... 21
 3. Contention: Taxpayer is not a "person" as defined by the Internal Revenue Code, thus is not subject to the federal income tax laws. ...................... 23
 4. Contention: The only "employees" subject to federal income tax are employees of the federal government. ............................................................. 24

D. Constitutional Amendment Claims ....................................................... 26
 1. Contention: Taxpayers can refuse to pay income taxes on religious or moral grounds by invoking the First Amendment. ..................................... 26
 2. Contention: Federal income taxes constitute a "taking" of property without due process of law, violating the Fifth Amendment. .................................. 27
 3. Contention: Taxpayers do not have to file returns or provide financial information because of the protection against self-incrimination found in the Fifth Amendment. ........................................................................... 28
 4. Contention: Compelled compliance with the federal income tax laws is a form of servitude in violation of the Thirteenth Amendment. .......................... 30
 5. Contention: The Sixteenth Amendment to the United States Constitution was not properly ratified, thus the federal income tax laws are unconstitutional. ..... 31
 6. Contention: The Sixteenth Amendment does not authorize a direct non-apportioned federal income tax on United States citizens. ......................... 33

E. Fictional Legal Bases ........................................................................ 34

1. Contention: The Internal Revenue Service is not an agency of the United States.................................................................................................................34

2. Contention: Taxpayers are not required to file a federal income tax return, because the instructions and regulations associated with the Form 1040 do not display an OMB control number as required by the Paperwork Reduction Act.35

3. Contention: African Americans can claim a special tax credit as reparations for slavery and other oppressive treatment............................................................36

4. Contention: Taxpayers are entitled to a refund of the Social Security taxes paid over their lifetime....................................................................................................38

5. Contention: An "untaxing" package or trust provides a way of legally and permanently avoiding the obligation to file federal income tax returns and pay federal income taxes...............................................................................................39

6. Contention: A "corporation sole" can be established and used for the purpose of avoiding federal income taxes. ...................................................................42

## II. FRIVOLOUS ARGUMENTS IN COLLECTION DUE PROCESS CASES......44

A. Invalidity of the Assessment........................................................................45

1. Contention: A tax assessment is invalid because the taxpayer did not get a copy of the Form 23C, the Form 23C was not personally signed by the Secretary of the Treasury, or Form 23C is not a valid record of assessment...45

2. Contention: A tax assessment is invalid because the assessment was made from a substitute for return prepared pursuant to section 6020(b), which is not a valid return. ...............................................................................................46

B. Invalidity of the Statutory Notice of Deficiency.............................................47

1. Contention: A statutory notice of deficiency is invalid because it was not signed by the Secretary of the Treasury or by someone with delegated authority........47

2. Contention: A statutory notice of deficiency is invalid because the taxpayer did not file an income tax return................................................................................48

C. Invalidity of Notice of Federal Tax Lien ........................................................49

1. Contention: A notice of federal tax lien is invalid because it is unsigned or not signed by the Secretary of the Treasury, or because it was filed by someone without delegated authority. ..................................................................................49

2. Contention: The form or content of a notice of federal tax lien is controlled by or subject to a state or local law, and a notice of federal tax lien that does not comply in form or content with a state or local law is invalid..............................50

D. Invalidity of Collection Due Process Notice..................................................51

1. Contention: A collection due process notice (Letter 1058, LT-11 or Letter 3172) is invalid because it is not signed by the Secretary or his delegate.................51

2. Contention: A collection due process notice is invalid because no certificate of assessment is attached. ...............................................................................52

E. Verification Given as Required by I.R.C. § 6330(c)(1)................................52

1. Contention: Verification requires the production of certain documents............52

F. Invalidity of Statutory Notice and Demand ...................................................53

1. Contention: No notice and demand, as required by I.R.C. § 6303, was ever received by taxpayer.................................................................................53

2. Contention: A notice and demand is invalid because it is not signed, it is not on the correct form (such as Form 17), or because no certificate of assessment is attached. ................................................................................................ 54

G. Tax Court Authority ................................................................................. 55

    1. Contention: The Tax Court does not have the authority to decide legal issues. 55

H. Challenges to the Authority of IRS Employees ........................................... 56

    1. Contention: Revenue Officers are not authorized to seize property in satisfaction of unpaid taxes. ................................................................... 56

    2. Contention: IRS employees lack credentials. For example, they have no pocket commission or the wrong color identification badge. ..................... 57

I. Use of Unauthorized Representatives ......................................................... 57

    1. Contention: Taxpayers are entitled to be represented at hearings, such as collection due process hearings, and in court, by persons without valid powers of attorney. ...................................................................................... 57

J. No Authorization Under I.R.C. § 7401 to Bring Action ............................... 58

    1. Contention: The Secretary has not authorized an action for the collection of taxes and penalties or the Attorney General has not directed an action be commenced for the collection of taxes and penalties. ........................... 58

III. PENALTIES FOR PURSUING FRIVOLOUS TAX ARGUMENTS ................. 59

# THE TRUTH ABOUT FRIVOLOUS TAX ARGUMENTS
## NOVEMBER 30, 2007

This responds to some of the more common frivolous "legal arguments" made by individuals and groups who oppose compliance with the federal tax laws. The first section groups these arguments under six general categories, with variations within each category. Each contention is briefly explained, followed by a discussion of the legal authority that rejects the contention. The second section responds to some of the more common frivolous arguments made in collection due process cases brought pursuant to sections 6320 or 6330. These arguments are grouped under ten general categories and contain a brief description of each contention followed by a discussion of the correct legal authority. A final section explains the penalties that the courts may impose on those who pursue tax cases on frivolous grounds. It should be noted that the cases cited as relevant legal authority are illustrative and are not intended to provide an all-inclusive list relating to frivolous tax arguments.

## I.  FRIVOLOUS TAX ARGUMENTS IN GENERAL

### A.  The Voluntary Nature of the Federal Income Tax System

#### 1.  Contention:  The filing of a tax return is voluntary.

Some assert that they are not required to file federal tax returns because the filing of a tax return is voluntary. Proponents point to the fact that the IRS itself tells taxpayers in the Form 1040 instruction book that the tax system is voluntary. Additionally, the Supreme Court's opinion in <u>Flora v. United States</u>, 362 U.S. 145, 176 (1960), is often quoted for the proposition that "[o]ur system of taxation is based upon voluntary assessment and payment, not upon distraint."

**The Law:** The word "voluntary," as used in Flora and in IRS publications, refers to our system of allowing taxpayers initially to determine the correct amount of tax and complete the appropriate returns, rather than have the government determine tax for them from the outset. The requirement to file an income tax return is not voluntary and is clearly set forth in sections 6011(a), 6012(a), <u>et seq</u>., and 6072(a). <u>See</u> <u>also</u> Treas. Reg. § 1.6011-1(a).

Any taxpayer who has received more than a statutorily determined amount of gross income is obligated to file a return. Failure to file a tax return could subject the non-complying individual to criminal penalties, including fines and imprisonment, as well as civil penalties. In <u>United States v. Tedder</u>, 787 F.2d 540, 542 (10th Cir. 1986), the court clearly states, "although Treasury regulations establish voluntary compliance as the general method of income tax collection, Congress gave the Secretary of the Treasury the power to enforce the income tax laws through involuntary

2

collection . . . .  The IRS' efforts to obtain compliance with the tax laws are entirely proper."  The IRS issued Revenue Ruling 2007-20, 2007-14 I.R.B. 863, warning taxpayers of the consequences of making this frivolous argument.

In August 2005, the Justice Department announced that Royal Lamarr Hardy was sentenced to a 156-month prison term for, among other things, selling a tax evasion scheme called the "Reliance Defense" that incorrectly asserted the income tax laws were voluntary (i.e., the laws imposed no legal obligation to pay tax or file a return).  Hardy was also ordered to pay costs of prosecution in the amount of $59,267.88, and restitution to the IRS for $197,555.  See 2005 TNT 169-12 (Aug. 31, 2005).

In August 2007, a federal court in New York permanently barred Robert L. Schulz of Queensbury, N.Y., and his organizations, We the People Congress and We the People Foundation, from promoting a tax scheme that helped employers and employees improperly stop tax withholding from wages on the false premise that federal income taxation is voluntary. The court concluded that the First Amendment did not protect the two organizations that operate the website, or their founder, because the site incited criminal conduct.  The court also ordered that the web site that sold the materials stating that individuals can legally stop paying taxes be shut. See http://www.usdoj/tax/txdv07214.htm, and http://www.usdoj.gov/tax/txdv07595.htm

**Relevant Case Law:**

Helvering v. Mitchell, 303 U.S. 391, 399 (1938) – the U.S. Supreme Court stated that "[i]n assessing income taxes, the Government relies primarily upon the disclosure by the taxpayer of the relevant facts . . . in his annual return.  To ensure full and honest disclosure, to discourage fraudulent attempts to evade the tax, Congress imposes [either criminal or civil] sanctions."

United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993) – the court held that "[a]ny assertion that the payment of income taxes is voluntary is without merit."

United States v. Tedder, 787 F.2d 540, 542 (10th Cir. 1986) – the court upheld a conviction for willfully failing to file a return, stating that the premise "that the tax system is somehow 'voluntary' . . . is incorrect."

United States v. Richards, 723 F.2d 646, 648 (8th Cir. 1983) – the court upheld conviction and fines imposed for willfully failing to file tax returns, stating that the claim that filing a tax return is voluntary "was rejected in United States v. Drefke, 707 F.2d 978, 981 (8th Cir. 1983), wherein the court described appellant's argument as 'an imaginative argument, but totally without arguable merit.'"

Woods v. Commissioner, 91 T.C. 88, 90 (1988) – the court rejected the claim that reporting income taxes is strictly voluntary, referring to it as a "'tax protester' type" argument, and found Woods liable for the penalty for failure to file a return.

Johnson v. Commissioner, T.C. Memo. 1999-312, 78 T.C.M. (CCH) 468, 471 (1999) – the court found Johnson liable for the failure to file penalty and rejected his argument "that the tax system is voluntary so that he cannot be forced to comply" as "frivolous."

## 2. Contention:  Payment of tax is voluntary.

In a similar vein, some argue that they are not required to pay federal taxes because the payment of federal taxes is voluntary.  Proponents of this position argue that our system of taxation is based upon voluntary assessment and payment.  They frequently claim that there is no provision in the Internal Revenue Code or any other federal statute that requires them to pay or makes them liable for income taxes, and they demand that the IRS show them the law that imposes tax on their income.  The stance that is taken is that until the IRS can prove to these taxpayers' satisfaction, which is effectively impossible because they never will be satisfied, the existence and applicability of the income tax laws, they will not report or pay income taxes.  These taxpayers reflexively dismiss any attempt by the IRS to identify the laws, thereby continuing the cycle.  The IRS has issued Revenue Ruling 2007-20, 2007-14 I.R.B. 863, discussing this frivolous position at length and warning taxpayers of the consequences of asserting it.

**The Law:**  The requirement to pay taxes is not voluntary and is clearly set forth in section 1 of the Internal Revenue Code, which imposes a tax on the taxable income of individuals, estates, and trusts as determined by the tables set forth in that section.  (Section 11 imposes a tax on the taxable income of corporations.)

Furthermore, the obligation to pay tax is described in section 6151, which requires taxpayers to submit payment with their tax returns.  Failure to pay taxes could subject the noncomplying individual to criminal penalties, including fines and imprisonment, as well as civil penalties.

In discussing section 6151, the Eighth Circuit Court of Appeals stated that "when a tax return is required to be filed, the person so required 'shall' pay such taxes to the internal revenue officer with whom the return is filed at the fixed time and place.  The sections of the Internal Revenue Code imposed a duty on Drefke to file tax returns and pay the . . . tax, a duty which he chose to ignore."  United States v. Drefke, 707 F.2d 978, 981 (8th Cir. 1983).

In United States v. Kuglin, No. 03-20111 (W.D. Tenn. Aug. 8, 2003), Vernice B. Kuglin faced criminal charges for falsifying Forms W-4 and

failing to pay taxes on $920,000 of income between 1996 and 2001, but was acquitted by a federal jury. Kuglin argued that she attempted to determine whether the income was taxable but the Service did not respond to her letters. Government officials issued press releases making it clear that the outcome in <u>Kuglin</u> should be treated as an "aberration" and noting that persons acquitted of criminal tax violations are not relieved of their obligation to pay taxes due. <u>See</u> 2003 TNT 155-12 (Aug. 11, 2003); 2003 TNT 155-13 (Aug. 11, 2003); 2003 TNT 158-2 (Aug. 14, 2003).

The defendant in <u>United States v. Brunet,</u> No. 03-00057 (M.D. Tenn. March 12, 2004), argued he could not find any information that would lead him to conclude the Internal Revenue Code made him liable to file income tax returns or pay taxes. In stark contrast to <u>Kuglin</u>, the jury returned guilty verdicts against Brunet on four counts of tax evasion and the court sentenced him to serve 27 months in prison. <u>See</u> 2004 TNT 51-33 (March 12, 2004).

There have been no civil cases where the Service's lack of response to a taxpayer's inquiry has relieved the taxpayer of the duty to pay tax due under the law. Courts have in rare instances waived civil penalties because they have found that a taxpayer relied on a Service misstatement or wrongful misleading silence with respect to a factual matter. Such an estoppel argument does not, however, apply to a legal matter such as whether there is legal authority to collect taxes. <u>See, e.g.,</u> McKay v. Commissioner, 102 T.C. 465 (1994), <u>rev'd as to other issues</u>, 84 F.3d 433 (5th Cir. 1996). Kuglin's case, discussed above, did not prove to be the exception. Despite her acquittal of criminal charges, on September 12, 2004, Kuglin entered a settlement with the IRS in the Tax Court in which she agreed to pay more than half a million dollars in back taxes and penalties. <u>Kuglin v. Commissioner</u>, Docket No. 21743-03; <u>see</u> 2004 TNT 177-6 (Sept. 13, 2004).

In August 2004, an appellate court affirmed a federal district court preliminary injunction barring Irwin Schiff, Cynthia Neun, and Lawrence N. Cohen from selling a tax scheme that fraudulently claimed that payment of federal income tax is voluntary. <u>United States v. Schiff,</u> 379 F.3d 621 (9th Cir. 2004); <u>see</u> http://www.usdoj.gov/tax/txdv04551.htm. Also, in October 2005, the trio was convicted by a Las Vegas jury for various criminal charges relating to the federal income tax laws. See 2005 TNT 205-4 (Oct. 25, 2005). Schiff received a sentence of more than 12 years in prison and was ordered to pay more than $4.2 million in restitution to the IRS; Neun received a sentence of nearly 6 years and was ordered to pay $1.1 million in restitution to the IRS; and, Cohen received a sentence of nearly 3 years and was ordered to pay $480,000 in restitution to the IRS. <u>See</u> http://www.usdoj.gov/opa/pr/2006/February/06_tax_098.html; 2006 TNT 38-67 (Feb. 24, 2006); 2006 TNT 24-62 (Feb. 3, 2006).

5

Earlier this year, a dentist, Dr. Elaine Brown, and her husband, Ed Brown, were prosecuted in a federal district court in New Hampshire of conspiracy to defraud the federal government and, as to Dr. Brown, income tax evasion, among other charges. These taxpayers claimed that they were not subject to taxation and that the IRS never responded to their demands for a legal explanation. In an opening statement to the jury, Ed Brown proclaimed, "We will once and for all show beyond the shadow of a doubt . . . that the federal income tax system is a fraud." They failed to do so, however, as the jury convicted the Browns on all charges. See http://www.usdoj.gov/tax/usaopress/2007/txdv07WEM_Browns.pdf. After being sentenced in April, they refused to surrender themselves to authorities and were arrested at their home on October 4, 2007, to begin serving their prison terms.

**Relevant Case Law:**

United States v. Bressler, 772 F.2d 287, 291 (7th Cir. 1985) – the court upheld Bressler's conviction for tax evasion, noting, "[he] has refused to file income tax returns and pay the amounts due not because he misunderstands the law, but because he disagrees with it . . . . [O]ne who refuses to file income tax returns and pay the tax owing is subject to prosecution, even though the tax protester believes the laws requiring the filing of income tax returns and the payment of income tax are unconstitutional."

Wilcox v. Commissioner, 848 F.2d 1007, 1008 (9th Cir. 1988) – the court rejected Wilcox's argument that payment of taxes is voluntary for American citizens, stating that "paying taxes is not voluntary" and imposing a $1,500 penalty against Wilcox for raising frivolous claims.

Schiff v. United States, 919 F.2d 830, 833 (2d Cir. 1990), cert. denied, 501 U.S. 1238 (1991) – the court rejected Schiff's arguments as meritless and upheld imposition of the civil fraud penalty, stating "[t]he frivolous nature of this appeal is perhaps best illustrated by our conclusion that Schiff is precisely the sort of taxpayer upon whom a fraud penalty for failure to pay income taxes should be imposed."

United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993) – the court stated that the "[taxpayers'] claim that payment of federal income tax is voluntary clearly lacks substance" and imposed sanctions in the amount of $1,500 "for bringing this frivolous appeal based on discredited, tax-protester arguments."

Packard v. United States, 7 F. Supp. 2d 143, 145 (D. Conn. 1998) – the court dismissed Packard's refund suit for recovery of penalties for failure to pay income tax and failure to pay estimated taxes where the taxpayer contested the obligation to pay taxes on religious grounds, noting that "the ability of the Government to function could be impaired if persons could

refuse to pay taxes because they disagreed with the Government's use of tax revenues."

Horowitz v. Commissioner, T.C. Memo. 2006-91, 91 T.C.M. (CCH) 1120 – the court imposed sanctions in the amount of $10,000 in rejecting the taxpayer's arguments, including the frivolous claim that he could find no statute or regulation making him liable for an income tax.

Bonaccorso v. Commissioner, T.C. Memo. 2005-278, 90 T.C.M. (CCH) 554 (2005) – the taxpayer filed zero returns based on the argument that he found no Code section that made him liable for any income tax. The court held that the taxpayer's argument was frivolous citing to section 1 (imposes an income tax), section 63 (defines taxable income as gross income minus deductions), and section 61 (defines gross income). The court also imposed a $10,000 sanction against the taxpayer under section 6673 for making frivolous arguments.

### 3. Contention: Taxpayers can reduce their federal income tax liability by filing a "zero return."

Some taxpayers are attempting to reduce their federal income tax liability by filing a tax return that reports no income and no tax liability (a "zero return") even though they have taxable income. Many of these taxpayers also request a refund of any taxes withheld by an employer. These individuals typically attach to the zero return a Form W-2, or other information return that reports income and income tax withholding, and rely on one or more of the frivolous arguments discussed throughout this outline in support of their position.

**The Law:** There is no authority that permits a taxpayer that has taxable income to avoid income tax by filing a zero return. Section 61 provides that gross income includes all income from whatever source derived, including compensation for services. Courts have repeatedly penalized taxpayers for making the frivolous argument that the filing of a zero return can allow a taxpayer to avoid income tax liability, or permit a refund of tax withheld by an employer. Courts have also imposed the frivolous return and failure to file penalties because such forms do not evidence an honest and reasonable attempt to satisfy the tax laws or contain sufficient data to calculate the tax liability. The IRS issued Revenue Ruling 2004-34, 2004-1 C.B. 619, warning taxpayers of the consequences of making this argument. Furthermore, the inclusion of the phrase "nunc pro tunc," or other legal phrase, does not have any legal effect and does not serve to validate a zero return. See Rev. Rul. 2006-17, 2006-15 I.R.B. 748.

In December 2005, a federal district court in Arizona permanently barred Beverly J. Hill and Darrell J. Hill (individually and doing business as Superior Claims Management) from, among other things, preparing or filing federal tax returns for any person or entity other than themselves.

7

The court found that the couple filed zero returns on behalf of their clients based on various frivolous tax arguments, thus interfering with the administration and enforcement of the internal revenue laws. United States v. Hill, 97 A.F.T.R.2d (RIA) 548, 2005 WL 3536118 (D. Ariz. 2005); see also, 2005 TNT 248-8 (Dec. 27, 2005).

In April 2006, a federal district court in Michigan permanently barred Charles Conces from promoting several fraudulent tax schemes, including one in which he filed "zero returns" on behalf of his clients on the faulty premise that income is not taxable. See http://www.usdoj.gov/opa/pr/2006/April06_tax_243.html; see also 2006 TNT 80-36 (Apr. 25, 2006). In March 2007, U.S. Marshals arrested Conces. The arrest resulted from a federal judge's order on February 23, 2007, finding Conces in civil contempt of court for failing to obey a court order entered on February 8. The February 8 order compelled Conces to disclose to the government the identities of certain persons for whom he drafted or provided advice regarding federal income taxes, the identities of the persons who are responsible for his website, and all documents that he drafted or assisted in drafting for these persons. The order was affirmed on appeal, United States v. Conces, ___F.3d __, 2007 WL 3406765 (6th Cir. 2007). Conces refused to disclose the identities and documents as ordered by the court. See http://www.usdoj.gov/tax/txdv07121.htm.

## Relevant Case Law:

Little v. United States, 2005 WL 2989696, at *4 (M.D.N.C. 2005) – taxpayer filed income tax returns showing "0" income and "0" tax liability, even though his W-2 Forms showed taxable income. In response, the IRS imposed penalties for submitting frivolous returns in violation of 26 U.S.C. § 6702. The court noted that multiple other courts have upheld such a penalty assessment in similar cases where taxpayers filed a "zero return" based on various "tax protester" arguments. Determining that plaintiff failed to raise any genuine issues of material fact, the court upheld the penalties.

Schultz v. United States, 2005 WL 1155203, at *3 (W.D. Mich. 2005) – "Courts have consistently found the arguments made by Plaintiffs, or ones very similar, in support of an all zero return to be frivolous."

Yuen v. United States, 290 F.Supp.2d 1220,1224 (D. Nev. 2003) – taxpayer's tax returns were substantially incorrect and frivolous, when he filed returns with zeros on nearly every line, and thus, the court decided, assessments of frivolous return penalties were valid.

Gillett v. United States, 233 F.Supp. 2d 874, 881 (W.D. Mich. 2002) – the court stated "[n]umerous federal courts have upheld the imposition of the $500 sanction by the IRS pursuant to 26 U.S.C. § 6702(a) [for frivolous

returns], where, as here, a tax form is filed stating that an individual had no income, but the attached W-2 forms show wages, tips, or other compensation of greater than zero."

United States v. Schiff, et al., 379 F.3d 621 (9th Cir. 2004) – the court of appeals upheld a federal district court preliminary injunction barring Irwin Schiff and two associates from promoting their "zero-income" tax return theories through his bookstore and three Internet websites. As the court noted, Mr. Schiff "has a long history of opposition to the federal income tax laws" and has never been successful in court with his theory that "the federal income tax is voluntary."

Bonaccorso v. Commissioner, T.C. Memo. 2005-278, 90 T.C.M. (CCH) 554 (2005) – the taxpayer filed zero returns based on the argument that he found no Code section that made him liable for any income tax. The court held that the taxpayer's argument was frivolous citing to section 1 (imposes an income tax), section 63 (defines taxable income as gross income minus deductions), and section 61 (defines gross income). The court also imposed a $10,000 sanction against the taxpayer under section 6673 for making frivolous arguments.

Halcott v. Commissioner, T.C. Memo. 2004-214 – the court held the taxpayer liable for the penalty under section 6651(a)(1) for failure to timely file his return where the taxpayer filed a "zero return."

Hill v. Commissioner, T.C. Memo. 2003-144, 85 T.C.M. (CCH) 1328, 1331 (2003) – the court imposed a $15,000 penalty under section 6673 because the taxpayer took the frivolous "zero return" position.

Rayner v. Commissioner, T.C. Memo. 2002-30, 83 T.C.M. (CCH) 1161 (2002) – the court imposed a $5,000 penalty under section 6673 where the taxpayer argued the frivolous "zero return" position.

### 4. Contention:  The IRS must prepare federal tax returns for a person who fails to file.

Proponents of this argument contend that section 6020(b) obligates the IRS to prepare and sign under penalties of perjury a federal tax return for a person who does not file a return. Thus, those who subscribe to this contention claim that they are not required to file a return for themselves.

**The Law:**  Section 6020(b) merely provides the IRS with a mechanism for determining the tax liability of a taxpayer who has failed to file a return. Section 6020(b) does not require the IRS to prepare or sign under penalties of perjury tax returns for persons who do not file and it does not excuse the taxpayer from civil penalties or criminal liability for failure to file.

**Relevant Case Law:**

<u>United States v. Cheek,</u> 3 F.3d 1057, 1063 (7th Cir. 1993) – the court held the district court did not err when it instructed the jury that defendant's belief that Section 6020 permitted the Secretary of the Treasury to prepare a tax return for a person did not negate "in any way" the obligation to file a tax return.

<u>In re Bergstrom,</u> 949 F.2d 341, 343 (10th Cir. 1991) – recognized that "[c]ourts have held that 26 U.S.C. § 6020(b) provides the IRS with some recourse if a taxpayer fails to file a return as required under 26 U.S.C. § 6012, but that it does not excuse a taxpayer from the filing requirement."

<u>United States v. Barnett,</u> 945 F.2d 1296, 1300 (5th Cir. 1991) - where defense counsel in prosecution for willful failure to file individual federal income tax returns raised inference that the IRS actually had some statutory duty to file returns for delinquent taxpayers, court properly instructed jury that IRS has no such duty.

<u>Schiff v. United States</u>, 919 F.2d 830, 832 (2d Cir. 1990) – the court rejected the taxpayer's argument that the IRS must prepare a substitute return pursuant to section 6020(b) prior to assessing deficient taxes, stating "[t]here is no requirement that the IRS complete a substitute return."

<u>United States v. Lacy,</u> 658 F.2d 396, 397 (5th Cir. 1981) – the court, in upholding the taxpayer's conviction for willfully and knowingly failing to file a return, stated that " . . . the purpose of section 6020(b)(1) is to provide the Internal Revenue Service with a mechanism for assessing the civil liability of a taxpayer who has failed to file a return, not to excuse that taxpayer from criminal liability which results from that failure."

<u>Moore v. Commissioner</u>, 722 F.2d 193, 196 (5th Cir. 1984) – the court stated that "section [6020(b)] provides the Secretary with some recourse should a taxpayer fail to fulfill his statutory obligation to file a return, and does not supplant the taxpayer's original obligation to file established by 26 U.S.C. § 6012."

<u>Stewart v. Commissioner</u>, T.C. Memo. 2005-212, 90 T.C.M. (CCH) 269 (2005) – the court found that the IRS need not prepare a substitute return in order to determine a deficiency where the taxpayer has not filed a return for the year at issue.

## 5. Contention: Compliance with an administrative summons issued by the IRS is voluntary.

Some summoned parties may assert that they are not required to respond to or comply with an administrative summons. Proponents of this position argue that a summons thus can be ignored. The Second Circuit's opinion in <u>Schulz v. I.R.S.</u>, 413 F.3d 297 (2d Cir. 2005) ("<u>Schulz II</u>") is often cited to support this proposition.

**The Law:**  A summons is an administrative device with which the IRS can summon persons to appear, testify, and produce documents.  The IRS is statutorily authorized to inquire about any person who may be liable to pay any internal revenue tax, and to summons a witness to testify or to produce books, papers, records, or other data that may be relevant or material to an investigation.  26 U.S.C. § 7602; United States v. Powell, 379 U.S. 48 (1964).  Sections 7402(b) and 7604(a) of the Internal Revenue Code grant jurisdiction to district courts to enforce a summons, and section 7604(b) governs the general enforcement of summonses by the IRS.

Section 7604(b) allows courts to issue attachments, consistent with the law of contempt, to ensure attendance at an enforcement hearing "[i]f the taxpayer has contumaciously refused to comply with the administrative summons and the [IRS] fears he may flee the jurisdiction." Powell, 379 U.S. at 58 n.18; see also Reisman v. Caplin, 375 U.S. 440, 448-49 (1964) (noting that section 7604(b) actions are in the nature of contempt proceedings against persons who "wholly made default or contumaciously refused to comply," with an administrative summons issued by the IRS). Under section 7604(b), the courts may also impose contempt sanctions for disobedience of an IRS summons.

Failure to comply with an IRS administrative summons also could subject the non-complying individual to criminal penalties, including fines and imprisonment.  26 U.S.C. § 7210.  While the Second Circuit held in Schulz II that, for due process reasons, the government must first seek judicial review and enforcement of the underlying summons and to provide an intervening opportunity to comply with a court order of enforcement prior to seeking sanctions for noncompliance, the court's opinion did not foreclose the availability of prosecution under section 7210.

**Relevant Case Law:**

United States v. Becker, 58-1 U.S.T.C. ¶ 9403, at 68,062-68,064 (S.D.N.Y. 1958), aff'd, 259 F.2d 869 (2d Cir.) (per curiam), cert. denied, 258 U.S. 929 (1959) – In Becker, the defendant failed to produce certain books and records specified in an IRS summons because, he claimed, the books and records had been destroyed by fire.  The government filed an information on January 10, 1958, in which it charged that Becker, the defendant, had violated 26 U.S.C. § 7210.  Based upon the evidence presented at trial (including the fact that some of the specified books were subsequently produced in compliance with a grand jury subpoena), the district court found that Becker had been duly summoned and, as a fact beyond a reasonable doubt, had willfully and knowingly neglected to produce certain books and papers called for by a summons served upon him by a special agent of the IRS.  Becker, 58-1 U.S.T.C. ¶ 9403, at 68,064.  The court therefore found Becker guilty of the charge under section 7210.  Id.

Schulz v. I.R.S., 413 F.3d 297 (2d Cir. 2005) ("Schulz II") – the court, upholding its prior per curiam opinion, reported at Schulz v. I.R.S., 395 F.3d 463 (2d Cir. 2005) ("Schulz I"), held that, based upon constitutional due process concerns, an indictment under 26 U.S.C. § 7210 shall not lie and contempt sanctions under 26 U.S.C. § 7604(b) shall not be levied based on disobedience of an IRS summons until that summons has been enforced by a federal court order and the summoned party, after having been given a reasonable opportunity to comply with the court's order, has refused. The court noted that "[n]either this opinion nor Schulz I prohibits the issuance of pre-hearing attachments consistent with due process and the law of contempts." Schulz II, 413 F.3d at 304.

## B. The Meaning of Income: Taxable Income and Gross Income

### 1. Contention: Wages, tips, and other compensation received for personal services are not income.

This argument asserts that wages, tips, and other compensation received for personal services are not income, because there is allegedly no taxable gain when a person "exchanges" labor for money. Under this theory, wages are not taxable income because people have basis in their labor equal to the fair market value of the wages they receive; thus, there is no gain to be taxed. A variation of this argument misconstrues section 1341, which deals with computations of tax where a taxpayer restores a substantial amount held under claim of right, to somehow allow a deduction claim for personal services rendered.

Another similar argument asserts that wages are not subject to taxation where a person has obtained funds in exchange for their time. Under this theory, wages are not taxable because the Code does not specifically tax these so-called "time reimbursement transactions." Some take a different approach and argue that the Sixteenth Amendment to the United States Constitution did not authorize a tax on wages and salaries, but only on gain or profit.

**The Law:** For federal income tax purposes, "gross income" means all income from whatever source derived and includes compensation for services. I.R.C. § 61. Any income, from whatever source, is presumed to be income under section 61, unless the taxpayer can establish that it is specifically exempted or excluded. In Reese v. United States, 24 F.3d 228, 231 (Fed. Cir. 1994), the court stated, "an abiding principle of federal tax law is that, absent an enumerated exception, gross income means all income from whatever source derived." The IRS issued Revenue Ruling 2007-19, 2007-14 I.R.B. 843, advising taxpayers that wages and other compensation received in exchange for personal services are taxable income and warning of the consequences of making frivolous arguments to the contrary.

Section 1341 and the cases interpreting it require taxpayers to return funds previously reported as income before they can claim a deduction under claim of right. To have the right to a deduction, the taxpayer should appear to have an unrestricted right to the income in question. See Dominion Resources, Inc. v. United States, 219 F.3d 359 (4th Cir. 2000). It is a frivolous argument to claim a section 1341 deduction when there has been no repayment by the taxpayer of an amount previously reported as income. The Internal Revenue Service issued Revenue Ruling 2004-29, 2004-1 C.B. 627, warning taxpayers of the consequences of making this frivolous argument.

The Sixteenth Amendment provides that Congress shall have the power to lay and collect taxes on income, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration. U.S. Const. amend. XVI. Furthermore, the U.S. Supreme Court upheld the constitutionality of the income tax laws enacted subsequent to ratification of the Sixteenth Amendment in Brushaber v. Union Pacific R.R., 240 U.S. 1 (1916). Since that time, the courts have consistently upheld the constitutionality of the federal income tax. For a further discussion of the constitutionality of the federal income tax laws, see section I.D. of this outline.

All compensation for personal services, no matter what the form of payment, must be included in gross income. This includes salary or wages paid in cash, as well as the value of property and other economic benefits received because of services performed, or to be performed in the future. Furthermore, criminal and civil penalties have been imposed against individuals relying upon this frivolous argument.

Taxpayers who assert the position that wages are not taxable income, or other frivolous positions, may later claim that they were ignorant of or did not purposely disregard the requirements of the tax laws, such as the requirements to report wages and to withhold and pay taxes. Also, a handful of taxpayers who are criminally charged with violations of the internal revenue laws have avoided conviction.

For instance, in October 2006, Tommy K. Cryer was charged with two counts of tax evasion. Mr. Cryer asserted that there was no taxable gain when a person "exchanges" labor for money. Mr Cryer was subsequently acquitted on both criminal counts. See http://www.usdoj.gov/usao/law/news/wdl20061026.pdf

Taxpayers should not mistake these cases for an indication that frivolous positions that lead to criminal acquittals are legitimate or that the outcome of other cases will protect a taxpayer from sanctions resulting from noncompliance. Furthermore, while a few defendants have prevailed, the vast majority are convicted. Also, even though a taxpayer may be acquitted of criminal charges of noncompliance with Federal tax laws, the

Service is still free to pursue any underlying tax liability and is not barred from determining civil penalties. See Helvering v. Mitchell, 303 U.S. 391 (1938); Price v. Commissioner, T.C. Memo. 1996-204.

In November 2004, a federal district court in Ohio barred Michael A. Allamby from preparing federal tax returns and representing taxpayers before the IRS. Mr. Allamby erroneously interpreted the instructions to certain federal tax forms as requiring individuals to report their wages as income only if they invested the wages to earn income. See http://www.usdoj.gov/tax/txdv04733.htm; see also 2004 TNT 215-24 (Nov. 4, 2004). Also, in May 2005, a federal district court in Louisiana permanently barred Richard A. Fuselier and Richard J. Ortt and their organization, Compensation Consultants, from preparing tax returns and promoting tax schemes, such as the "not for profit" scheme, which was based on the premise that wages cannot be taxed. See http://www.usdoj.gov/opa/pr/2005/March/05_tax_085.htm; see also 2005 TNT 94-16 (May 16, 2005).

In January 2005, a federal district court in California permanently enjoined Joseph O. Saladino, founder of an organization known as the Freedom and Privacy Committee, from promoting two schemes: the "claim of right" program and the "corporation sole" scheme (discussed below in this outline). See http://www.usdoj.gov/tax/txdv05005.htm; see also 2005 TNT 15-22 (Jan. 24, 2005). Also, in January 2005, a federal district court in North Carolina permanently barred Frank D. Perkinson from selling the "claim of right" program and the "corporation sole" scheme. See http://www.usdoj.gov/opa/pr/2005/January/05_tax_005.htm; see also 2005 TNT 5-16 (Jan. 6, 2005).

In June 2006, Richard M. Blackstock was convicted on thirty-two counts of assisting in the preparation of fraudulent returns based on his involvement in filing various returns claiming deductions for wages, salaries and other compensation under the frivolous "claim of right" theory. See http://www.usdoj.gov/tax/usaopress/2006/txdv06Blackstock_USAO_OK.wpd; see also 2006 TNT129-31 (Jun. 23, 2006).

**Relevant Case Law:**

Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-30 (1955) – referring to the statute's words "income derived from any source whatever," the Supreme Court stated, "this language was used by Congress to exert in this field 'the full measure of its taxing power.' . . . And the Court has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted."

Commissioner v. Kowalski, 434 U.S. 77 (1977) – the Supreme Court found that payments are considered income where the payments are

undeniably accessions to wealth, clearly realized, and over which a taxpayer has complete dominion.

Cheek v. United States, 498 U.S. 192 (1991) – the Supreme Court reversed and remanded Cheek's conviction of willfully failing to file federal income tax returns and willfully attempting to evade income taxes solely on the basis of erroneous jury instructions. The Court noted, however, that Cheek's argument, that he should be acquitted because he believed in good faith that the income tax law is unconstitutional, "is unsound, not because Cheek's constitutional arguments are not objectively reasonable or frivolous, which they surely are, but because the [law regarding willfulness in criminal cases] does not support such a position." Id. (emphasis added). On remand, Cheek was convicted on all counts and sentenced to jail for a year and a day. Cheek v. United States, 3 F.3d 1057 (7th Cir. 1993), cert. denied, 510 U.S. 1112 (1994).

United States v. Becker, 965 F.2d 383, 389 (7th Cir. 1992) – the court found defendant's contention that wages are not income to be "ridiculous."

United States v. Sloan, 939 F.2d 499, 500 (7th Cir. 1991) – in rejecting defendant's argument that the revenue laws of the United States do not impose a tax on income, the court recognized the "Internal Revenue Code imposes a tax on all income."

United States v. Connor, 898 F.2d 942, 943-44 (3d Cir.), cert. denied, 497 U.S. 1029 (1990) – the court stated that "[e]very court which has ever considered the issue has unequivocally rejected the argument that wages are not income."

Lonsdale v. Commissioner, 661 F.2d 71, 72 (5th Cir. 1981) – the court rejected as "meritless" the taxpayer's contention that the "exchange of services for money is a zero-sum transaction . . . ."

Stelly v. Commissioner, 761 F. 2d 1113 (5th Cir. 1985) – the Fifth Circuit affirmed the Tax Court's holding against the taxpayer's argument that taxing wage and salary income is a violation of the constitution because compensation for labor is an exchange, not gain. The Fifth Circuit also fined the taxpayer for bringing a frivolous appeal.

United States v. White, 769 F. 2d 511 (8th Cir. 1985) – the court issued a permanent injunction to prevent the promotion of the argument that there is no tax imposed on an exchange of property (labor) in an equal exchange for property (wages).

United States v. Richards, 723 F.2d 646, 648 (8th Cir. 1983) – the court upheld conviction and fines imposed for willfully failing to file tax returns, stating that the taxpayer's contention that wages and salaries are not income within the meaning of the Sixteenth Amendment is "totally lacking in merit."

United States v. Romero, 640 F.2d 1014, 1016 (9th Cir. 1981) – the court affirmed Romero's conviction for willfully failing to file tax returns, finding, in part, that "[t]he trial judge properly instructed the jury on the meaning of ['income' and 'person']. Romero's proclaimed belief that he was not a 'person' and that the wages he earned as a carpenter were not 'income' is fatuous as well as obviously incorrect."

Abdo v. United States, 234 F. Supp. 2d 553 (M.D. N.C. 2002), aff'd, 2003-1 U.S.T.C. (CCH) ¶ 50,483 (4th Cir. 2003) – the tax preparer prepared returns based on the argument that labor is an exchange for wages and not taxable. The court cited Connor, supra, when finding that the tax preparer misstated the law.

McCoy v. United States, 88 A.F.T.R.2d (RIA) 7116, 2001 U.S. Dist. LEXIS 18986 (N.D. Tex. Nov. 16, 2001) – the court rejected the taxpayer's argument that wages received were not income and described this position as meritless.

Sumter v. United States, 61 Fed. Cl. 517, 523 (2004) – the court found the taxpayer's "claim of right" argument as "devoid of any merit" and that section 1341 only applies to situations in which the claimant is compelled to return the taxed item because of a mistaken presumption that the right held was unrestricted and, thus, the item was previously reported, erroneously, as taxable income. Section 1341 was inapplicable to Ms. Sumter, because she had a continuing, unrestricted claim of right to her salary income and had not been compelled to repay that income in a later tax year.

Abrams v. Commissioner, 82 T.C. 403, 413 (1984) – the court rejected the argument that wages are not income, sustained the failure to file penalty, and awarded damages of $5,000 for pursuing a position that was "frivolous and groundless . . . and maintained primarily for delay."

Reading v. Commissioner, 70 T.C. 730 (1978), aff'd, 614 F.2d 159 (8th Cir. 1980) – the court said the entire amount received from the sale of one's services constitutes income within the meaning of the Sixteenth Amendment.

Cullinane v. Commissioner, T.C. Memo. 1999-2, 77 T.C.M. (CCH) 1192, 1193 (1999) – noting that "[c]ourts have consistently held that compensation for services rendered constitutes taxable income and that taxpayers have no tax basis in their labor," the court found Cullinane liable for the failure to file penalty, stating that "[his] argument that he is not required to pay tax on compensation for services does not constitute reasonable cause."

Wheelis v. Commissioner, T.C. Memo. 2002-102, 83 T.C.M. (CCH) 1543-45 (2002) – the court rejected the taxpayer's frivolous argument that his wages were not taxable based on his belief that "[p]roperty (money)

exchanged for property (labor not subject to tax)" is not subject to income taxation. The court stated that such claims have been "consistently and thoroughly rejected" by the courts and imposed a penalty against Wheelis in the amount of $10,000 for making frivolous arguments.

Carskadon v. Commissioner, T.C. Memo. 2003-237, 86 T.C.M. (CCH) 234, 236 – the court rejected the taxpayer's frivolous argument that "wages are not taxable because the Code, which states what is taxable, does not specifically state that 'time reimbursement transactions,' a term of art coined by [taxpayers], are taxable." The court imposed a $2,000 penalty against the taxpayers for raising "only frivolous arguments which can be characterized as tax protester rhetoric."

## 2.  Contention:  Only foreign-source income is taxable.

Some maintain that there is no federal statute imposing a tax on income derived from sources within the United States by citizens or residents of the United States.  They argue instead that federal income taxes are excise taxes imposed only on nonresident aliens and foreign corporations for the privilege of receiving income from sources within the United States. The premise for this argument is a misreading of sections 861, et seq., and 911, et seq., as well as the regulations under those sections.

**The Law:**  As stated above, for federal income tax purposes, "gross income" means all income from whatever source derived and includes compensation for services.  I.R.C. § 61.  Further, Treasury Regulation § 1.1-1(b) provides, "[i]n general, all citizens of the United States, wherever resident, and all resident alien individuals are liable to the income taxes imposed by the Code whether the income is received from sources within or without the United States."  I.R.C. sections 861 and 911 define the sources of income (U.S. versus non-U.S. source income) for such purposes as the prevention of double taxation of income that is subject to tax by more than one country.  These sections neither specify whether income is taxable, nor do they determine or define gross income. These frivolous assertions are clearly contrary to well-established legal precedent.

In March 2005, a federal district court in Florida barred Gregory T. Mayer from preparing false or fraudulent returns and selling fraudulent tax schemes relying upon, among other things, the frivolous section 861 argument, which falsely claims that income from sources in the United States is not subject to federal income tax.  See http://www.usdoj.gov/opa/pr/2005/March/05_tax_119.htm; see also 2005 TNT 49-63 (Mar. 14, 2005).  In August 2005, a federal district court in Florida permanently barred Carel "Chad" Prater and Richard Cantwell from promoting tax-fraud scams relying on the section 861 argument.  See http://www.usdoj.gov/opa/pr/2005/September/05_tax_505.html; see also 2005 TNT 204-51 (Aug. 30, 2005).

In May 2005, the Tenth Circuit affirmed the conviction and 108 month sentence of Ernest G. Ambort for willfully aiding and assisting in the preparation of false income tax returns. The basis of the conviction involved seminars conducted by Mr. Ambort where he falsely instructed the attendees that they could claim to be nonresident aliens with no domestic source income, regardless of place of birth, so that they were exempt from most federal income taxes. United States v. Ambort, 405 F.3d 1109 (10th Cir. 2005); see also 2005 TNT 86-10 (May 3, 2005).

In August 2005, a Philadelphia jury convicted Larken Rose on five counts of willful failure to file federal income tax returns based on the frivolous section 861 argument. Mr. Rose was sentenced in federal district court to 15 months imprisonment, and must pay a fine of $10,000, as well as all taxes, interest and penalties that he owes to the IRS. See http://www.usdoj.gov/opa/pr/2005/August/05_tax_418.htm; see also 2005 TNT 157-22 (Aug. 12, 2005); 2005 TNT 225-17 (Nov. 22, 2005).

The IRS issued Revenue Ruling 2004-28, 2004-1 C.B. 624, which discusses section 911, and Revenue Ruling 2004-30, 2004-1 C.B. 622, which discusses section 861, warning taxpayers of the consequences of making these frivolous arguments.

**Relevant Case Law:**

Great-West Life Assur. Co. v. United States, 678 F.2d 180, 183 (Ct. Cl. 1982) – the court stated that "[t]he determination of where income is derived or 'sourced' is generally of no moment to either United States citizens or United States corporations, for such persons are subject to tax under I.R.C. § 1 and I.R.C. § 11, respectively, on their worldwide income."

Takaba v. Commissioner, 119 T.C. 285, 295 (2002) – the court rejected the taxpayer's argument that income received from sources within the United States is not taxable income, stating that "[t]he 861 argument is contrary to established law and, for that reason, frivolous." The court imposed sanctions against the taxpayer in the amount of $15,000, as well as sanctions against the taxpayer's attorney in the amount of $10,500, for making such groundless arguments.

Williams v. Commissioner, 114 T.C. 136, 138 (2000) – the court rejected the taxpayer's argument that his income was not from any of the sources listed in Treas. Reg. § 1.861-8(a), characterizing it as "reminiscent of tax-protester rhetoric that has been universally rejected by this and other courts."

Corcoran v. Commissioner, T.C. Memo. 2002-18, 83 T.C.M. (CCH) 1108, 1110 (2002) – the court rejected the taxpayers' argument that his income was not from any of the sources in Treas. Reg. § 1.861-8(f), stating that the "source rules [of sections 861 through 865] do not exclude from U.S. taxation income earned by U.S. citizens from sources within the United

States."  The court further required the taxpayers to pay a $2,000 penalty under section 6673(a)(1) because "they . . . wasted limited judicial and administrative resources."

Aiello v. Commissioner, T.C. Memo. 1995-40, 69 T.C.M. (CCH) 1765 (1995) – the court rejected the taxpayer's argument that the only sources of income for purposes of section 61 are listed in section 861.

Madge v. Commissioner, T.C. Memo. 2000-370, 80 T.C.M. (CCH) 804 (2000) – the court labeled as "frivolous" the position that only foreign income is taxable.

Solomon v. Commissioner, T.C. Memo. 1993-509, 66 T.C.M. (CCH) 1201, 1202 (1993) – the court rejected the taxpayer's argument that his income was exempt from tax by operation of sections 861 and 911, noting that he had no foreign income and that section 861 provides that "compensation for labor or personal services performed in the United States . . . are items of gross income."

### 3.  Contention:  Federal Reserve Notes are not income.

Some assert that Federal Reserve Notes currently used in the United States are not valid currency and cannot be taxed, because Federal Reserve Notes are not gold or silver and may not be exchanged for gold or silver.  This argument misinterprets Article I, Section 10 of the United States Constitution.

**The Law:**  Congress is empowered "[t]o coin Money, regulate the value thereof, and of foreign coin, and fix the Standard of weights and measures."  U.S. Const. Art. I, § 8, cl. 5.  Article I, Section 10 of the Constitution prohibits the states from declaring as legal tender anything other than gold or silver, but does not limit Congress' power to declare the form of legal tender.  See 31 U.S.C. § 5103; 12 U.S.C. § 411.  In United States v. Rifen, 577 F.2d 1111 (8th Cir. 1978), the court affirmed a conviction for willfully failing to file a return, rejecting the argument that Federal Reserve Notes are not subject to taxation.  "Congress has declared federal reserve notes legal tender . . . and federal reserve notes are taxable dollars."  Id. at 1112.  The courts have rejected this argument on numerous occasions.

**Relevant Case Law:**

Sanders v. Freeman, 221 F.3d 846, 855 (6th Cir. 2000) – in regard to defendant's argument "that imposing sales tax on the sale of legal-tender silver and gold coins unconstitutionally interferes with Congress's exclusive power to coin money is simply untenable," the court recognized that "most, if not all, of the courts that have considered this issue have held that imposing sales tax on the purchase of gold and silver coins and bullion for cash does not infringe on Congress's constitutional power to

coin and regulate currency." <u>See</u> <u>also</u> <u>United States v. Davenport,</u> 824 F.2d 1511, 1521 (7th Cir. 1987).

<u>United States v. Condo,</u> 741 F.2d 238, 239 (9th Cir. 1984) – the court upheld the taxpayer's criminal conviction, rejecting as "frivolous" the argument that Federal Reserve Notes are not valid currency, cannot be taxed, and are merely "debts."

<u>United States v. Rickman,</u> 638 F.2d 182, 184 (10th Cir. 1980) – the court affirmed the conviction for willfully failing to file a return and rejected the taxpayer's argument that "the Federal Reserve Notes in which he was paid were not lawful money within the meaning of Art. 1, § 8, United States Constitution."

<u>United States v. Daly,</u> 481 F.2d 28, 30 (8th Cir.), <u>cert. denied,</u> 414 U.S. 1064 (1973) – the court rejected as "clearly frivolous" the assertion "that the only 'Legal Tender Dollars' are those which contain a mixture of gold and silver and that only those dollars may be constitutionally taxed" and affirmed Daly's conviction for willfully failing to file a return.

<u>Jones v. Commissioner,</u> 688 F.2d 17 (6th Cir. 1982) – the court found the taxpayer's claim that his wages were paid in "depreciated bank notes" as clearly without merit and affirmed the Tax Court's imposition of an addition to tax for negligence or intentional disregard of rules and regulations.

### C. The Meaning of Certain Terms Used in the Internal Revenue Code

1. **Contention: Taxpayer is not a "citizen" of the United States, thus not subject to the federal income tax laws.**

Some individuals argue that they have rejected citizenship in the United States in favor of state citizenship; therefore, they are relieved of their federal income tax obligations. A variation of this argument is that a person is a free born citizen of a particular state and thus was never a citizen of the United States. The underlying theme of these arguments is the same: the person is not a United States citizen and is not subject to federal tax laws because only United States citizens are subject to these laws.

**The Law:** The Fourteenth Amendment to the United States Constitution defines the basis for United States citizenship, stating that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." The Fourteenth Amendment therefore establishes simultaneous state and federal citizenship. Claims that individuals are not citizens of the United States but are solely citizens of a sovereign state and not subject to federal taxation have been uniformly rejected by the courts. The IRS issued Revenue Ruling 2007-22, 2007-14 I.R.B. 866, warning taxpayers of the consequences of making this frivolous argument.

In April 2005, a federal district court in Georgia permanently barred Jonathan D. Luman blocking him from selling his "Tax Buster" program that was based on the false theory that customers can avoid paying tax by renouncing their Social Security numbers and becoming sovereign citizens.  See http://www.usdoj.gov/opa/pr/2005/April/05_tax_190.htm; see also 2005 TNT 93-17 (Apr. 7, 2005).

In September 2006, a federal district court in California permanently barred James L. Tolbert from preparing income tax returns for others, because he promoted a fraudulent tax scheme based on the frivolous theory, among others, that state residents are not liable for federal income tax since they are citizens of the state and not of the United States.  See http://www.usdoj.gov/opa/pr/2006/September/06_tax_602.html; see also 2006 TNT 177-31 (Sept. 8, 2006).

In January 2006, Lynn N. Ealy was sentenced in federal district court to 27 months imprisonment for his conviction on three counts of federal income tax evasion and ordered to pay restitution of $84,174 to the IRS.  The evidence against Mr. Ealy demonstrated various affirmative acts of evasion, including the fact that he claimed he was not a citizen of the United States and the tax laws were unconstitutional.  See 2006 TNT 18-48 (Jan. 12, 2006).

**Relevant Case Law:**

United States v. Hilgeford, 7 F.3d 1340, 1342 (7th Cir. 1993) – the court rejected "shop worn" argument that defendant is a citizen of the "Indiana State Republic" and therefore an alien beyond the jurisdictional reach of the federal courts.

United States v. Sileven, 985 F.2d 962 (8th Cir. 1993) – the court rejected the argument that the district court lacked jurisdiction because the taxpayer was not a federal citizen as "plainly frivolous."

United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993) – the court rejected the Gerads' contention that they were "not citizens of the United States, but rather 'Free Citizens of the Republic of Minnesota' and, consequently, not subject to taxation" and imposed sanctions "for bringing this frivolous appeal based on discredited, tax-protester arguments."

United States v. Sloan, 939 F.2d 499, 500 (7th Cir. 1991), cert. denied, 502 U.S. 1060, reh'g denied, 503 U.S. 953 (1992) – the court affirmed a tax evasion conviction and rejected Sloan's argument that the federal tax laws did not apply to him because he was a "freeborn, natural individual, a citizen of the State of Indiana, and a 'master' – not 'servant' – of his government."

United States v. Ward, 833 F.2d 1538, 1539 (11th Cir. 1987), cert. denied, 485 U.S. 1022 (1988) – the court found Ward's contention that he was not

an "individual" located within the jurisdiction of the United States to be "utterly without merit" and affirmed his conviction for tax evasion.

O'Driscoll v. Internal Revenue Service, 1991 U.S. Dist. LEXIS 9829, at *5-6 (E.D. Pa. 1991) – the court stated, "despite [taxpayer's] linguistic gymnastics, he is a citizen of both the United States and Pennsylvania, and liable for federal taxes."

Bland-Barclay v. Commissioner, T.C. Memo. 2002-20, 83 T.C.M. (CCH) 1119, 1121 (2002) – the court rejected taxpayers' claim that they were exempt from the federal income tax laws due to their status as "citizens of the Maryland Republic," characterized such arguments as "baseless and wholly without merit," and required taxpayers to pay a $1,500 penalty for making frivolous arguments.

Solomon v. Commissioner, T.C. Memo. 1993-509, 66 T.C.M. (CCH) 1201, 1202-03 (1993) – the court rejected Solomon's argument that as an Illinois resident his income was from outside the United States, stating "[he] attempts to argue an absurd proposition, essentially that the State of Illinois is not part of the United States. His hope is that he will find some semantic technicality which will render him exempt from Federal income tax, which applies generally to all U.S. citizens and residents. [His] arguments are no more than stale tax protester contentions long dismissed summarily by this Court and all other courts which have heard such contentions."

In September 2006, a federal district court in California barred James L. Tolbert from preparing federal tax returns. Mr. Tolbert promoted a tax scheme by representing, among other things, that residents of California or other states are not liable for federal income tax because they are "citizens of California (or other state) and not the United States," or that "American citizens working in the United States need not file federal income returns because 'compensation for labor' is totally different in meaning and in law from 'income.' See http://www.usdoj.gov/tax/txdv05416.htm

## 2. Contention: The "United States" consists only of the District of Columbia, federal territories, and federal enclaves.

Some argue that the United States consists only of the District of Columbia, federal territories (e.g., Puerto Rico, Guam, etc.), and federal enclaves (e.g., American Indian reservations, military bases, etc.) and does not include the "sovereign" states. According to this argument, if a taxpayer does not live within the "United States," as so defined, he is not subject to the federal tax laws.

**The Law:** The Internal Revenue Code imposes a federal income tax upon all United States citizens and residents, not just those who reside in the District of Columbia, federal territories, and federal enclaves. In United

22

States v. Collins, 920 F.2d 619, 629 (10th Cir. 1990), cert. denied, 500 U.S. 920 (1991), the court cited Brushaber v. Union Pac. R.R., 240 U.S. 1, 12-19 (1916), and noted the United States Supreme Court has recognized that the "sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves." This frivolous contention has been uniformly rejected by the courts. Furthermore, the IRS issued Revenue Ruling 2006-18, 2006-15 I.R.B. 743, warning taxpayers of the consequences of making this frivolous argument.

In April 2006, a federal district court in California permanently barred Michael Muhammad (a.k.a., Michael Eugene Wall and Michael Muta Ali Muhammad) from preparing federal income tax returns for others, because he promoted a fraudulent tax scheme by preparing returns reporting no income based on the theory that only income earned in the District of Columbia and other federal territories need be reported. See http://www.usdoj.gov/opa/pr/2006/April/06_tax_224.html; see also 2006 TNT 75-34 (Apr. 18, 2006).

In May 2005, a federal district judge sentenced Wayne C. Bentson to a four year prison term to be followed by three years of probation, as well as requiring Mr. Bentson to pay restitution of over $1.1 million for falsely advising clients, among other things, that the internal revenue laws only applied to individuals residing in the Virgin Islands, Guam and Puerto Rico. See http://www.usdoj.gov/opa/pr/2005/May/05_tax_275.htm; see also 2005 TNT 97-49 (May 18, 2005).

**Relevant Case Law:**

United States v. Cooper, 170 F.3d 691, 691 (7th Cir. 1999) – the court sanctioned defendant for filing of frivolous appeal wherein he argued, in pertinent part, that only residents of Washington, D.C. and other federal enclaves are subject to the federal tax laws because they alone are citizens of the United States.

United States v. Mundt, 29 F.3d 233, 237 (6th Cir. 1994) – the court rejected "patently frivolous" argument that defendant was not a resident of any "federal zone" and therefore not subject to federal income tax laws.

In re Becraft, 885 F.2d 547, 549-50 (9th Cir. 1989) – the court, observing Becraft's claim that federal laws apply only to United States territories and the District of Columbia "has no semblance of merit," and noting that this attorney had previously litigated cases in the federal appeals courts that had "no reasonable possibility of success," imposed monetary damages and expressed the hope "that this assessment will deter Becraft from asking this and other federal courts to expend more time and resources on patently frivolous legal positions."

United States v. Ward, 833 F.2d 1538, 1539 (11th Cir. 1987), cert. denied, 485 U.S. 1022 (1988) – the court rejected as a "twisted conclusion" the contention "that the United States has jurisdiction over only Washington, D.C., the federal enclaves within the states, and the territories and possessions of the United States," and affirmed a tax evasion conviction.

Barcroft v. Commissioner, T.C. Memo. 1997-5, 73 T.C.M. (CCH) 1666, 1667, appeal dismissed, 134 F.3d 369 (5th Cir. 1997) – Barcroft claimed that he was not "a 'U.S. citizen,' subject to federal jurisdiction, such as 'officers, employees, and elected officials of the United States, such as did not "reside within a federal territory such as Washington D.C., or a federal enclave within a State, or a U.S. possession." The court noted that Barcroft's statements "contain protester-type contentions that have been rejected by the courts as groundless," the court sustained penalties for failure to file returns and failure to pay estimated income taxes.

3. **Contention:  Taxpayer is not a "person" as defined by the Internal Revenue Code, thus is not subject to the federal income tax laws.**

Some maintain that they are not a "person" as defined by the Internal Revenue Code, and thus not subject to the federal income tax laws.  This argument is based on a tortured misreading of the Code.

**The Law:**  The Internal Revenue Code clearly defines "person" and sets forth which persons are subject to federal taxes.  Section 7701(a)(14) defines "taxpayer" as any person subject to any internal revenue tax and section 7701(a)(1) defines "person" to include an individual, trust, estate, partnership, or corporation.  Arguments that an individual is not a "person" within the meaning of the Internal Revenue Code have been uniformly rejected.  A similar argument with respect to the term "individual" has also been rejected.  The IRS issued Revenue Ruling 2007-22, 2007-14 I.R.B. 866, warning taxpayers of the consequences of making this frivolous argument.

**Relevant Case Law:**

United States v. Karlin, 785 F.2d 90, 91 (3d Cir. 1986), cert. denied, 480 U.S. 907 (1987) – the court affirmed Karlin's conviction for failure to file income tax returns and rejected his contention that he was "not a 'person' within meaning of 26 U.S.C. § 7203" as "frivolous and requir[ing] no discussion."

McCoy v. Internal Revenue Service, 88 A.F.T.R.2d (RIA) 5909, 2001 U.S. Dist. LEXIS 15113, at *21, 22 (D. Col. Aug. 7, 2001) – the court dismissed the taxpayer's complaint, which asserted that McCoy was a nonresident alien and not subject to tax, describing the taxpayer's argument as "specious and legally frivolous."

24

United States v. Rhodes, 921 F. Supp. 261, 264 (M.D. Pa. 1996) – the court stated that "[a]n individual is a person under the Internal Revenue Code."

Biermann v. Commissioner, 769 F.2d 707, 708 (11th Cir.), reh'g denied, 775 F.2d 304 (11th Cir. 1985) – the court said the claim that Biermann was not "a person liable for taxes" was "patently frivolous" and, given the Tax Court's warning to Biermann that his positions would never be sustained in any court, awarded the government double costs, plus attorney's fees.

Smith v. Commissioner, T.C. Memo. 2000-290, 80 T.C.M. (CCH) 377, 378-89 (2000) – the court described the argument that Smith "is not a 'person liable' for tax" as frivolous, sustained failure to file penalties, and imposed a penalty for maintaining "frivolous and groundless positions."

United States v. Studley, 783 F.2d 934, 937 n.3 (9th Cir. 1986) – the court affirmed a failure to file conviction, rejecting the taxpayer's contention that she was not subject to federal tax laws because she was "an absolute, freeborn, and natural individual" and went on to note that "this argument has been consistently and thoroughly rejected by every branch of the government for decades."

### 4. Contention: The only "employees" subject to federal income tax are employees of the federal government.

Some argue that the federal government can tax only employees of the federal government; therefore, employees in the private sector are immune from federal income tax liability. This argument is based on a misinterpretation of section 3401, which imposes responsibilities to withhold tax from "wages." That section establishes the general rule that "wages" include all remuneration for services performed by an employee for his employer. Section 3401(c) goes on to state that the term "employee" includes "an officer, employee or elected official of the United States, a State, or any political subdivision thereof . . . ."

**The Law:** Section 3401(c) defines "employee" and states that the term "includes an officer, employee or elected official of the United States . . . ." This language does not address how other employees' wages are subject to withholding or taxation. Section 7701(c) states that the use of the word "includes" "shall not be deemed to exclude other things otherwise within the meaning of the term defined." Thus, the word "includes" as used in the definition of "employee" is a term of enlargement, not of limitation. It clearly makes federal employees and officials a part of the definition of "employee," which generally includes private citizens. The Internal Revenue Service issued Revenue Ruling 2006-18, 2006-15 I.R.B. 743, warning taxpayers of the consequences of making this frivolous argument.

In June 2006, a federal district court in California permanently barred Christopher M. Hansen (using the business names of the "Family Guardian" and the "Sovereignty Education and Defense Ministry) from promoting a fraudulent tax scheme based on the frivolous theory, among others, that only federal workers are subject to the Internal Revenue Code. See http://www.usdoj.gov/opa/pr/2006/June/06_enrd_345.html; see also 2006 TNT 107-98 (Jun. 2, 2006).

In March 2007, a federal court in Michigan issued a temporary restraining order barring Donald A. Gray from preparing federal income tax returns for others. The court found that the Portage, Michigan, man had been preparing income tax returns for customers based on the frivolous theory that wages are not income for federal tax purposes unless the wage earner works for the government. See http://www.usdoj.gov/tax/txdv07024.htm.

In May 2007, a federal court in Michigan permanently barred Peter and Doreen Hendrickson from filing tax returns and forms on which they falsely report their income as zero. The injunction order also requires the couple to repay more than $20,000 in federal income, Social Security, and Medicare taxes that they had obtained by filing false tax returns with the IRS. The order notes that the couple based their improper conduct on a book Peter Hendrickson wrote called "Cracking the Code." The book states that federal tax withholding and income taxes on wages are applicable only for a limited class of people, primarily government employees. See http://www.usdoj.gov/tax/txdv07320.htm.

**Relevant Case Law:**

United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) – calling the instructions Latham wanted given to the jury "inane," the court said, "[the] instruction which indicated that under 26 U.S.C. § 3401(c) the category of 'employee' does not include privately employed wage earners is a preposterous reading of the statute. It is obvious within the context of [the law] the word 'includes' is a term of enlargement not of limitation, and the reference to certain entities or categories is not intended to exclude all others."

Sullivan v. United States, 788 F.2d 813, 815 (1st Cir. 1986) – the court rejected Sullivan's attempt to recover a civil penalty for filing a frivolous return, stating "to the extent [he] argues that he received no 'wages'. . . because he was not an 'employee' within the meaning of 26 U.S.C. § 3401(c), that contention is meritless. . . . The statute does not purport to limit withholding to the persons listed therein." The court imposed sanctions on Sullivan for bringing a frivolous appeal.

Peth v. Breitzmann, 611 F. Supp. 50, 53 (E.D. Wis. 1985) – the court rejected the taxpayer's argument "that he is not an 'employee' under

I.R.C. § 3401(c) because he is not a federal officer, employee, elected official, or corporate officer," stating, "[he] mistakenly assumes that this definition of 'employee' excludes all other wage earners."

Pabon v. Commissioner, T.C. Memo. 1994-476, 68 T.C.M. (CCH) 813, 816 (1994) – the court characterized Pabon's position – including that she was not subject to tax because she was not an employee of the federal or state governments – as "nothing but tax protester rhetoric and legalistic gibberish." The court imposed a penalty of $2,500 on Pabon for bringing a frivolous case, stating that she "regards this case as a vehicle to protest the tax laws of this country and espouse her own misguided views."

## D. Constitutional Amendment Claims

### 1. Contention: Taxpayers can refuse to pay income taxes on religious or moral grounds by invoking the First Amendment.

Some argue that taxpayers may refuse to pay federal income taxes based on their religious or moral beliefs, or objection to the use of taxes to fund certain government programs. These persons mistakenly invoke the First Amendment in support of this frivolous position.

**The Law:** The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment, however, does not provide a right to refuse to pay income taxes on religious or moral grounds, or because taxes are used to fund government programs opposed by the taxpayer. Nor does the First Amendment protect commercial speech or speech that aids or incites taxpayers to unlawfully refuse to pay federal income taxes, including speech that promotes abusive tax avoidance schemes.

**Relevant Case Law:**

United States v. Lee, 455 U.S. 252, 260 (1982) – the U.S. Supreme Court held that the broad public interest in maintaining a sound tax system is of such importance that religious beliefs in conflict with the payment of taxes provide no basis for refusing to pay, and stated that "[t]he tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief."

United States v. Indianapolis Baptist Temple, 224 F.3d 627, 629 – 631 (7th Cir. 2000), cert denied, 531 U.S. 1112 (2001) – the court rejected defendant's Free Exercise challenge to the federal employment tax as those laws were not restricted to the defendant or other religion-related

27

employers generally, and there was no indication that they were enacted for the purpose of burdening religious practices.

United States v. Ramsey, 992 F.2d 831, 833 (8th Cir. 1993) – the court rejected Ramsey's argument that filing federal income tax returns and paying federal income taxes violates his pacifist religious beliefs and stated that Ramsey "has no First Amendment right to avoid federal income taxes on religious grounds."

Wall v. United States, 756 F.2d 52 (8th Cir. 1985) – the court upheld the imposition of a $500 frivolous return penalty against Wall for taking a "war tax deduction" on his federal income tax return based on his religious convictions and stated the "necessities of revenue collection through a sound tax system raise governmental interests sufficiently compelling to outweigh the free exercise rights of those who find the tax objectionable on bona fide religious grounds."

United States v. Peister, 631 F2d. 658 (10th Cir. 1980) – the court rejected Peister's argument that he was exempt from income tax based on his vow of poverty after he became the minister of a church he formed; his First Amendment right to freedom of religion was not violated.

Jenkins v. Commissioner, 483 F.3d 90, 92 (2d Cir. 2007) - the court upheld the decision of the Tax Court that the collection of tax revenues for expenditures that offended the religious beliefs of individual taxpayers did not violate the Free Exercise Clause of the First Clause, the Religious Freedom Restoration Act of 1993, or the Ninth Amendment.  In addition, the court upheld the imposition of a $5,000 frivolous return penalty against Jenkins.

2.  **Contention:  Federal income taxes constitute a "taking" of property without due process of law, violating the Fifth Amendment.**

Some assert that the collection of federal income taxes constitutes a "taking" of property without due process of law, in violation of the Fifth Amendment.  Thus, any attempt by the IRS to collect federal income taxes owed by a taxpayer is unconstitutional.

**The Law:** The Fifth Amendment to the United States Constitution provides that a person shall not be "deprived of life, liberty, or property, without due process of law . . . ."  The U.S. Supreme Court stated in Brushaber v. Union Pacific R.R., 240 U.S. 1, 24 (1916), that "it is . . . well settled that [the Fifth Amendment] is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring upon the one hand a taxing power, and taking the same power away on the other by limitations of the due process clause."  Further, the Supreme Court has upheld the constitutionality of the summary administrative procedures contained in

the Internal Revenue Code against due process challenges, on the basis that a post-collection remedy (e.g., a tax refund suit) exists and is sufficient to satisfy the requirements of constitutional due process. <u>Phillips v. Commissioner,</u> 283 U.S. 589, 595-97 (1931).

The Internal Revenue Code provides methods to ensure due process to taxpayers: (1) the "refund method," set forth in section 7422(e) and 28 U.S.C. §§ 1341 and 1346(a), where a taxpayer must pay the full amount of the tax and then sue in a federal district court or in the United States Court of Federal Claims for a refund; and (2) the "deficiency method," set forth in section 6213(a), where a taxpayer may, without paying the contested tax, petition the United States Tax Court to redetermine a tax deficiency asserted by the IRS. Courts have found that both methods provide constitutional due process.

The IRS issued <u>Revenue Ruling 2005-19</u>, 2005-1 C.B. 819, which discusses this frivolous argument in more detail, warning taxpayers of the consequences of attempting to pursue a claim on these grounds.

For a discussion of frivolous tax arguments made in collection due process cases arising under sections 6320 and 6330, see Section II of this outline.

**Relevant Case Law:**

<u>Flora v. United States,</u> 362 U.S. 145, 175 (1960) – the United States Supreme Court held that a taxpayer must pay the full tax assessment before being able to file a refund suit in district court, noting that a person has the right to appeal an assessment to the Tax Court "without paying a cent."

<u>Schiff v. United States,</u> 919 F.2d 830 (2d Cir. 1990) – the court rejected a due process claim where the taxpayer chose not to avail himself of the opportunity to appeal a deficiency notice to the Tax Court.

3.  **Contention: Taxpayers do not have to file returns or provide financial information because of the protection against self-incrimination found in the Fifth Amendment.**

Some argue that taxpayers may refuse to file federal income tax returns, or may submit tax returns on which they refuse to provide any financial information, because they believe that their Fifth Amendment privilege against self-incrimination will be violated.

**The Law:** There is no constitutional right to refuse to file an income tax return on the ground that it violates the Fifth Amendment privilege against self-incrimination. In <u>United States v. Sullivan,</u> 274 U.S. 259, 264 (1927), the U.S. Supreme Court stated that the taxpayer "could not draw a conjurer's circle around the whole matter by his own declaration that to

29

write any word upon the government blank would bring him into danger of the law." The failure to comply with the filing and reporting requirements of the federal tax laws will not be excused based upon blanket assertions of the constitutional privilege against compelled self-incrimination under the Fifth Amendment.

The IRS issued Revenue Ruling 2005-19, 2005-1 C.B. 819, which discusses this frivolous argument in more detail, warning taxpayers of the consequences of attempting to pursue a claim on these grounds.

**Relevant Case Law:**

United States v. Schiff, 612 F.2d 73, 83 (2d Cir. 1979) – the court said that "the Fifth Amendment privilege does not immunize all witnesses from testifying. Only those who assert as to each particular question that the answer to that question would tend to incriminate them are protected . . . . [T]he questions in the income tax return are neutral on their face . . . [h]ence privilege may not be claimed against all disclosure on an income tax return."

United States v. Brown, 600 F.2d 248, 252 (10th Cir. 1979) – noting that the Supreme Court had established "that the self-incrimination privilege can be employed to protect the taxpayer from revealing the information as to an illegal source of income, but does not protect him from disclosing the amount of his income," the court said Brown made "an illegal effort to stretch the Fifth Amendment to include a taxpayer who wishes to avoid filing a return."

United States v. Neff, 615 F.2d 1235, 1241 (9th Cir.), cert. denied, 447 U.S. 925 (1980) – the court affirmed a failure to file conviction, noting that the taxpayer "did not show that his response to the tax form questions would have been self-incriminating. He cannot, therefore, prevail on his Fifth Amendment claim."

United States v. Daly, 481 F.2d 28, 30 (8th Cir.), cert. denied, 414 U.S. 1064 (1973) – the court affirmed a failure to file conviction, rejecting the taxpayer's Fifth Amendment claim because of his "error in . . . his blanket refusal to answer any questions on the returns relating to his income or expenses."

Sochia v. Commissioner, 23 F.3d 941 (5th Cir. 1994), cert. denied, 513 U.S. 1153 (1995) – the court affirmed tax assessments and penalties for failure to file returns, failure to pay taxes, and filing a frivolous return. The court also imposed sanctions for pursuing a frivolous case. The taxpayers had failed to provide any information on their tax return about income and expenses, instead claiming a Fifth Amendment privilege on each line calling for financial information.

### 4. Contention: Compelled compliance with the federal income tax laws is a form of servitude in violation of the Thirteenth Amendment.

This argument asserts that the compelled compliance with federal tax laws is a form of servitude in violation of the Thirteenth Amendment.

**The Law:** The Thirteenth Amendment to the United States Constitution prohibits slavery within the United States, as well as the imposition of involuntary servitude, except as punishment for a crime of which a person shall have been duly convicted. In Porth v. Brodrick, 214 F.2d 925, 926 (10th Cir. 1954), the Court of Appeals stated that "if the requirements of the tax laws were to be classed as servitude, they would not be the kind of involuntary servitude referred to in the Thirteenth Amendment." Courts have consistently found arguments that taxation constitutes a form of involuntary servitude to be frivolous.

The IRS issued Revenue Ruling 2005-19, 2005-1 C.B. 819, which discusses this frivolous argument in more detail, warning taxpayers of the consequences of attempting to pursue a claim on these grounds.

**Relevant Case Law:**

Porth v. Brodrick, 214 F.2d 925, 926 (10th Cir. 1954) – the court described the taxpayer's Thirteenth and Sixteenth Amendment claims as "clearly unsubstantial and without merit," as well as "far-fetched and frivolous."

United States v. Drefke, 707 F.2d 978, 983 (8th Cir. 1983) – the court affirmed Drefke's failure to file conviction, rejecting his claim that the Thirteenth Amendment prohibited his imprisonment because that amendment "is inapplicable where involuntary servitude is imposed as punishment for a crime."

Ginter v. Southern, 611 F.2d 1226 (8th Cir. 1979) – the court rejected the taxpayer's claim that the Internal Revenue Code results in involuntary servitude in violation of the Thirteenth Amendment.

Kasey v. Commissioner, 457 F.2d 369 (9th Cir. 1972) – the court rejected as without merit the argument that the requirements to keep records and to prepare and file tax returns violated the Kaseys' Fifth Amendment privilege against self-incrimination and amount to involuntary servitude prohibited by the Thirteenth Amendment.

Wilbert v. Internal Revenue Service (In re Wilbert), 262 B.R. 571, 578, 88 A.F.T.R.2d 6650 (Bankr. N.D. Ga. 2001) – the court rejected the taxpayer's argument that taxation is a form of involuntary servitude prohibited by the Thirteenth Amendment, stating that "[i]t is well-settled American jurisprudence that constitutional challenges to the IRS' authority

to collect individual income taxes have no legal merit and are 'patently frivolous.'"

## 5. Contention: The Sixteenth Amendment to the United States Constitution was not properly ratified, thus the federal income tax laws are unconstitutional.

This argument is based on the premise that all federal income tax laws are unconstitutional because the Sixteenth Amendment was not officially ratified, or because the State of Ohio was not properly a state at the time of ratification. This argument has survived over time because proponents mistakenly believe that the courts have refused to address this issue.

**The Law:** The Sixteenth Amendment provides that Congress shall have the power to lay and collect taxes on income, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration. U.S. Const. amend. XVI. The Sixteenth Amendment was ratified by forty states, including Ohio (which became a state in 1803; see Bowman v. United States, 920 F. Supp. 623 n.1 (E.D. Pa. 1995) (discussing the 1953 joint Congressional resolution that confirmed Ohio's status as a state retroactive to 1803), and issued by proclamation in 1913. Shortly thereafter, two other states also ratified the Amendment. Under Article V of the Constitution, only three-fourths of the states are needed to ratify an Amendment. There were enough states ratifying the Sixteenth Amendment even without Ohio to complete the number needed for ratification. Furthermore, the U.S. Supreme Court upheld the constitutionality of the income tax laws enacted subsequent to ratification of the Sixteenth Amendment in Brushaber v. Union Pacific R.R., 240 U.S. 1 (1916). Since that time, the courts have consistently upheld the constitutionality of the federal income tax.

Similarly, Robert L. Schulz, along with his organizations, We the People Congress and We the People Foundation, marketed and distributed to customers a fraudulent "Tax Termination Package" supposedly providing a way for taxpayers to legally stop withholding and paying taxes. The scheme was based on a number of false premises, including the claim that the Sixteenth Amendment was not properly ratified. In August 2007, a federal court permanently enjoined Mr. Schulz and his organizations from promoting the scheme. See http://www.usdoj.gov/tax/txdv07595.htm.

The IRS issued Revenue Ruling 2005-19, 2005-1 C.B. 819, which discusses this frivolous argument in more detail, warning taxpayers of the consequences of attempting to pursue a claim on these grounds.

**Relevant Case Law:**

Miller v. United States, 868 F.2d 236, 241 (7th Cir. 1989) (per curiam) – the court stated, "We find it hard to understand why the long and unbroken line of cases upholding the constitutionality of the sixteenth amendment generally, Brushaber v. Union Pacific Railroad Company . . . and those specifically rejecting the argument advanced in The Law That Never Was, have not persuaded Miller and his compatriots to seek a more effective forum for airing their attack on the federal income tax structure." The court imposed sanctions on them for having advanced a "patently frivolous" position.

United States v. Stahl, 792 F.2d 1438, 1441 (9th Cir. 1986), cert. denied, 479 U.S. 1036 (1987) – stating that "the Secretary of State's certification under authority of Congress that the sixteenth amendment has been ratified by the requisite number of states and has become part of the Constitution is conclusive upon the courts," the court upheld Stahl's conviction for failure to file returns and for making a false statement.

United States v. Foster, 789 F.2d 457 (7th Cir.), cert. denied, 479 U.S. 883 (1986) – the court affirmed Foster's conviction for tax evasion, failing to file a return, and filing a false W-4 statement, rejecting his claim that the Sixteenth Amendment was never properly ratified.

Socia v. Commissioner, 23 F.3d 941 (5th Cir. 1994) – the court held that defendant's appeals which challenged Sixteenth Amendment income tax legislation were frivolous and warranted sanctions.

Knoblauch v. Commissioner, 749 F.2d 200, 201 (5th Cir. 1984), cert. denied, 474 U.S. 830 (1986) – the court rejected the contention that the Sixteenth Amendment was not constitutionally adopted as "totally without merit" and imposed monetary sanctions against Knoblauch based on the frivolousness of his appeal. "Every court that has considered this argument has rejected it," the court observed.

Stearman v. Commissioner, T.C. Memo. 2005-39, 89 T.C.M. (CCH) 823 (2005), aff'd, 436 F.3d 533 (5th Cir. 2006). – the court imposed sanctions totaling $25,000 against the taxpayer for advancing arguments characteristic of tax-protester rhetoric that have been universally rejected by the courts, including arguments regarding the Sixteenth Amendment. In affirming the Tax Court's holding, the Fifth Circuit granted the government's request for further sanctions of $6,000 against the taxpayer for maintaining frivolous arguments on appeal, and the Fifth Circuit imposed an additional $6,000 sanctions on its own, for total additional sanctions of $12,000.

### 6. Contention: The Sixteenth Amendment does not authorize a direct non-apportioned federal income tax on United States citizens.

Some assert that the Sixteenth Amendment does not authorize a direct non-apportioned income tax and thus, U.S. citizens and residents are not subject to federal income tax laws.

**The Law:** The constitutionality of the Sixteenth Amendment has invariably been upheld when challenged. And numerous courts have both implicitly and explicitly recognized that the Sixteenth Amendment authorizes a non-apportioned direct income tax on United States citizens and that the federal tax laws as applied are valid. In <u>United States v. Collins</u>, 920 F.2d 619, 629 (10th Cir. 1990), <u>cert. denied,</u> 500 U.S. 920 (1991), the court cited to <u>Brushaber v. Union Pac. R.R.</u>, 240 U.S. 1, 12-19 (1916), and noted that the U.S. Supreme Court has recognized that the "sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation."

### Relevant Case Law:

<u>In re Becraft,</u> 885 F.2d 547 (9th Cir. 1989) – the court affirmed a failure to file conviction, rejecting the taxpayer's frivolous position that the Sixteenth Amendment does not authorize a direct non-apportioned income tax.

<u>United States v. Collins,</u> 920 F.2d 619, 629 (10th Cir. 1990) – the court found defendant's argument that the Sixteenth Amendment does not authorize a direct, non-apportioned tax on United States citizens similarly to be "devoid of any arguable basis in law."

<u>Lovell v. United States,</u> 755 F.2d 517, 518 (7th Cir. 1984) – the court rejected the argument that the Constitution prohibits imposition of a direct tax without apportionment, and upheld the district court's frivolous return penalty assessment and the award of attorneys' fees to the government "because [the taxpayers'] legal position was patently frivolous." The appeals court imposed additional sanctions for pursuing "frivolous arguments in bad faith."

<u>Broughton v. United States,</u> 632 F.2d 706 (8th Cir. 1980) – the court rejected a refund suit, stating that the Sixteenth Amendment authorizes imposition of an income tax without apportionment among the states.

<u>Stearman v. Commissioner,</u> T.C. Memo. 2005-39, 89 T.C.M. (CCH) 823 (2005), <u>aff'd,</u> 436 F.3d 533 (5th Cir. 2006) – the court imposed sanctions totaling $25,000 against the taxpayer for advancing arguments characteristic of tax-protester rhetoric that has been universally rejected by the courts, including arguments regarding the Sixteenth Amendment. In affirming the Tax Court's holding, the Fifth Circuit granted the government's request for further sanctions of $6,000 against the taxpayer

for maintaining frivolous arguments on appeal, and the Fifth Circuit imposed an additional $6,000 sanctions on its own, for total additional sanctions of $12,000.

### E. Fictional Legal Bases

1. **Contention: The Internal Revenue Service is not an agency of the United States.**

Some argue that the IRS is not an agency of the United States but rather a private corporation, because it was not created by positive law (i.e., an act of Congress) and that, therefore, the IRS does not have the authority to enforce the Internal Revenue Code.

**The Law:** There is a host of constitutional and statutory authority establishing that the IRS is an agency of the United States. The U.S. Supreme Court stated in Donaldson v. United States, 400 U.S. 517, 534 (1971), "[w]e bear in mind that the Internal Revenue Service is organized to carry out the broad responsibilities of the Secretary of the Treasury under § 7801(a) of the 1954 Code for the administration and enforcement of the internal revenue laws."

Pursuant to section 7801, the Secretary of the Treasury has full authority to administer and enforce the internal revenue laws and has the power to create an agency to enforce such laws. Based upon this legislative grant, the IRS was created. Thus, the IRS is a body established by "positive law" because it was created through a congressionally mandated power. Moreover, section 7803(a) explicitly provides that there shall be a Commissioner of Internal Revenue who shall administer and supervise the execution and application of the internal revenue laws.

In April 2006, a federal district court in Louisiana permanently barred Eddie Ferrand, Glenda F. Elliott, and William N. Kennedy, from preparing tax returns, because they had understated income on their customers' federal income tax returns based on the frivolous premise, among others, that the IRS is an illegal organization. See http://www.usdoj.gov/opa/pr/2006/April/06_tax_226.html; see also 2006 TNT 75-36.

**Relevant Case Law:**

Salman v. Dept. of Treasury, 899 F. Supp. 471 (D. Nev. 1995) – the court described Salman's contention that the IRS is not a government agency of the United States as wholly frivolous and dismissed his claim with prejudice.

Young v. Internal Revenue Service, 596 F. Supp. 141 (N.D. Ind. 1984) – the court granted summary judgment in favor of the government, rejecting

Young's claim that the IRS is a private corporation, rather than a government agency.

**2. Contention:  Taxpayers are not required to file a federal income tax return, because the instructions and regulations associated with the Form 1040 do not display an OMB control number as required by the Paperwork Reduction Act.**

Some argue that taxpayers are not required to file tax returns because of the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501, et seq. ("PRA"). The PRA was enacted to limit federal agencies' information requests that burden the public.  The "public protection" provision of the PRA provides that no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved does not display a current control number assigned by the Office of Management and Budget [OMB] Director.  44 U.S.C. § 3512. Advocates of this contention claim that they cannot be penalized for failing to file Form 1040, because the instructions and regulations associated with the Form 1040 do not display any OMB control number.

**The Law:**  The courts have uniformly rejected this argument on different grounds.  Some courts have simply noted that the PRA applies to the forms themselves, not to the instruction booklets, and because the Form 1040 does have a control number, there is no PRA violation.

Other courts have held that Congress created the duty to file returns in section 6012(a) and "Congress did not enact the PRA's public protection provision to allow OMB to abrogate any duty imposed by Congress." United States v. Neff, 954 F.2d 698, 699 (11th Cir. 1992).  Also, the IRS issued Revenue Ruling 2006-21, 2006-15 I.R.B. 745, warning taxpayers of the consequences of making this frivolous argument.

**Relevant Case Law:**

United States v. Patridge, __F.3d __, 2007 WL 3355739 (7th Cir. 2007) – in the course of upholding the taxpayer's conviction for tax evasion, the court addressed and rejected the taxpayer's contention that the Paperwork Reduction Act foreclosed his conviction.

United States v. Wunder, 919 F.2d 34 (6th Cir. 1990) – the court rejected Wunder's claim of a PRA violation, affirming his conviction for failing to file a return.

Salberg v. United States, 969 F.2d 379 (7th Cir. 1992) – the court affirmed Salberg's conviction for tax evasion and failing to file a return, rejecting his claims under the PRA.

United States v. Holden, 963 F.2d 1114 (8th Cir.), cert. denied, 506 U.S. 958 (1992) – the court affirmed Holden's conviction for failing to file a

return and rejected his contention that he should have been acquitted because tax instruction booklets fail to comply with the PRA.

United States v. Hicks, 947 F.2d 1356, 1359 (9th Cir. 1991) – the court affirmed Hicks' conviction for failing to file a return, finding that the requirement to provide information is required by law, not by the IRS. "This is a legislative command, not an administrative request. The PRA was not meant to provide criminals with an all-purpose escape hatch."

Lonsdale v. United States, 919 F.2d 1440, 1445 (10th Cir. 1990) – the court held that the Paperwork Reduction Act does not apply to summonses and collection notices.

Saxon v. United States, T.C. Memo. 2006-52, 91 T.C.M. (CCH) 914 (2006) - the court, in imposing $5,000 sanctions against Saxon, found claims that violation of the Paperwork Reduction Act excuses a taxpayer from filing returns or paying taxes have been universally rejected as meritless.

3. **Contention:  African Americans can claim a special tax credit as reparations for slavery and other oppressive treatment.**

Proponents of this contention assert that African Americans can claim a so-called "Black Tax Credit" on their federal income tax returns as reparations for slavery and other oppressive treatment suffered by African Americans.  A similar frivolous argument has been made that Native Americans are entitled to a credit on their federal income tax returns as a form of reparations for past oppressive treatment.

**The Law:**  There is no provision in the Internal Revenue Code which allows taxpayers to claim a "Black Tax Credit" or a credit for Native American reparations.  It is a well settled principle of law that deductions and credits are a matter of legislative grace.  See, e.g., Wilson v. Commissioner, T.C. Memo. 2001-139, 81 T.C.M. (CCH) 1745 (2001). Unless specifically provided for in the Internal Revenue Code, no deduction or credit may be allowed.

The IRS indicated in News Release IR-2002-08, 2002 I.R.B. LEXIS 30, that it will crack down on promoters of "slavery reparation tax credit" and "Native American reparations" scams.  See 2002 TNT 17-15 (Jan. 24, 2002).  Also, according to the News Release, the IRS will implement a new policy under which these reparation claims will be treated as a frivolous tax return which could result in a potential $500 penalty. Id.  The IRS issued Revenue Ruling 2004-33, 2004-1 C.B. 628, warning taxpayers of the consequences of making this frivolous argument.  Also, with respect to a somewhat similar argument, the IRS issued Revenue Ruling 2006-20, 2006-15 I.R.B. 746, warning taxpayers from claiming an exemption for Native Americans from federal income tax liability based upon an unspecified "Native American Treaty."

37

Persons who claim refunds based on the slavery reparation tax credit or assist others in doing so are subject to prosecution for violation of federal tax laws. In July 2003, Robert L. Foster and Crystal D. Foster, father and daughter, were convicted of conspiracy to defraud the United States with respect to such claims and of filing false, fictitious and fraudulent claims. On October 23, 2003, Robert Foster was sentenced to 13 years in prison and Crystal Foster was sentenced to 3 years and 1 month in prison. See 2003 TNT 206-31 (Oct. 23, 2003). In September 2005, the Third Circuit affirmed Robert Foster's conviction, but remanded the case for resentencing. See 2005 TNT 187-18 (Sept. 23, 2005).

Furthermore, the United States has a cause of action for injunctive relief against a party suspected of violating the tax laws. Sections 7407 and 7408 provide for injunctive relief against income tax preparers and promoters of abusive tax shelters, respectively, in these types of cases. For example, on March 31, 2003, a federal district court permanently barred tax return preparer, Andrew W. Wiley, from preparing federal income tax returns claiming refunds based on a non-existent tax credit for slavery reparations finding that Wiley engaged in "deceptive conduct which has interfered substantially with the proper administration" of the tax laws. United States v. Wiley, No. 3:02-cv-209WS (S.D. Miss. 2002); see 2003 TNT 62-18 (March 31, 2003).

In August 2007, a federal court in Georgia permanently barred Derrick Sanders from promoting a tax fraud scheme involving false claims. Sanders, in promoting the scheme, repeatedly made false statements that the Yamassee group is a Native American tribe whose members are exempt from federal income tax. Sanders also prepared forms for customers to use improperly to instruct their employers to stop withholding taxes from wages. See http://www.usdoj.gov/tax/txdv05494.htm and http://www.usdoj.gov/tax/txdv06095.htm

**Relevant Case Law:**

Taylor v. United States, 57 Fed. Cl. 264, 266 (2003) – the court upheld Service's denial of Taylor's refund claim, which was based on "being reduced to a second class citizen, but billed first class citizenship taxes for over 60 years," holding that the Internal Revenue Code does not contain a provision allowing slavery reparation claims.

Wilkins v. Commissioner, 120 T.C. 109 (2003) – the court found that the Internal Revenue Code does not provide a tax deduction, credit, or other allowance for slavery reparations.

George v. Commissioner, T.C. Memo. 2006-121 – the court rejected George's frivolous argument that he is an "Indian not paying taxes" finding that Native Americans are subject to the same federal income tax laws as are other United States citizens, unless there is an exemption created by treaty or statute.

<u>Gunton v. Commissioner</u>, T.C. Memo. 2006-122 – the court rejected Gunton's frivolous arguments finding that Native Americans are subject to the same federal income tax laws as are other United States citizens, unless there is an exemption created by treaty or statute.

<u>United States v. Bridges,</u> 86 A.F.T.R.2d (RIA) 5280 (4th Cir. 2000) – the court upheld Bridges' conviction of aiding and assisting the preparation of false tax returns, on which he claimed a non-existent "Black Tax Credit."

<u>United States v. Haugabook,</u> 2002 U.S. Dist. LEXIS 25314 (M.D. Ga. 2002) – the court entered a permanent injunction against Haugabook prohibiting him from preparing returns or other documents to be filed with the IRS claiming a tax credit or refund for reparations for slavery or other fabricated tax credits or refunds.

<u>United States v. Mims,</u> 2002 U.S. Dist. LEXIS 25291 (S.D. Ga. 2002) – the court entered a permanent injunction against the defendants prohibiting them from preparing returns or other documents with the IRS claiming a credit or refund for reparations for slavery or any other fabricated tax credit or refund.

<u>United States v. Foster,</u> 2002-1 U.S.T.C. (CCH) ¶ 50,263 (E.D. Va. 2002) – the court held that the United States clearly established its right to recover an erroneously paid refund in the amount of $500,000, plus interest, where the claim for refund was based on the slavery reparation tax credit.

<u>United States v. Foster,</u> 2002-2 U.S.T.C. (CCH) ¶ 50,785 (E.D. Va. 2002) – the court held that no provision of the Internal Revenue Code allows for a tax credit for slavery reparations and entered an injunction against Foster (an income tax return preparer) prohibiting him from preparing returns or refund claims based on fabricated tax credits.

4. **Contention:  Taxpayers are entitled to a refund of the Social Security taxes paid over their lifetime.**

Proponents of this contention encourage individuals to file claims for refund of the Social Security taxes paid during their lifetime, on the basis that the claimants have sought to waive all rights to their Social Security benefits.  Additionally, some advise taxpayers to claim a charitable contribution deduction as a result of their "gift" of these benefits or of the Social Security taxes to the United States.

**The Law:**  There is no provision in the Internal Revenue Code, or any other provision of law, which allows for a refund of Social Security taxes paid on the grounds asserted above.  In <u>Crouch v. Commissioner,</u> T.C. Memo. 1990-309, 59 T.C.M. (CCH) 938 (1990), the Tax Court sustained an IRS determination that a person may not claim a charitable contribution deduction based upon the waiver of future Social Security benefits.

The IRS issued <u>Revenue Ruling 2005-17</u>, 2005-1 C.B. 823, which discusses this frivolous argument in more detail, warning taxpayers of the consequences of attempting to pursue a claim on these grounds.

5. **Contention: An "untaxing" package or trust provides a way of legally and permanently avoiding the obligation to file federal income tax returns and pay federal income taxes.**

Advocates of this idea believe that an "untaxing" package or trust provides a way of legally and permanently "untaxing" oneself so that a person would no longer be required to file federal income tax returns and pay federal income taxes. Promoters who sell such tax evasion plans and supposedly teach individuals how to remove themselves from the federal tax system rely on many of the above-described frivolous arguments, such as the claim that payment of federal income taxes is voluntary, that there is no requirement for a person to file federal income tax returns, and that there are legal ways not to pay federal income taxes.

**The Law:** The underlying claims for these "untaxing" packages are frivolous, as specified above. Furthermore, the Internal Revenue Service issued <u>Revenue Ruling 2006-19</u>, 2006-15 I.R.B. 749, warning that taxpayers may not eliminate their federal income tax liability by attributing income to a trust and claiming expense deductions related to that trust.

Promoters of these "untaxing" schemes as well as willful taxpayers have been subjected to criminal penalties for their actions. Taxpayers who have purchased and followed these "untaxing" plans have also been subjected to civil penalties for failure to timely file a federal income tax return and failure to pay federal income taxes.

Section 7408 provides a cause of action for injunctive relief to the United States against a party suspected of violating the tax laws. On November 15, 2001, the United States filed complaints for permanent injunctions pursuant to section 7408 against three individuals (David Bosset, Thurston Bell, and Harold Hearn) for failing to sign tax returns, promoting schemes that they knew were false or fraudulent, and engaging in the preparation of documents that understate tax liability. <u>United States v. Bosset</u>, No. 8:01-cv-2154-T-26TBM (M.D. Fla. 2001); <u>United States v. Bell</u>, No. 1:CV-01-2159 (M.D. Penn. 2001); <u>United States v. Hearn</u>, No. 1:01-CV-3058 (N.D. Ga. 2001).

On January 29, 2002, a consent order was entered in <u>United States v. Hearn</u> in favor of the United States. The order permanently enjoined Mr. Hearn and his representatives from, among other things, promoting or selling tax shelter plans, including but not limited to the section 861 argument. (<u>See</u> Section I.B.2 of this outline concerning a section 861 argument.) In the order, Mr. Hearn agreed that he relied upon the frivolous section 861 argument in making false or fraudulent statements

on federal income tax returns regarding the excludability of wages and other items from income. A permanent injunction order was entered in United States v. Bosset on February 27, 2003, barring Mr. Bosset from promoting the frivolous section 861 argument. A permanent injunction order was entered in United States v. Bell on January 29, 2004, enjoining Mr. Bell from promoting frivolous positions for fraudulent tax schemes. The Third Circuit affirmed the permanent injunction against Bell in July 2005. United States v. Bell, 414 F.3d 474 (3d Cir. 2005).

In September 2004, a federal district court granted a preliminary injunction against James Binge and Terrence Bentivegna enjoining them from promoting abuse tax shelters and preparing federal tax returns. The court found that the plan promoted by these two individuals (doing business as Accounting & Financial Services) encouraging others to form various trusts without a legitimate legal basis in order to avoid federal taxes was an abusive tax scheme. United States v. Binge et. al, No. 5:04-CV-01419 (N.D. Ohio Sept. 27, 2004); see http://www.usdoj.gov/tax/txdv04658.htm; see also 2004 TNT 218-12 (Sept. 27, 2004). In March 2005, a federal district court in Florida permanently barred Fred J. Anderson, Deborah A. Martin, and Richard A. Walters from promoting sham trust tax schemes that assisted customers in establishing trusts, foundations, and corporations that the customers used to illegally eliminate or reduce their federal tax liabilities by claiming improper deductions. See http://www.usdoj.gov/opa/pr/2005/March/05_cdr_105.htm; see also 2005 TNT 45-46 (Mar. 8, 2005).

In April 2005, a federal district court in Georgia permanently enjoined Jonathan D. Luman from promoting and selling his "Tax Buster Guide" which falsely instructs customers they can refuse to file tax returns or pay federal taxes based on various frivolous arguments. See http://www.usdoj.gov/opa/pr/2005/April/05_tax_190.htm; see also 2005 TNT 93-17 (Apr. 7, 2005).

In June 2005, a federal district court judge in Los Angeles sentenced five individuals (including the leader of the operation, Lynne Meredith) associated with a tax fraud group known as "We the People" to prison terms ranging from 20 months to 121 months. The convictions were based on evidence that the group conducted seminars falsely instructing attendees, among other things, that they could shield income and assets from federal income taxation by using bogus "pure trusts." See http://www.usdoj.gov/usao/cac/text_only/pr2005/086.html; see also 2005 TNT 109-30 (Jun. 7, 2005).

In November 2005, a federal district court judge in Dallas sentenced Daniel A. Fisher to nearly 20 years imprisonment and ordered him to pay a $1,000,000 fine. The conviction was based, in part, on evidence that Fisher prepared, or aided in preparing, income tax returns that were fraudulent because they involved the creation of sham business entities

and transactions aimed at eliminating taxes owed by the taxpayers.  See http://www.usdoj.gov/usao/txn/PressRel05/fisher_daniel_irs_sen_pr.html; 2005 TNT 222-27 (Nov. 16, 2005).

In May 2006, a federal district court judge in Washington sentenced David Carroll Stephenson to 8 years in prison and ordered him to pay more than $8.5 million in restitution to the IRS.  The conviction was based on evidence that Stephenson assisted hundreds of taxpayers in forming and operating sham trusts designed to evade paying income taxes.  See 2006 TNT 97-27 (May 18, 2006).

Furthermore, persons making frivolous arguments may be denied the ability to practice before the IRS.  In July 2004, the Treasury Department denied a request for reinstatement to practice before the IRS made by Joseph R. Banister, now a CPA but formerly an IRS Criminal Investigations agent.  Mr. Banister made various frivolous arguments, including the contention that only foreign-source income is taxable and the contention that the Sixteenth Amendment was not ratified, which led to the decision to deny his request.  See 2004 TNT 145-3 (July 14, 2004).

**Relevant Case Law:**

United States v. Andra, 218 F.3d 1106 (9th Cir. 2000) – in affirming the conviction of a promoter of an untaxing scheme for tax evasion and conspiracy, the court found that it was proper to include the tax liabilities of persons Andra recruited into a tax fraud conspiracy when calculating the effect of his actions for sentencing.

United States v. Clark, 139 F.3d 485 (5th Cir.), cert. denied, 525 U.S. 899 (1998) –  the court upheld convictions of defendants involved with The Pilot Connection Society for conspiracy to defraud the United States and aiding and abetting the filing of fraudulent Forms W-4.

Robinson v. Commissioner, T.C. Memo. 1995-102, 69 T.C.M. (CCH) 2061, 2062 (1995) –  the court quoted language from Hanson v. Commissioner, 696 F.2d 1232, 1234 (9th Cir. 1983) that "[n]o reasonable person would have trusted this scheme to work."

King v. Commissioner, T.C. Memo. 1995-524, 70 T.C.M. (CCH) 1152 (1995) – the court found King, who had followed the Pilot Connection's "untaxing" techniques, liable for penalties for failure to file returns and for failing to make sufficient estimated tax payments.

United States v. Raymond, 228 F.3d 804, 812 (7th Cir. 2000), cert. denied, 533 U.S. 902 (2001) – the court affirmed a permanent injunction against taxpayers who promoted a "De-Taxing America Program," forbidding them from engaging in certain activities that incited others to violate tax laws.  The court said, "[W]e conclude that the statements the appellants made in the Just Say No advertisement were representations

concerning the tax benefits of purchasing and following the De-Taxing America Program that the appellants reasonably should have known were false."

United States v. Kaun, 827 F.2d 1144 (7th Cir. 1987) – the court affirmed the district court's injunction prohibiting the taxpayer from inciting others to submit tax returns based on false income tax theories.

United States v. Krall, 835 F.2d 711 (8th Cir. 1987) – the court held that the trusts used were shams. The defendant, an optometrist, exercised the same dominion and control over the corpus and income of the trusts as he had before the trusts were executed. The court further found the defendant illegally attempted to assign his earned income to the various trusts.

United States v. Scott, 37 F.3d 1564 (10th Cir. 1994) – the court concluded the true grantor of the trusts was in substance the purchaser, who was also the trustee, as well as the beneficiary. It was as if there were no transfers at all. Therefore the purchaser was subject to tax on all the income of the various trusts. The defendants were the promoters of a multi-tiered trust package marketed to purchasers as a device to eliminate tax liability without losing control over their assets or income.

United States v. Meek, 998 F.2d 776 (10th Cir. 1993) – the court upheld Meek's conviction of willfully failing to file an income tax return and willfully attempting to evade taxes. Meek's trust had been formed through his membership in an organization (a "warehouse bank") that provided its members the opportunity to warehouse their funds until directed to disburse them. The warehouse bank's numbering system for conducting transactions protected its members' privacy, thus hiding their assets and income.

6. **Contention: A "corporation sole" can be established and used for the purpose of avoiding federal income taxes.**

Advocates of this idea believe they can reduce their federal tax liability by taking the position that the taxpayer's income belongs to a "corporation sole" (these have also been referred to as "ministerial trusts"), an entity created for the purpose of avoiding taxes. A valid corporation sole is a corporate form that enables religious leaders to hold property and conduct business for the religious entity. Participants in this scheme apply for incorporation under the pretext of being an official of a church or other religious organization. Participants contend that their income is exempt from taxation because the income allegedly belongs to the corporation sole, which is claimed to be a tax exempt organization described in section 501(c)(3).

**The Law:** A valid corporation sole enables a bona fide religious leader, such as a bishop or other authorized religious official, to incorporate under

state law, in his capacity as a religious official.  See, e.g., Berry v. Society of Saint Pius X, 69 Cal. App. 4th 354 (1999).  A corporation sole may own property and enter into contracts as a natural person, but only for the purposes of the religious entity and not for the individual office holder's personal benefit.  A legitimate corporation sole is designed to ensure continuity of ownership of property dedicated to the benefit of a legitimate religious organization.

A taxpayer cannot avoid income tax or other financial responsibilities by purporting to be a religious leader and forming a corporation sole for tax avoidance purposes.  The claims that such a corporation sole is described in section 501(c)(3) and that assignment of income and transfer of assets to such an entity will exempt an individual from income tax are meritless.  Courts have repeatedly rejected similar arguments as frivolous, imposed penalties for making such arguments, and upheld criminal tax evasion convictions against those making or promoting the use of such arguments.

The IRS issued Revenue Ruling 2004-27, 2004-1 C.B. 625, which discusses this frivolous argument in more detail, warning taxpayers of the consequences of attempting to use this scheme.

In December 2004, a federal district court in Oregon permanently barred Judy Harkins from selling a fraudulent tax scheme promoting the use of "corporation sole."  The court found that Harkins falsely told customers the plan could be used to avoid federal income tax and that Harkins knew or had reason to know the statements were false.  See http://www.usdoj.gov/tax/txdv04777.htm; see also 2004 TNT 234-65 (Dec. 3, 2004).  In April 2005, a federal district court in Washington entered a preliminary injunction order barring Glen Stoll from selling a fraudulent "corporation sole" and "ministerial trust" scheme on the Internet.  The court found that Stoll did not create the fraudulent entities for religious reasons, but instead created them to operate businesses, such as pest-control and carpet-cleaning companies.  See http://www.usdoj.gov/tax/txdv05065.htm; see also 2005 TNT 81-29 (Apr. 27, 2005).

**Relevant Case Law:**

United States v. Heineman, 801 F.2d 86 (2d Cir. 1986) – the court upheld the conviction and three year prison sentence imposed against the defendants for promoting use of purported church entities to avoid taxes.

United States v. Adu, 770 F.2d 1511 (9th Cir. 1985) – the court upheld the conviction against Adu for aiding and assisting in the preparation and presentation of false income tax returns with respect to false charitable deductions to purported church entities.

Svedahl v. Commissioner, 89 T.C. 245 (1987) – the court sanctioned Svedahl under section 6673 in the amount of $5,000 for using contributions to purported church entities to shield income and pay personal expenses.

## II.  FRIVOLOUS ARGUMENTS IN COLLECTION DUE PROCESS CASES

Under sections 6320 (pertaining to liens) and 6330 (pertaining to levies), the IRS must provide taxpayers notice and an opportunity for an administrative appeals hearing upon the filing of a notice of federal tax lien (section 6320) and prior to levy (section 6330). Taxpayers have the right to seek judicial review of the IRS's determination in these proceedings. Section 6330(d). These reviews can extend to the merits of the underlying tax liability, if the taxpayer has not previously received the opportunity for review of the merits, e.g., did not receive a notice of deficiency. Section 6330(c)(2)(B). A face-to-face administrative hearing concerning a taxpayer's underlying liability will not be granted if the hearing request raises solely frivolous arguments. Treas. Reg. §§ 301.6320-1(d)(2) Q&A D8; 301.6330-1(d)(2) Q&A D8. The Tax Court will impose sanctions pursuant to section 6673 against taxpayers who seek judicial relief based upon frivolous or groundless positions.

On December 6, 2006, Congress passed the Tax Relief and Health Care Act of 2006 (TRHCA), Pub.L. 109-432, 120 Stat. 2922 (2006). Section 407 of TRHCA made revisions to sections 6320 and 6330. The TRHCA amended section 6330 by adding new subsection (g) to provide that the IRS may disregard any portion of a section 6320 or 6330 hearing request that is based upon a position identified as frivolous by the IRS in a published list or that reflects a desire to delay or impede tax administration. Such portion shall not be subject to any further administrative or judicial review. If the entire hearing request meets one or both of these criteria, the hearing request will be denied. The TRHCA also amended section 6702 to allow imposition of a $5,000 penalty for specified frivolous submissions, including section 6320 or 6330 hearing requests, where any portion of the submission meets one or both of these criteria. See section III below. These amendments are effective for hearing requests made after March 15, 2007, the release date of Notice 2007-30, 2007-14 I.R.B. 883, identifying the list

of frivolous positions (which list was updated by Notice 2008-14, 2008-4 I.R.B. ___). Accordingly, in cases where the TRHCA amendments are applicable, a taxpayer raising only frivolous issues may not only be ineligible for a face-to-face hearing but may be denied any section 6320 or 6330 hearing.

Discussed below are some of the more common frivolous tax arguments raised in collection due process cases.

## A.  Invalidity of the Assessment

1.  **Contention:  A tax assessment is invalid because the taxpayer did not get a copy of the Form 23C, the Form 23C was not personally signed by the Secretary of the Treasury, or Form 23C is not a valid record of assessment.**

**The Law:** Tax assessments are formally recorded on a record of assessment.  Section 6203.  The assessment is made by an assessment officer signing the summary record of assessment.  Treas. Reg. § 301.6203-1.  The summary record of assessment must "provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment."  Id.  The date of the assessment is the date the summary record is signed.  Id.  There is no requirement in the statute or regulation that the assessment be recorded on a specific form, that the Secretary of the Treasury personally sign it, or that the taxpayer be provided with a copy of the record of assessment before the IRS takes collection action.  The IRS issued Revenue Ruling 2007-21, 2007-14 I.R.B. 865, refuting the frivolous argument that before the IRS may collect overdue taxes, the IRS must provide taxpayers with a summary record of assessment made on a Form 23-C, Assessment Certificate – Summary Record of Assessments, or on another particular form.

**Relevant Case Law:**

Williams v. Commissioner, T.C. Memo. 2005-94, 89 T.C.M. (CCH) 114 (2005) – in this collection due process case the court held that it was not an abuse of discretion for the appeals officer to provide copies of the transcripts of account (so-called MFTRA-X transcripts) to the taxpayer, in lieu of the copies of the assessment documents that the taxpayer had requested.

March v. Internal Revenue Service, 335 F.3d 1186, 1188 (10th Cir. 2003) – the court held that the computer-generated certificate of assessment and payment form utilized by the IRS to make assessment against the taxpayers satisfied the regulatory requirements, where this computer-generated form contained the same information as the non-computer-generated form previously used and was signed by the assessment officer.

Roberts v. Commissioner, 118 T.C. 365 (2002) – the petitioner in this collection due process case argued that an assessment was invalid because respondent did not use Form 23C, Assessment Certificate–Summary Record of Assessments, but instead used Revenue Accounting Control System (RACS) Report 006. The Tax Court held that there was nothing in the law to show that the use of the RACS report was not in compliance with the statute and regulation. The RACS report and the Form 23C are both signed by an assessment officer.

Nestor v. Commissioner, 118 T.C. 162 (2002) – the petitioner in this collection due process case requested production of certain documents at the hearing, including the Form 23C. The court held that the petitioner was not entitled to production of documents and that it was not an abuse of discretion for the appeals officer to use Form 4340, Certificate of Assessments and Payments to verify the assessment, for purposes of section 6330(c)(1). The Form 23C was not required to verify the assessment.

Perez v. Commissioner, T.C. Memo. 2002-274, 84 T.C.M. (CCH) 501 (2002) – the court held that it was not an abuse of discretion for an appeals officer to rely on a MFTRA-X transcript, rather than producing or relying upon a Form 23C, for purposes of section 6330(c)(1).

2. **Contention: A tax assessment is invalid because the assessment was made from a substitute for return prepared pursuant to section 6020(b), which is not a valid return.**

**The Law:** Section 6020(b)(1) provides that "[i]f any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefore, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." Section 6020(b)(2) further provides that any return prepared pursuant to section 6020(b)(1) shall be prima facie good and sufficient for all legal purposes. See also Treas. Reg. § 301.6020-1.

**Relevant Case Law:**

Nicklaus v. Commissioner, T.C. Memo. 2005-156, 89 T.C.M. (CCH) 1499 (2005) -  in this collection due process case petitioners argued that the IRS could not prepare substitutes for returns for them because part 5.1.11.6.10 of the Internal Revenue Manual (IRM) (May 27, 1999) lists seven returns that may be prepared under the authority of section 6020(b) and does not mention Form 1040. The court disagreed. Under section 6020(b)(1) the IRS may prepare substitute returns for taxpayers who fail to do so themselves. IRM provisions not cited by petitioners state that the IRS may prepare substitutes for Forms 1040 under section 6020(b).

<u>United States v. Updegrave,</u> 97-1 U.S.T.C. ¶ 50,465 (E.D. Pa. 1997) – the taxpayer argued that tax assessments may only be calculated from tax returns filed by the taxpayer and that an inferior agent of the IRS may not file substitute returns for the taxpayer. The court rejected this argument as "utterly meritless." The court recognized that section 6020(b) authorizes the IRS to file substitute returns on behalf of taxpayers who fail to voluntarily file returns and that the substitute return "shall be prima facie good for all legal purposes." Section 6020(b)(1) and (2). The court stated that a taxpayer may not "stymie" the IRS's collection of taxes by refusing to file a tax return. The court also held that, while section 6020 authorizes the Secretary of the Treasury to prepare substitute returns, such authority has been delegated down to the District Director or any authorized IRS officer or employee. Accordingly, the substitute return and the assessments in this case were properly made by an employee of the IRS in accordance with the Internal Revenue Code.

<u>Holland v. La. Secretary of Revenue and Taxation</u>, 97-1 U.S.T.C. ¶ 50,403 (W.D. La. 1997) – the court rejected the taxpayer's argument that section 6020 does not apply to income taxes. The court further found that section 6065, requiring that a return be verified by a declaration under penalty of perjury, does not apply to section 6020(b) returns.

## B. <u>Invalidity of the Statutory Notice of Deficiency</u>

1. **Contention: A statutory notice of deficiency is invalid because it was not signed by the Secretary of the Treasury or by someone with delegated authority.**

**The Law:** Section 6212(a) provides the authority for the Secretary to send notices of deficiency to taxpayers. Section 7701(a)(11)(B) defines "Secretary" to include the Secretary of the Treasury or his delegate. Section 7701(a)(12)(A)(i) defines the term "delegate," as used with respect to the Secretary of the Treasury, to mean any officer, employee, or agency of the Treasury Department duly authorized by the Secretary directly, or indirectly by redelegation of authority, to perform a certain function. There is no statutory requirement that the notice of deficiency be signed.

**Relevant Case Law:**

<u>Reynolds v. Commissioner</u>, T.C. Memo. 2006-192, 92 T.C.M. (CCH) 260 (2006) – in this collection due process case petitioner claimed that he received invalid notices of deficiency because they were signed by the compliance center director of the Ogden Service Center instead of the Secretary. According to the court, it is well established that the Secretary or his delegates may issue notices of deficiency.

<u>Ball v. Commissioner</u>, T.C. Memo. 2006-141, 92 T.C.M. (CCH) 7 (2006) – in this collection due process case, petitioners argued that they received no valid notice of deficiency because the notice that they received was not signed by the Secretary of the Treasury. The court rejected this argument as frivolous.

<u>Wheeler v. Commissioner</u>, T.C. Memo. 2006-109, 91 T.C.M. (CCH) 1194 (2006) - the court held that a valid notice of deficiency need not be signed at all.

<u>Nestor v. Commissioner,</u> 118 T.C. 162 (2002) – in this collection due process case, the Tax Court held that the Secretary's authority to issue statutory notices of deficiency has been delegated to district directors and service center directors.

<u>Michael v. Commissioner,</u> T.C. Memo. 2003-26, 85 T.C.M. (CCH) 803 (2003) – the petitioner contested the validity of a notice of deficiency signed by a service center director. The court rejected this argument as frivolous.

<u>Tavano v. Commissioner</u>, 986 F.2d 1389 (11th Cir. 1993) – the court rejected petitioner's argument that the notice of deficiency was invalid because it was unsigned.

## 2. Contention: A statutory notice of deficiency is invalid because the taxpayer did not file an income tax return.

**The Law:** Section 6211(a) defines "deficiency" as the amount by which the tax imposed by subtitle A or B – (including income, estate, and gift taxes), or chapter 41, 42, 43, 44 (excise taxes) exceeds the excess of the sum of the amount shown as the tax by the taxpayer upon his return (if return made and amount shown thereon) plus any amounts previously assessed (or collected without assessment) as a deficiency, over the amount of rebates, as defined in section 6211(b)(2), made. In accordance with this definition, a taxpayer's failure to report tax on a return does not prevent the Service from determining a deficiency in his federal income tax and issuing a notice of deficiency, pursuant to section 6212(a).

**Relevant Case Law:**

<u>Robinson v. Commissioner,</u> T.C. Memo. 2002-316, 84 T.C.M. (CCH) 694 (2002) – the court found the petitioner liable for the section 6673(a) penalty in this case where petitioner argued, among other frivolous arguments, that the Service was not authorized to determine a deficiency for a taxpayer who has not filed a return.

## C. Invalidity of Notice of Federal Tax Lien

**1. Contention: A notice of federal tax lien is invalid because it is unsigned or not signed by the Secretary of the Treasury, or because it was filed by someone without delegated authority.**

**The Law:** The form and content of the notice of federal tax lien is controlled by federal law. Section 6323(f)(3) provides that the form and content of the notice of federal tax lien shall be prescribed by the Secretary and shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien. Treas. Reg. § 301.6323(f)-1(d) further provides that the notice of federal tax lien is filed on a Form 668, which must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose.

**Relevant Case Law:**

United States v. Union Cent. Life Ins. Co., 368 U.S. 291, 294 (1961) – the Supreme Court held that the form used for filing a federal tax lien does not have to comply with an additional state law requirement that it describe the property affected, although the lien did have to be filed in a designated state office.

Tolotti v. Commissioner, T.C. Memo. 2002-86, 83 T.C.M. (CCH) 1436 (2002) – in this collection due process case, the court upheld the validity of a notice of federal tax lien filed on Form 668(Y) and bearing a facsimile signature, although the lien was not certified as required by Nevada statute. The court noted that it is "well-settled" that the form and content of the notice of federal tax lien is controlled by federal, not state, law.

Section 6323(a) provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lien holder, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." Section 7701(a)(11)(B) defines "Secretary" to include the Secretary of the Treasury or his delegate. Section 7701(a)(12)(A)(i) defines the term "delegate", as used with respect to the Secretary of the Treasury, to mean any officer, employee, or agency of the Treasury Department duly authorized by the Secretary directly, or indirectly by redelegation of authority, to perform a certain function. See, e.g., Delegation Order 5-4, Rev. 1) (delegating authority to sign notices of federal tax lien). There is no requirement in the statute or regulation that the notice of federal tax lien must be signed when filed.

**Relevant Case Law:**

Thompson v. Commissioner, T.C. Memo. 2004-204, 88 T.C.M. (CCH) 219 (2004) – in a collections due process case the court rejected petitioner's arguments as frivolous and groundless, including petitioner's contention

that the notice of federal tax lien that he received was invalid because it was not signed by the Secretary. The Secretary had delegated the authority to issue notices of lien to certain IRS employees.

Uveges v. United States, 2002-2 U.S.T.C. ¶ 50,740 (D. Nev. 2002) B the court noted that with respect to section 6323, among other Code sections, which use the term "Secretary," "Secretary" refers to the Secretary of the Treasury and any delegates. See section 7701(a)(11)(B).

In re Kroll, 74 A.F.T.R.2d 94-6161 (W.D.Mich 1994) – in this bankruptcy case the taxpayer-debtors challenged the notice of federal tax lien on the ground that it was not signed. The court found that neither the statute nor regulations relating to such lien require that the notice be signed, nor had the debtors provided any explicit authority requiring that the notice be signed to be valid.

2. **Contention: The form or content of a notice of federal tax lien is controlled by or subject to a state or local law, and a notice of federal tax lien that does not comply in form or content with a state or local law is invalid.**

**The Law:**

The form and content of the notice of federal tax lien is controlled by federal law. Section 6323(f)(3) provides that the form and content of the notice of federal tax lien shall be prescribed by the Secretary and shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien. Treas. Reg. § 301.6323(f)-1(d) further provides that the notice of federal tax lien is filed on a Form 668, which must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose

**Relevant Case Law:**

United States v. Union Cent. Life Ins. Co., 368 U.S. 291, 294 (1961) - the Supreme Court held that the form used for filing a federal tax lien does not have to comply with an additional state law requirement that it describe the property affected, although the lien did have to be filed in a designated state office.

Tolotti v. Commissioner, T.C. Memo. 2002-86, 83 T.C.M. (CCH) 1436 (2002) - in this collection due process case, the court upheld the validity of a notice of federal tax lien filed on Form 668(Y) and bearing a facsimile signature, although the lien was not certified as required by Nevada statute. The court noted that it is "well-settled" that the form and content of the notice of federal tax lien is controlled by federal, not state, law.

## D. Invalidity of Collection Due Process Notice

1. **Contention: A collection due process notice (Letter 1058, LT-11 or Letter 3172) is invalid because it is not signed by the Secretary or his delegate.**

**The Law:** Section 6320(a)(1) provides that the Secretary shall notify a taxpayer in writing of the filing of a notice of federal tax lien, pursuant to section 6323, advising the taxpayer of the right to request a collection due process hearing. Section 6330(a)(1) provides that no levy may be made on any property or rights to property of any person unless the Secretary has notified such person of his or her right to a collection due process hearing before levy. There is no requirement for a signature on the collection due process notice in the statute or regulations.

Section 7701(a)(11)(B) defines "Secretary" to include the Secretary of the Treasury or his delegate. Section 7701(a)(12)(A)(i) defines the term "delegate", as used with respect to the Secretary of the Treasury, to mean any officer, employee, or agency of the Treasury Department duly authorized by the Secretary directly, or indirectly by redelegation of authority, to perform a certain function. Section 7803(a)(2) provides general authority for the Commissioner of Internal Revenue, as prescribed by the Secretary. Treas. Reg. §§ 301.6320-1(a)(1) and 301.6330-1(a)(1) further provide that the Commissioner, or his or her delegate, will prescribe procedures to provide notice of the right to request a collection due process hearing. See, e.g., Delegation Order 5-3 (formerly D.O. 191 Rev. 3) (redelegation of authority with respect to levy notices).

**Relevant Case Law:**

Craig v. Commissioner, 119 T.C. 252 (2002) – the court held that for purposes of section 6330(a), either the Secretary or his delegate (e.g., the Commissioner) may issue a final notice of intent to levy. In this case, the authority to levy was delegated to the Automated Collection Branch Chiefs pursuant to Delegation Order No. 191 (Rev. 2), effective October 1, 1999. Accordingly, the notice of intent to levy was valid.

Hodgson v. Commissioner, T.C. Memo. 2003-122, 85 T.C.M. (CCH) 1232 (2003) – taxpayer alleged that respondent's determination was lawless and erroneous for numerous reasons, including the fact that the section 6320 lien notice was not signed by the Secretary or his delegate. The court held that the allegations were frivolous and without any merit, and declined to address them. The court found the taxpayer liable for a section 6673(a) penalty.

**2. Contention: A collection due process notice is invalid because no certificate of assessment is attached.**

**The Law:** Sections 6320(a)(3) and 6330(a)(3) list the information required to be included with the collection due process notice, such as the amount of unpaid tax, the right of the person to request a collection due process hearing, administrative appeals available, and the provisions of the Internal Revenue Code and procedures pertaining to the notice of federal tax lien or levy. See also Treas. Reg. §§ 301.6320-1(a)(2), Q&A A10 and 301.6330-1(a)(3), Q&A A6. There is no requirement in the statute or regulations that a certificate of assessment be attached to the collection due process notice.

## E. Verification Given as Required by I.R.C. § 6330(c)(1)

**1. Contention: Verification requires the production of certain documents.**

**The Law:** Pursuant to sections 6320(c) and 6330(c)(1), at a collection due process hearing, the appeals officer is required to obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Section 6330(c)(1) does not require the appeals officer to rely upon a particular document (e.g., the summary record of assessment) to satisfy the verification requirement. Section 6330(c)(1) also does not require the appeals officer to give the taxpayer a copy of the verification upon which the appeals officer relied. See also Treas. Reg. §§ 301.6320-1(e)(1) and 301.6330-1(e)(1). There is no requirement in the statute or regulations that the taxpayer be provided with any documents as a part of the verification process. As a matter of practice, however, the taxpayer will be provided with a transcript of account such as a Form 4340 or MFTRA-X computer transcript. Transcripts such as the Form 4340 or MFTRA-X, which identify the taxpayer, the character of the liability assessed, the taxable period and the amount of the assessment, are sufficient to show the validity of an assessment, absent a showing of irregularity.

**Relevant Case Law:**

Craig v. Commissioner, 119 T.C. 252 (2002) – the court held that section 6330(c)(1) does not require the appeals officer to rely upon a particular document, such as the summary record of assessment, in order to satisfy the verification requirement of section 6330(c)(1). Nor does it mandate that the appeals officer actually provide the taxpayer with a copy of the verification upon which the appeals officer relied. Taxpayer was provided with Forms 4340, and did not demonstrate the invalidity of the assessment or any of the information contained in the Forms 4340.

Nestor v.Commissioner, 118 T.C. 162 (2002) – appeals officer's review of Forms 4340 is sufficient to meet the verification requirement in section 6330(c)(1). Actual production of documents is not required.

Davis v. Commissioner, 115 T.C. 35 (2000) – appeals officer did not abuse his discretion in relying on a Form 4340 to verify the validity of an assessment, where the taxpayer can point to no evidence of irregularity in the assessment process.

Standifird v. Commissioner, T.C. Memo. 2002-245, 84 T.C.M. (CCH) 371 (2002) – MFTRA-X transcript may be used for verification.

Schroeder v. Commissioner, T.C. Memo. 2002-190, 84 T.C.M. (CCH) 141 (2002) – TXMOD-A transcript is sufficient for verification.

Wagner v. Commissioner, T.C. Memo. 2002-180, 84 T.C.M. (CCH) 96 (2002) – Individual Master File–Martinsburg Computing Center Transcript is sufficient for verification.

## F. Invalidity of Statutory Notice and Demand

1. **Contention: No notice and demand, as required by I.R.C. § 6303, was ever received by taxpayer.**

**The Law:** Section 6303(a) provides that the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. This notice is to be left at the dwelling or usual place of business of such person, or shall be mailed to such person's last known address. See also Treas. Reg. § 301.6303-1(a) (failure to give notice within 60 days does not invalidate notice). Nothing in the statute or regulation requires the Service to establish receipt of the notice and demand, as long as it is mailed to the taxpayer's last known address.

At a collection due process hearing, an appeals officer may rely upon a computer transcript to verify that notice and demand for payment has been sent to a taxpayer in accordance with section 6303. For example, the entry in a Form 4340 showing "notice of balance due" is a section 6303 notice and demand. On a TXMOD-A transcript, "status 21" indicated in the notice section indicates a section 6303 notice and demand.

**Relevant Case Law:**

Reynolds v. Commissioner, T.C. Memo. 2006-192, 92 T.C.M. (CCH) 260 (2006) – in this collection due process case petitioner alleged he did not receive a notice and demand for payment. According to the court, a notice of balance due constitutes a notice and demand for payment for

purposes of section 6303(a).  The Forms 4340 showed that the IRS had promptly sent petitioner notices of balance due.

Craig v. Commissioner, 119 T.C. 252, 262-63 (2002) – Forms 4340 showed that petitioner was sent notices of balance due on the same dates as assessments were made.  The court held that a notice of balance due on a Form 4340 constitutes notice and demand for purposes of section 6303(a).  The court further noted that the form on which a notice of assessment and demand for payment is made is irrelevant as long as it provides the taxpayer with all the information required under section 6303(a).

United States v. Chila, 871 F.2d 1015, 1019 (11th Cir. 1989) – the Eleventh Circuit held that the notice and demand requirements of section 6303 were only applicable to summary enforcement procedures, not as a prerequisite to filing a civil action.  The court further noted that, even if notice was not required under section 6303, proper notice was given as established by the Form 4340.  Taxpayer did not deny on the record that the notice was sent.  He denied only that he had received it.

United States v. Lisle, 92-1 U.S.T.C. ¶ 50,286 (N.D. Cal.), citing Thomas v. United States, 755 F.2d 728 (9th Cir. 1985) – Taxpayer claimed that liens were invalid because the government failed to give her proper notice and demand for payment as required by sections 6303(a) and 6321.  The Service submitted documentation establishing that it sent the taxpayer notice.  Proof that notice was sent is sufficient; the government need not prove receipt.

2. **Contention: A notice and demand is invalid because it is not signed, it is not on the correct form (such as Form 17), or because no certificate of assessment is attached.**

**The Law:**  Section 6303(a) provides that the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof.  This notice is to be left at the dwelling or usual place of business of such person, or shall be mailed to such person's last known address.  See also Treas. Reg. § 301.6303-1(a) (failure to give notice within 60 days does not invalidate notice).  Notice and demand is sufficient for purposes of section 6303 as long as it states the amount due and makes demand for payment.  There is no requirement in the statute or regulation that the notice and demand be made on a specific form, have a signature, or include any specific attachments.

**Relevant Case Law:**

Flathers v. Commissioner, T.C. Memo. 2003-60, 85 T.C.M. (CCH) 969 (2003) – court rejected as frivolous and/or groundless petitioner's argument that she did not receive proper notice and demand under section 6303(a) because, according to petitioner, the IRS must use Form 17 in issuing such notice and demand.

Craig v. Commissioner, 119 T.C. 252 (2002) – numerous notices received by petitioner, such as notices of intent to levy and notices of deficiency, were sufficient to meet the requirements of section 6303(a). The form on which notice of assessment and demand for payment is made is irrelevant, as long as it provides the taxpayer with the information specified in section 6303(a).

Keene v. Commissioner, T.C. Memo. 2002-277, 84 T.C.M. (CCH) 514 (2002) – notices such as final notice of intent to levy and Forms 4340 are sufficient to constitute notice and demand within the meaning of section 6303(a) because they informed petitioner of the amount owed and requested payment. The court rejected petitioner's argument as frivolous and groundless that a notice and demand for payment was not in accord with a Treasury decision issued in 1914 that required a Form 17 be used for such purpose.

## G. Tax Court Authority

1. **Contention: The Tax Court does not have the authority to decide legal issues.**

**The Law:** The United States Tax Court is a federal court of record established by Congress under Article I of the United States Constitution. Congress created the Tax Court to provide a judicial forum in which affected persons could dispute tax deficiencies prior to payment of the disputed amount. The jurisdiction of the Tax Court includes the authority to hear tax disputes concerning notices of deficiency, notices of transferee liability, certain types of declaratory judgment, readjustment and adjustment of partnership items, review of the failure to abate interest, administrative costs, worker classification, relief from joint and severable liability on a joint return, and review of collection due process actions.

Section 7441 provides that "[t]here is hereby established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court. The members of the Tax Court shall be the chief judge and the judges of the Tax Court." Section 7442 provides the "[t]he Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title, by Chapters 1, 2, 3, and 4 of the Internal Revenue Code of 1939, by title II and title III of the Revenue Act of 1926 (44 Stat. 10-87), or by laws enacted subsequent to February 26, 1926." See also sections 7443-7448.

**Relevant Case Law:**

Freytag v. Commissioner, 501 U.S. 868 (1991) – petitioners alleged that the adjudication of their case by a special trial judge was not authorized by section 7443A, and that the reassignment violated the appointments clause of U.S. Const. art. II, § 2, cl. 2. The court of appeals rejected petitioners' claims and affirmed. The Supreme Court granted certiorari and affirmed, holding that section 7443A(b)(4) authorized the chief judge's assignment of petitioners' cases to the special trial judge. The Court further concluded that the special trial judge's appointment did not violate the Appointments Clause because the Tax Court's role in the federal judicial scheme closely resembled that of Article I courts, which were given appointment power by the United States Constitution.

Burns, Stix Friedman & Co., Inc. v. Commissioner, 57 T.C. 392 (1971) – petitioner sought review of income tax deficiencies, prior to the effective date of the Tax Reform Act of 1969 (the Act), Pub. L. 91-172.  The petitioner contended that Congress exceeded its authority in creating the court as a court of record under U.S. Const. art I without regard to the sanctions of art. III.  The court held that the provisions in the Act that removed the court from the executive branch, made the court a court of record, gave the court the power to punish for contempt, made review of the court's decisions by appeal rather than by petition for review, and simply recognized the court as a "court," was within Congress' authority without reliance upon U.S. Const. art. III.

Knighten v. Commissioner, 705 F.2d 777 (5th Cir. 1983) – petitioner argued that, as a court created under Article I of the Constitution, the Tax Court could not hear any cases that could be heard by Article III courts. The court held that this contention was frivolous and that the argument that the Tax Court violates Article III has been repeatedly rejected.

Martin v. Commissioner, 358 F.2d 63 (7th Cir. 1966) – petitioners' contention that the Tax Court is without a valid constitutional existence lacks substance and merit.

## H. Challenges to the Authority of IRS Employees

### 1. Contention: Revenue Officers are not authorized to seize property in satisfaction of unpaid taxes.

**The Law:** Section 6331(a) provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax."  Section 6331(b) provides that the term "levy" includes the power of distraint and seizure by

any means.  In any case in which the Secretary may levy upon property or property rights, he may also seize and sell such property or property rights.  Section 6331(b).

Section 7701(a)(11)(B) defines "Secretary" to include the Secretary of the Treasury or his delegate.  Section 7701(a)(12)(A)(i) defines the term "delegate," as used with respect to the Secretary of the Treasury, to mean any officer, employee, or agency of the Treasury Department duly authorized by the Secretary directly, or indirectly by redelegation of authority, to perform a certain function.  See Treas. Reg. § 301.6331-1(a)(1) (district director is authorized to levy).  See e.g., Delegation Order 5-3 (formerly D.O. 191 Rev. 3) (redelegation of authority with respect to levies to revenue officers and other Service employees).

**Relevant Case Law:**

Craig v. Commissioner, 119 T.C. 252 (2002) – the authority to levy on petitioner's property was delegated to Automated Collection Branch Chiefs pursuant to Delegation Order No. 191 (Rev. 2), effective October 1, 1999.

2. **Contention: IRS employees lack credentials.  For example, they have no pocket commission or the wrong color identification badge.**

**The Law:** The authority of IRS employees is derived from Internal Code provisions, Treasury Regulations, and other redelegations of authority (such as delegation orders).  See the previous discussion on the authority of revenue officers to seize property.  The authority of IRS employees is not contingent upon such criteria as possession of a pocket commission or a specific type of identification badge.

**Relevant Case Law:**

Gunselman v. Commissioner, T.C. Memo. 2003-11, 85 T.C.M. (CCH) 756 (2003) – appeals officer at collection due process hearing does not have to produce enforcement pocket commission for himself of for the Service employee who signed the notice of lien filing.

I. **Use of Unauthorized Representatives**

1. **Contention: Taxpayers are entitled to be represented at hearings, such as collection due process hearings, and in court, by persons without valid powers of attorney.**

**The Law:** Section 330 of Title 31 of the United States Code authorizes the Secretary of the Treasury to regulate the practice of representatives before the Treasury Department and, after notice and an opportunity for a proceeding, to suspend or disbar from practice before the Treasury Department those representatives who are incompetent, disreputable, or

who violate regulations prescribed under section 330. Pursuant to section 330, the Secretary, in Circular No. 230 (31 CFR part 10), published regulations that authorize the Director, Office of Professional Responsibility, to act upon applications for enrollment to practice before the Service, to make inquiries with respect to matters under the Director's jurisdiction, and to perform such other duties as are necessary to carry out these functions. The regulations were most recently amended on July 26, 2002 (T.D. 9011, 2002-33 I.R.B. 356 [67 FR 48760] to clarify the general standards of practice before the Service. Pursuant to Circular No. 230, a representative must be an attorney in good standing, a certified professional accountant, or an enrolled tax return preparer in good standing. Attorneys and non-attorneys are only entitled to practice before the United States Tax Court upon application and admission to practice, pursuant to Tax Court Rule of Practice and Procedure 200.

**Relevant Case Law:**

Young v. Commissioner, T.C. Memo. 2003-6, 85 T.C.M. (CCH) 739 (2003) – third party was not entitled to represent taxpayer in a collection due process hearing because of non-compliance with Circular No. 230.

Katz v. Commissioner, 115 T.C. 329 (2000) – collection due process hearings are informal, with no right to summons witnesses.

## J. No Authorization Under I.R.C. § 7401 to Bring Action

1. **Contention: The Secretary has not authorized an action for the collection of taxes and penalties or the Attorney General has not directed an action be commenced for the collection of taxes and penalties.**

**The Law:** Section 7401 provides that "[n]o civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." Treas. Reg. § 301.7401-1(a) further provides that such action must be authorized by the Commissioner (or the Director, Alcohol, Tobacco and Firearms Division, with respect to subtitle E of the Code), or Chief Counsel for the IRS or his delegate, and such action must be commenced by the Attorney General or his delegate.

Section 7701(a)(11)(B) defines "Secretary" to include the Secretary of the Treasury or his delegate. Section 7701(a)(12)(A)(i) defines the term "delegate," as used with respect to the Secretary of the Treasury, to mean any officer, employee, or agency of the Treasury Department duly authorized by the Secretary directly, or indirectly by redelegation of authority, to perform a certain function. Section 7803(a)(2) provides

general authority for the Commissioner of Internal Revenue, as prescribed by the Secretary.

The Attorney General is the head of the Department of Justice, appointed by the President. 28 U.S.C. § 503. The Attorney General may from time to time make such provisions as he or she deems appropriate delegating authority to any other officer, employee, or agency of the Department of Justice. 28 U.S.C. § 510. See 28 U.S.C. §§ 501-530D.

**Relevant Case Law:**

Perez v. United States, 2001-2 U.S.T.C. ¶ 50,735 (W.D.Tex. 2001) – plaintiff requested the court to dismiss defendant's counterclaim because defendant did not attach a certified copy of the document in which the Attorney General or a United States Attorney authorized a cause of action against plaintiff, pursuant to section 7401. The court held that section 7401 does not require production of such document. Courts may ordinarily presume that the United States complied with section 7401 and obtained proper authorization to commence an action for the collection of taxes. However, since the plaintiff contested such compliance, the United States had to show that the counterclaim was in fact authorized. The court held that the United States demonstrated compliance with section 7401 by producing a letter from the Office of Chief Counsel for the IRS to a United States Attorney and a declaration from the counsel of record for the United States.

United States v. Bodwell, 96-2 U.S.T.C. ¶ 50,592 (E.D. Cal. 1996) – the court noted that the defendant's argument that this suit was not authorized because section 7401 is rooted in the Federal Regulations concerning the Bureau of Alcohol, Tobacco and Firearms has been "flatly rejected" by the Ninth Circuit.

United States v. Nuttall, 713 F. Supp. 132 (D. Del. 1989) – affidavit from the Chief, Civil Trial Section, Central Region, Tax Division, United States Department of Justice attached to government's summary judgment motion established authorization of the Secretary of the Treasury/Internal Revenue Service. Department of Justice Tax Division Memorandum No. 83-19, dated May 5, 1983, also attached, established authorization by the Attorney General to commence the action.

## III. <u>PENALTIES FOR PURSUING FRIVOLOUS TAX ARGUMENTS</u>

Those who act on frivolous positions risk a variety of civil and criminal penalties. Those who adopt these positions may face harsher consequences than those who merely promote them. As the Seventh Circuit Court of Appeals noted in United States v. Sloan, 939 F.2d 499, 499-500 (7th Cir. 1991), "Like moths to a flame, some people find themselves irresistibly drawn to the tax protester

movement's illusory claim that there is no legal requirement to pay federal income tax. And, like moths, these people sometimes get burned."

Taxpayers filing returns with frivolous positions may be subject to the accuracy-related penalty under section 6662 (twenty percent of the underpayment attributable to negligence or disregard of rules or regulations) or the civil fraud penalty under section 6663 (seventy-five percent of the underpayment attributable to fraud) or the erroneous claim for refund penalty under section 6676 (twenty percent of the excessive amount). Additionally, late filed returns setting forth frivolous positions may be subject to an addition to tax under section 6651(f) for fraudulent failure to timely file an income tax return (triple the amount of the standard failure to file addition to tax under section 6651(a)(1)). See Mason v. Commissioner, T.C. Memo. 2004-247, 88 T.C.M. (CCH) 398 (2004) (frivolous arguments may be indicative of fraud if made in conjunction with affirmative acts designed to evade paying federal income tax).

The Tax Relief Health Care Act of 2006 amended section 6702 to allow imposition of a $5,000 penalty for frivolous tax returns and for specified frivolous submissions other than returns, if the purported returns or specified submissions are either based upon a position identified as frivolous by the IRS in a published list or reflect a desire to delay or impede tax administration. Pub.L. 109-432, 120 Stat. 2922 (2006). The term specified submission means: a request for a hearing under section 6320 (relating to notice and opportunity for hearing on filing of a notice of lien), a request for hearing under section 6330 (relating to notice and opportunity for hearing before levy), an application under section 6159 (relating to agreements for payment of tax liability in installments), an application under section 7122 (relating to compromises), or an application under section 7811 (relating to taxpayer assistance orders). This amendment is effective for frivolous returns or specified frivolous submissions made after March 15, 2007, the release date of Notice 2007-30, 2007-14 I.R.B. 883, identifying the list of frivolous positions. Notice 2008-14, 2008-4, I.R.B. ___, updates the prior list with four additional frivolous positions: (1) the Ninth Amendment to the U.S. Constitution allows a taxpayer to not pay taxes because of objections to military spending; (2) only fiduciaries are taxpayers, or only persons with a fiduciary relationship to the government must pay taxes; (3) a supposed "Mariner's Tax Deduction" (or the like) allows a taxpayer employed on a ship to deduct the cost of meals provided by the employer at no cost to the taxpayer; and (4) the section 6421 fuels credit may be claimed in patently unallowable amounts without meeting the requirements for the credit.

In the 1980s, Congress showed its concern about taxpayers misusing the courts and obstructing the appeal rights of others when it enacted tougher sanctions for bringing frivolous cases before the courts. Section 6673 allows the courts to impose a penalty of up to $25,000 when they come to any of three conclusions:

- a taxpayer instituted a proceeding primarily for delay,
- a position is frivolous or groundless, or

61

- a taxpayer unreasonably failed to pursue administrative remedies.

An appeals court explained the rationale for the sanctions in <u>Coleman v. Commissioner,</u> 791 F.2d 68, 72 (7th Cir. 1986): "The purpose of § 6673 . . . is to induce litigants to conform their *behavior* to the governing rules regardless of their subjective beliefs. Groundless litigation diverts the time and energies of judges from more serious claims; it imposes needless costs on other litigants. Once the legal system has resolved a claim, judges and lawyers must move on to other things. They cannot endlessly rehear stale arguments . . . . [T]here is no constitutional right to bring frivolous suits . . . . People who wish to express displeasure with taxes must choose other forums, and there are many available."

Taxpayers who rely on frivolous arguments may also face criminal prosecution for: (1) attempting to evade or defeat tax under section 7201, a felony, for which the penalty is a fine of up to $250,000 and imprisonment for up to 5 years; or (2) making false statements on a return under section 7206(1), a felony, for which the penalty is a fine of up to $250,000 and imprisonment for up to 3 years.

Persons who promote frivolous arguments and those who assist taxpayers in claiming tax benefits based on such arguments may also face various penalties such as: (1) a $250 penalty under section 6694 for each return prepared by an income tax return preparer who knew or should have known that the taxpayer's argument was frivolous (or $1,000 for each return where the return preparer's actions were willful, intentional or reckless); (2) a $1,000 penalty under section 6701 for aiding and abetting an understatement of tax; and (3) criminal felony prosecution under section 7206(2) for which the penalty is up to $250,000 and imprisonment for up to 3 years for assisting or advising about the preparation of a false return or other document under the internal revenue laws.

Further, promoters who fail to comply with court orders run the risk of incarceration for contempt of court. A tax scam promoter named James A. Mattatall was arrested for failing to provide list of the names, addresses, phone numbers, and Social Security numbers of his customers to the Justice Department per the court's order. <u>See</u> http://www.usdoj.gov/tax/txdv04699.htm. Also, a taxpayer named Charles D. Saunders was held in civil contempt, incarcerated and fined $250 a day until he complied with the court's order directing him to fully comply with a summons from the IRS. <u>See</u> 2006 TNT 164-16 (August 18, 2006).

**Relevant Case Law:**

<u>Jones v. Commissioner,</u> 688 F.2d 17 (6th Cir. 1982) – the court found the taxpayer's claim that his wages were paid in "depreciated bank notes" as clearly without merit and affirmed the Tax Court's imposition of an addition to tax for negligence or intentional disregard of rules and regulations.

Baskin v. United States, 738 F.2d 975 (8th Cir. 1984) – the court found that the IRS's assessment of a frivolous return penalty without a judicial hearing was not a denial of due process, since there was an adequate opportunity for a later judicial determination of legal rights.

Holker v. United States, 737 F.2d 751, 752-53 (8th Cir. 1984) – the court upheld the frivolous return penalty even though the taxpayer claimed the documents he filed to claim a refund did not constitute a tax return.  Noting that "[t]axpayers may not obtain refunds without first filing returns," the court then found that "[h]is unexplained designation of his W-2 forms as 'INCORRECT' and his attempt to deduct his wages as the cost of labor on Schedule C also establish the frivolousness and incorrectness of his position."

Rowe v. United States, 583 F. Supp. 1516, 1520 (D. Del. 1984) – the court upheld the viability of section 6702 against various objections, including that it was unconstitutionally vague because it does not define a "frivolous" return. "Frivolous is commonly understood to mean having no basis in law or fact," the court stated.

Szopa v. United States, 460 F.3d 884 (7th Cir. 2006) – the court found that a frivolous tax appeal warrants a presumptive sanction of $4,000, but that the court would impose an $8,000 sanction against taxpayers who make repeated frivolous appeals as Szopa did.

Gass v. United States, 2001-1 U.S.T.C. (CCH) ¶ 50,220 (10th Cir. 2001) – the court imposed an $8,000 penalty for contending that taxes on income from real property are unconstitutional.  The court had earlier penalized the taxpayers $2,000 for advancing the same arguments in another case.

Brashier v. Commissioner, 2001-1 U.S.T.C. (CCH) ¶ 50,356 (10th Cir. 2001) – the court imposed $1,000 penalties on taxpayers who argued that filing sworn income tax returns violated their Fifth Amendment privilege against self-incrimination, after the Tax Court had warned them that their argument – rejected consistently for more than seventy years – was frivolous.

McAfee v. United States, 2001-1 U.S.T.C. (CCH) ¶ 50,433 (N.D. Ga. 2001) – after losing the argument that his wages were not income and receiving a $500 penalty, the taxpayer returned to court to try to stop the government from collecting that penalty by garnishing his wages.  The court stated that "bringing this ill-considered, nonsensical litigation before this court for yet a second time is nothing but contumacious foolishness which wastes the time and energy of the court system," and imposed a $1,000 penalty.

United States v. Rempel, 87 A.F.T.R.2d (RIA) 1810 (D. Ark. 2001) – the court warned the taxpayers of sanctions and stated: "It is apparent to the court from some of the papers filed by the Rempels that they have at least had access to some of the publications of tax protester organizations.  The publications of these

organizations have a bad habit of giving lots of advice without explaining the consequences which can flow from the assertion of totally discredited legal positions and/or meritless factual positions."

## Sanctions Imposed Generally in Tax Court Cases:

Hanloh v. Commissioner, T.C. Memo. 2006-194, 92 T.C.M. (CCH) 266 (2006) - the court imposed sanctions of $25,000 where the taxpayer continued to advance frivolous and groundless arguments after having been warned that making those arguments would result in sanctions.

Stallard v. Commissioner, T.C. Memo. 2006-42, 91 T.C.M. (CCH) 881 (2006) - the court imposed sanctions of $25,000 where the taxpayer raised only frivolous and groundless arguments noting that the taxpayer had been warned in the current proceeding, and sanctioned in a prior proceeding, for raising frivolous arguments.

Silver v. Commissioner, T.C. Memo. 2005-281, 90 T.C.M. (CCH) 559 (2005) – the court imposed sanctions of $25,000 against the taxpayer for filing a frivolous suit challenging his tax liability and making only groundless arguments.

Stearman v. Commissioner, T.C. Memo. 2005-39, 89 T.C.M. (CCH) 823 (2005 aff'd, 436 F.3d 533 (5th Cir. 2006) – the court imposed sanctions totaling $25,000 against the taxpayer for advancing arguments characteristic of tax-protester rhetoric that has been universally rejected by the courts, including arguments regarding the Sixteenth Amendment.  In affirming the Tax Court's holding, the Fifth Circuit granted the government's request for further sanctions of $6,000 against the taxpayer for maintaining frivolous arguments on appeal, and the Fifth Circuit imposed an additional $6,000 sanctions on its own, for total additional sanctions of $12,000.

Howard v. Commissioner, T.C. Memo. 2005-144, 89 T.C.M. (CCH) 1449 (2005) – the court imposed a $12,500 penalty against the taxpayer, who had been sanctioned previously, for making frivolous arguments and instituting the court proceedings primarily for delay.

Brenner v. Commissioner, T.C. Memo. 2004-202, 88 T.C.M. (CCH) 212 (2004) – the court imposed sanctions of $15,000 against the taxpayer where he continued making frivolous arguments despite being specifically warned by the court against doing so.

Chase v. Commissioner, T.C. Memo 2004-142, 87 T.C.M. (CCH) 1414 (2004) – the court imposed sanctions of $20,000 against the taxpayer for continuing to make frivolous arguments even though the court warned him that he would likely be penalized if he persisted.

Trowbridge v. Commissioner, T.C. Memo. 2003-164, 85 T.C.M. (CCH) 1450 (2003) – the court imposed sanctions against former husband and wife, $25,000

64

for Mr. Trowbridge and $15,000 for Ms. Martin, where the taxpayers failed to raise a single plausible argument.

Hill v. Commissioner, T.C. Memo. 2003-144, 85 T.C.M. (CCH) 1328, 1331 (2003) – the court imposed a $15,000 penalty against the taxpayer because he disregarded warnings from the court that his position was without merit. Furthermore, the taxpayer had been previously sanctioned by the court in another proceeding for raising frivolous arguments.

Nunn v. Commissioner, T.C. Memo. 2002-250, 84 T.C.M. (CCH) 403, 410 (2002) – the court, on its own motion, imposed sanctions against the taxpayers in the amount of $7,500 after warning taxpayers repeatedly that their frivolous arguments could subject them to a penalty, stating "[w]here pro se litigants are warned that their claims are frivolous . . . and where they are aware of the ample legal authority holding squarely against them, a penalty is appropriate."

Sawukaytis v. Commissioner, T.C. Memo. 2002-156, 83 T.C.M. (CCH) 1886, 1888 (2002) – the court imposed a $12,500 penalty against the taxpayer for arguing the income tax is an excise tax and that he did not engage in excise taxable activities. The court found the taxpayer's "position, based on stale and meritless contentions, is manifestly frivolous and groundless."

Ward v. Commissioner, T.C. Memo. 2002-147, 83 T.C.M. (CCH) 1820, 1824 (2002) – the court imposed sanctions against the Wards in the amount of $25,000 stating that "[t]heir insistence on making frivolous protester type arguments indicates an unwillingness to respect the tax laws of the United States."

Gill v. Commissioner, T.C. Memo. 2002-146, 83 T.C.M. (CCH) 1816, 1819 (2002) – the court imposed a $7,500 penalty against the taxpayer stating the taxpayer's "insistence on making frivolous protester type arguments indicates an unwillingness to respect the tax laws of the United States."

Monaghan v. Commissioner, T.C. Memo. 2002-16, 83 T.C.M. (CCH) 1102, 1104 (2002) – the court rejected the taxpayer's frivolous arguments and imposed sanctions in the amount of $1,500, stating that "[h]e has caused this Court to waste its limited resources on his erroneous views of the tax law which he should have known are completely without merit."

Hart v. Commissioner, T.C. Memo. 2001-306, 82 T.C.M. (CCH) 934 (2001) – the court imposed sanctions in the amount of $15,000 against the taxpayer, because his delaying actions caused the Service and the court to needlessly spend time preparing for the trial and writing the opinion.

Sigerseth v. Commissioner, T.C. Memo. 2001-148, 81 T.C.M. (CCH) 1792, 1794 (2001) – pointing out that this case involving the use of trusts to avoid taxes was "a waste of limited judicial and administrative resources that could have been

devoted to resolving bona fide claims of other taxpayers," the court imposed a $15,000 penalty.

MatrixInfoSys Trust v. Commissioner, T.C. Memo. 2001-133, 81 T.C.M. (CCH) 1726, 1729 (2001) – in claiming that his income belonged to his trust, the court stated that the taxpayer had made "shopworn arguments characteristic of the tax-protester rhetoric that has been universally rejected by this and other courts," and imposed a $12,500 penalty.

Madge v. Commissioner, T.C. Memo. 2000-370, 80 T.C.M. (CCH) 804 (2000) – after having warned the taxpayer that continuing with his frivolous arguments – that he was not a taxpayer, that his income was not taxable, and that only foreign income was taxable – would likely result in a penalty, the court imposed the maximum $25,000 penalty.

Haines v. Commissioner, T.C. Memo. 2000-126, 79 T.C.M. (CCH) 1844, 1846 (2000) – stating, "[p]etitioner knew or should have known that his position was groundless and frivolous, yet he persisted in maintaining this proceeding primarily to impede the proper workings of our judicial system and to delay the payment of his Federal income tax liabilities," the court imposed a $25,000 penalty.

## Sanctions Imposed in Collection Due Process Cases:

Hassell v. Commissioner, T.C. Memo. 2006-196, 92 T.C.M. (CCH) 273 (2006) – the court imposed sanctions against the taxpayer in the amount of $10,000 for continuing to assert frivolous arguments.

Forbes v. Commissioner, T.C. Memo. 2006-10, 91 T.C.M. (CCH) 672 (2006) - the court imposed a $20,000 sanction against the taxpayer holding the he failed to assert any coherent claims and only raised frivolous arguments

Burke v. Commissioner, 124 T.C. 189 (2005) – the court imposed a $2,500 penalty against Burke for wasting judicial resources with his frivolous arguments even though Burke abandoned several frivolous arguments at trial.

Carrillo v. Commissioner, T.C. Memo. 2005-290, 90 T.C.M. (CCH) 608 (2005) – the court imposed a $5,000 sanction against the taxpayers for making frivolous arguments despite being alerted to the potential use of sanctions against them.

Wetzel v. Commissioner, T.C. Memo. 2005-211, 90 T.C.M. (CCH) 266 (2005) – the court imposed a $15,000 penalty against Wetzel, a professional tax return preparer, for making frivolous arguments because he knew or should have known the arguments were frivolous.

Hamzik v. Commissioner, T.C. Memo. 2004-223, 88 T.C.M. (CCH) 316 (2004) – the court imposed sanctions of $15,000 against the taxpayer for his insistence in

He was careful.

making frivolous arguments subsequent to the court warning him of the likelihood of penalties being imposed.

Aston v. Commissioner, T.C. Memo. 2003-128, 85 T.C.M. (CCH) 1260 – the court imposed a $25,000 penalty against the taxpayer for continuing to maintain frivolous arguments, despite having been warned in a previous proceeding before the court that those arguments were without merit.

Fink v. Commissioner, T.C. Memo. 2003-61, 85 T.C.M. (CCH) 976, 980 – the court imposed a $2,000 penalty against the taxpayer for raising "primarily for delay, frivolous arguments and/or groundless contentions, arguments, and requests, thereby causing the Court to waste its limited resources."

Eiselstein v. Commissioner, T.C. Memo. 2003-22, 85 T.C.M. (CCH) 794, 796 (2002) – the court imposed a penalty of $5,000 against the taxpayer for raising "frivolous tax-protester arguments" and referred to the "unequivocal warning" issued by the court in Pierson v. Commissioner concerning the imposition of sanctions against taxpayers abusing the protections provided for in sections 6320 and 6330.

Haines v. Commissioner, T.C. Memo. 2003-16, 85 T.C.M. (CCH) 771, 773 (2003) – the court imposed a penalty of $2,000 against the taxpayers for making "protester arguments which have, on numerous occasions, been rejected by the courts."

Gunselman v. Commissioner, T.C. Memo. 2003-11, 85 T.C.M. (CCH) 756, 759 (2003) – the court imposed a penalty of $1,000 against the taxpayer who argued "that there is no Internal Revenue Code section that makes him liable for taxes." The court characterized the taxpayer's argument as a "frivolous, tax-protester argument."

Young v. Commissioner, T.C. Memo. 2003-6, 85 T.C.M. (CCH) 739, 742 (2003) – the court imposed a penalty of $500 against the taxpayer for "raising the same arguments that [the court has] previously and consistently rejected as frivolous and groundless."

Roberts v. Commissioner, 118 T.C. 365, 372-73 (2002) - the court imposed a $10,000 penalty against Roberts for making frivolous arguments stating "[i]n Pierson v. Commissioner . . . we issued an unequivocal warning to taxpayers concerning the imposition of a penalty under section 6673(a) on those taxpayers who abuse the protections afforded by sections 6320 and 6330 by instituting or maintaining actions under those sections primarily for delay or by taking frivolous or groundless positions in such actions."

Rennie v. Commissioner, T.C. Memo. 2002-296, 84 T.C.M. (CCH) 611, 614 (2002) – the court imposed a $1,500 penalty against the taxpayer for making frivolous arguments and choosing "to ignore and/or not follow case precedent and interpretation of the statutory law."

Tornichio v. Commissioner, T.C. Memo. 2002-291, 84 T.C.M. (CCH) 578, 582 (2002) – the court imposed a $12,500 penalty against the taxpayer for making frivolous arguments, stating "[f]ederal courts have unequivocally rejected his protester arguments and sanctioned him for raising them."

Davich v. Commissioner, T.C. Memo. 2002-255, 84 T.C.M. (CCH) 429, 435 (2002) – the court imposed a $5,000 penalty against the taxpayer case, stating "it is clear that [the taxpayer] regards this proceeding as nothing but a vehicle to protest the tax laws of this country and to espouse his own misguided views, which we regard as frivolous and groundless."

Davidson v. Commissioner, T.C. Memo. 2002-194, 84 T.C.M. (CCH) 156, 160-61 (2002) – the court imposed a $4,000 penalty for raising groundless arguments noting that "[d]uring the administrative hearing, petitioner was provided with a copy of the Court's opinion in Pierson v. Commissioner [115 T.C. 576, 581 (2000)]. . . and was warned that his arguments were frivolous."

Davis v. Commissioner, T.C. Memo. 2001-87, 81 T.C.M. (CCH) 1503 (2001) – after warning that the taxpayer could be penalized for presenting frivolous and groundless arguments, the court imposed a $4,000 penalty.

Pierson v. Commissioner, 115 T.C. 576, 581 (2000) - the court considered imposing sanctions against the taxpayer, but decided against doing so, stating, "we regard this case as fair warning to those taxpayers who, in the future, institute or maintain a lien or levy action primarily for delay or whose position in such a proceeding is frivolous or groundless."

## Sanctions Imposed Against Taxpayer's Counsel:

Takaba v. Commissioner, 119 T.C. 285, 295 (2002) – the court rejected the taxpayer's argument that income received from sources within the United States is not taxable income stating that "[t]he 861 argument is contrary to established law and, for that reason, frivolous." The court imposed sanctions against the taxpayer in the amount of $15,000, as well as sanctions against the taxpayer's attorney in the amount of $10,500, for making such groundless arguments.

The Nis Family Trust v. Commissioner, 115 T.C. 523, 545-46 (2000) – concluding that the petitioners chose "to pursue a strategy of noncooperation and delay, undertaken behind a smokescreen of frivolous tax-protester arguments," the court imposed a $25,000 penalty against them, and also imposed sanctions of more than $10,600 against their attorney for arguing frivolous positions in bad faith.

Edwards v. Commissioner, T.C. Memo. 2002-169, 84 T.C.M. (CCH) 24, 42 (2002) – the court found that sanctions were appropriate against both the taxpayer and the taxpayer's attorney for making groundless arguments. The court stated that "[a]n attorney cannot advance frivolous arguments to this Court with impunity, even if those arguments were initially developed by the client." In

a supplemental opinion, the court imposed sanctions against the taxpayer in the amount of $24,000 and against the taxpayer's attorney in the amount of $13,050. Edwards v. Commissioner, T.C. Memo. 2003-149, 85 T.C.M. (CCH) 1357.

**4**

# CERTIFICATION OF BIRTH

BIRTH NUMBER: 112-63-6410747

NAME: MARK JAMES KRONENBERG

DATE OF BIRTH: OCTOBER 14, 1963     SEX: MALE

PLACE OF BIRTH: CHICAGO, COOK COUNTY, ILLINOIS

DATE FILED: OCTOBER 18, 1963     DATE ISSUED: JUNE 13, 2008

This is to certify that this is a true and correct abstract from the official record
filed with the Illinois Department of Public Health.

0361



**County of Cook**
**State of Illinois**
COUNTY BUILDING
CHICAGO, ILLINOIS 60602-1304

## Office of County Clerk
## David Orr



DAVID ORR     COUNTY CLERK



This copy is not valid unless displaying embossed seals of Cook County and County Clerk signature.

5

BOOK  868 PAGE  02

Objection to the Assertion of
Beneficent Taxable Juristic Commercial Status
on Driver's License

I, Mark J. Kronenberg, am applying for this Driver's License under
objection and protest.  The Driver's License is a Compelled License,
existing as a coerced instrument signed by me to avoid incarceration as
an unlicensed driver,[1] and is not to be used by the IRS or anyone else
for the expansive purposes of evidence of either Residency or of
Domiciliary, nor as evidence as entrance into Commerce, or of the
taxable acceptance of Federal or State created benefits, or of an act
of enfranchisement in any way, or of consent to be bound by any statute
other than the Illinois State Motor Vehicle Statutes, 625 ILCS 5 –
Illinois Vehicle Code.[2]  This license is to be used for evidence of
highway competency only.

My use of the highways is for private purposes only with no intent to
experience commercial gain in any form whatsoever.

That since the license was compelled out of me with some DE MINIMIS
tension in effect with a Substantive Right (The Right to Travel),[3] and
since the avowed purpose of the license itself is to adduce Evidence of
Competency,[4] then the extraneous collateral expectations of reciprocity
in any area outside of the Illinois Vehicle Code it would otherwise
create when left unchallenged, is to be terminated.

Furthermore, I have purchased an automobile liability insurance policy
under objection and protest.  The Illinois Vehicle Code requires a
liability insurance policy or a bond meeting prescribed minimum
amounts.  Failure to comply with this requirement results in a penalty
and the suspension of the license and vehicle registration.[5]  This
requirement violates my religious conviction that forbids insurance
policies, bonds or any other form of surety.

Please cancel or rescind this license application within 30 days if the
application of Commercial Status and/or Residency Status is deemed
mandatory on all Drivers License holders.

Respectfully Submitted,

*Mark J Kronenberg*

Mark James Kronenberg
31198 IL Rt 40
Milledgeville, Illinois

State of Illinois
County of Carroll

Signed before me on October 13, 2006 by Mark J. Kronenberg.

*Vicki Deets*

"OFFICIAL SEAL"
Vicki Deets
Notary Public, State of Illinois
My Commission Expires 07/24/2009

Page 1 of 5

BOOK 868 PAGE 03

cc:

Jesse White
Secretary of State
State of Illinois
213 State Capitol
Springfield, IL 62706

Lisa Madigan
Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601

_____

Notes:

[1] Illinois Statutes criminalizing unlicensed driving:

(625 ILCS 5/6-101) (from Ch. 95 1/2, par. 6-101)
Sec. 6-101. Drivers must have licenses or permits.
    (a) No person, except those expressly exempted by Section 6-102,
shall drive any motor vehicle upon a highway in this State unless
such person has a valid license or permit, or a restricted driving
permit, issued under the provisions of this Act.

(625 ILCS 5/6-303) (from Ch. 95 1/2, par. 6-303)
Sec. 6-303. Driving while driver's license, permit or privilege to
operate a motor vehicle is suspended or revoked.
    (a) Any person who drives or is in actual physical control of a
motor vehicle on any highway of this State at a time when such
person's driver's license, permit or privilege to do so or the
privilege to obtain a driver's license or permit is revoked or
suspended as provided by this Code or the law of another state,
except as may be specifically allowed by a judicial driving permit,
family financial responsibility driving permit, probationary license
to drive, or a restricted driving permit issued pursuant to this
Code or under the law of another state, shall be guilty of a Class A
misdemeanor.

(625 ILCS 5/6-601) (from Ch. 95 1/2, par. 6-601)
Sec. 6-601. Penalties.
    (a) It is a petty offense for any person to violate any of the
provisions of this Chapter unless such violation is by this Code or
other law of this State declared to be a misdemeanor or a felony.
    (b) General penalties. Unless another penalty is in this Code or
other laws of this State, every person convicted of a petty offense
for the violation of any provision of this Chapter shall be punished
by a fine of not more than $500.
    (c) Unlicensed driving. Except as hereinafter provided a
violation of Section 6-101 shall be:
        1. A Class A misdemeanor if the person failed to obtain a
driver's license or permit after expiration of a period of
revocation.
        2. A Class B misdemeanor if the person has been issued a
driver's license or permit, which has expired, and if the period of
expiration is greater than one year; or if the person has never been
issued a driver's license or permit, or is not qualified to obtain a
driver's license or permit because of his age.

[2] When addressing an evidentiary question -- such as the
appropriateness of assigning BURDENS OF PROOF to either Government

or the Individual, under circumstances where the Individual does not want to do something but penal statutes intervene to change his reluctance -- Justice Frankfurter once said that:

*Nishikawa v. Dulles*, 356 U.S. 129, at 141 (1957), "Where an individual engages in conduct by command of a penal statute... to whose laws he is subject, the gravest doubt is case on the applicability of the normal assumption -- even in a prosecution for murder (see LELAND VS. OREGON, 343 U.S. 790) -- that what a person does, he does of his own free will.  When a consequence as drastic as [enfranchisement] may be the effect of such conduct, it is not inappropriate that the Government should be charged with proving that the Citizen's conduct was a response, not to the command of the statute, but to his own direction.  The ready provability of the critical fact -- existence of an applicable [penal] law, particularly a criminal law, commanding the act in question -- provides protection against shifting the burden to the Government on the basis of a frivolous assertion of the defense of duress.  Accordingly, the Government should, under the circumstances of this case, have the burden of proving by clear, convincing, and unequivocal evidence that the Citizen voluntarily performed an act causing [enfranchisement]."

[3]  A brief recap of some of the Right to Travel cases in the US Supreme Court:

*U.S. v. Guest*, 383 U.S. 745 (1966), the Court noted, "It is a right that has been firmly established and repeatedly recognized."

*Shapiro v. Thompson*, 394 U.S. 618 (1969), Justice Stewart noted in a concurring opinion that "it is a right broadly assertable against private interference as well as governmental action. Like the right of association, ... it is a virtually unconditional personal right, guaranteed by the Constitution to us all."

In *Kent v. Dulles*, 357 U.S. 116 (1958), the United States Secretary of State had refused to issue a passport, based on the suspicion that the plaintiff was going abroad to promote communism. Justice William O. Douglas wrote for the Court:  "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. . . . Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage.  Travel abroad, like travel within the country, . . . may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values."

In *Saenz v. Roe*, 526 U.S. 489 (1999), Justice John Paul Stevens, writing for the majority, held that the United States Constitution protected three separate aspects of the right to travel among the states: the right to enter one state and leave another, the right to be treated as a welcome visitor rather than a hostile stranger (protected by the Privileges and Immunities Clause in Article IV, §2), and for those who become permanent residents of a state, the

right to be treated equally to native born citizens (this is
protected by the 14th Amendment Privileges or Immunities clause).

[4] *Delaware v. Prouse*, 440 U.S. 648, at 658 (1978), "Automobile
licenses are issued periodically to evidence that the drivers
holding them are sufficiently familiar with the rules of the road
and are physically qualified to operate a motor vehicle."

[5] Illinois Statutes requiring liability insurance:

(625 ILCS 5/7-601) (from Ch. 95 1/2, par. 7-601)
Sec. 7-601. Required liability insurance policy.
    (a) No person shall operate, register or maintain registration
of, and no owner shall permit another person to operate, register or
maintain registration of, a motor vehicle designed to be used on a
public highway unless the motor vehicle is covered by a liability
insurance policy.

(625 ILCS 5/7-606) (from Ch. 95 1/2, par. 7-606)
Sec. 7-606. Uninsured motor vehicles - suspension and reinstatement.
The Secretary shall suspend the vehicle registration of any motor
vehicle determined by the Secretary to be in violation of Section
7-601 of this Code, including any motor vehicle operated in
violation of Section 3-707, 3-708 or 3-710 of this Code by an
operator other than the owner of the vehicle.

Sec. 3-707. Operation of uninsured motor vehicle - penalty.
    (a) No person shall operate a motor vehicle unless the motor
vehicle is covered by a liability insurance policy in accordance
with Section 7-601 of this Code.
    (b) Any person who fails to comply with a request by a law
enforcement officer for display of evidence of insurance, as
required under Section 7-602 of this Code, shall be deemed to be
operating an uninsured motor vehicle.
    (c) Any operator of a motor vehicle subject to registration under
this Code who is convicted of violating this Section is guilty of a
business offense and shall be required to pay a fine in excess of
$500, but not more than $1,000. However, no person charged with
violating this Section shall be convicted if such person produces in
court satisfactory evidence that at the time of the arrest the motor
vehicle was covered by a liability insurance policy in accordance
with Section 7-601 of this Code. The chief judge of each circuit may
designate an officer of the court to review the documentation
demonstrating that at the time of arrest the motor vehicle was
covered by a liability insurance policy in accordance with Section
7-601 of this Code.
    (c-1) A person convicted of violating this Section shall also
have his or her driver's license, permit, or privileges suspended
for 3 months. After the expiration of the 3 months, the person's
driver's license, permit, or privileges shall not be reinstated
until he or she has paid a reinstatement fee of $100. If a person
violates this Section while his or her driver's license, permit, or
privileges are suspended under this subsection (c-1), his or her
driver's license, permit, or privileges shall be suspended for an

BOOK 868 PAGE 06

additional 6 months and until he or she pays the reinstatement fee.

(625 ILCS 5/3-708) (from Ch. 95 1/2, par. 3-708)
Sec. 3-708. Operation of motor vehicle when registration suspended
for non-insurance.

No person shall operate a vehicle the registration of which is
suspended pursuant to Section 7-606 or 7-607 of this Code.
     Any person convicted of violating this Section is guilty of a
business offense and shall be required to pay a fine of not less
than $1,000 and not more than $2,000. Any person convicted of a
second or subsequent violation of this Section is guilty of a Class
B misdemeanor and shall be required to pay a fine of not less than
$1,000 and not more than $2,000.

BOOK 868 PAGE 07

Social Security
Waiver, Forfeiture and Rejection of Benefits

Reference:  Social Security Number 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

Dear Ms. Barnhart:

The purpose of this declaration is to inform you and other interested parties
that I waive, forfeit and reject all benefits of the Social Security program.

A Social Security Number was applied for on my behalf by my parents when I
was 12 years of age, in 1975.  My parents nor I had full knowledge of the
terms of this voluntary program.  I have participated in the Social Security
program for the period of time from the assignment of the above number to the
date of this notification.  Never during this time did I have full knowledge,
and therefore give proper consent to participation in the Social Security
Program.

The State has no right to intervene into simple common law occupations to such
an extent that an Individual not in an Equity Jurisdictional relationship with
the State and not in Commerce, and rejecting Federal political benefits, can
force the acceptance of unwanted benefits, and can force a Federal Taxpayer
Status on someone (with the attendant criminal liability associated
therewith), and can force the signing of contracts with the State, and all of
that prior to being able to experience any livelihood.

The Social Security Administration is on a limited jurisdictional mission by
the Congress, having no grant of jurisdiction in Title 42 to prevent,
interfere, or obstruct with terminal contract rescission and benefit
forfeiture, nor does Title 42 in any way restrain the cancellation of Social
Security contracts and the attachment of Equity Jurisdiction with the
government such a contract initiates.  And these rights are self-existent
under Common Law unless specifically overruled.

I hereby waive, forfeit and reject all benefits of the Social Security
program including but not limited to Old Age and Survivor's Insurance Benefit
Payments, Disability Insurance Payments, Hospital Insurance Payments and
those benefits payable to others on my behalf.

The State's forced third party relationship to the arrangements of my pursuit
to work for my livelihood is intolerable.  I object to this intervention
against my will; forcing me to accept benefits that I now hereby waive,
refuse, forfeit and forego.  Such an unwanted and forced relationship violates
relational Principles Of Nature not permissible, absent the existence of some
other invisible contract I may not be aware of; and interferes with my Right
To Work under the Fifth Amendment.

Should I find the need to work for an Employer, presentation of the Social
Security Number, if required, is under Protest, Objection and Rejection of
Benefits[1] and is done solely for the purpose of deflecting the otherwise
imminent termination of my livelihood.  I do not participate in trade,
commerce, business, or industry in working for my livelihood.  Such
presentation of the Social Security Number after its prior nullification shall
not reactivate it.  I hereby waive, forfeit, forego, and will return where
possible, any and all benefits that would otherwise inure to me as an Employee
and as a participant in the Social Security retirement program.  This
Objection is a continuous one.  Additionally, any qualified acceptance of bank

BOOK  368 PAGE  08

drafts taken in contemplation of exchange into hard currency is accepted for
the administrative convenience of such Employer, and will be endorsed under
protest, at law and not in equity, in the future.


Respectfully Submitted,

*Mark J. Kronenberg*

Mark James Kronenberg
31198 IL Rt 40
Milledgeville, Illinois

cc:
Alberto R. Gonzales
Attorney General of the US
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Jo Anne B. Barnhart
Commissioner
Social Security Administration
Office of Public Inquiries
Windsor Park Building
6401 Security Blvd.
Baltimore, MD 21235

State of Illinois
County of Carroll

October 13, 2006.    Signed by Mark J. Kronenberg before me on

*Vicki Deets*

```
"OFFICIAL SEAL"
Vicki Deets
Notary Public, State of Illinois
My Commission Expires 07/24/2009
```

[1]Those rejected benefits of employment include but are not limited to:

| 820 ILCS 5/ | Labor Dispute Act |
| 820 ILCS 35/ | Employee Arbitration Act |
| 820 ILCS 65/ | Illinois Worker Adjustment and Retraining Notification Act |
| 820 ILCS 105/ | Minimum Wage Law |
| 820 ILCS 110/ | Equal Wage Act |
| 820 ILCS 112/ | Equal Pay Act |
| 820 ILCS 125/ | Wages of Women and Minors Act |
| 820 ILCS 140/ | One Day Rest in Seven Act |
| 820 ILCS 160/ | Employee Benefit Contribution Act |
| 820 ILCS 225/ | Health and Safety Act |
| 820 ILCS 305/ | Worker's Compensation Act |
| 820 ILCS 405/ | Unemployment Insurance Act |

| 29 USC 5 | Labor Disputes; Mediation And Injunctive Relief |
| 29 USC 8 | Fair Labor Standards |
| 29 USC 15 | Occupational Safety And Health |
| 29 USC 14 | Age Discrimination in Employment |
| 29 USC 17 | Comprehensive Employment And Training Programs |
| 29 USC 18 | Employee Retirement Income Security Program |
| 29 USC 28 | Family And Medical Leave |
| 29 USC 31 | Assistive Technology For Individuals With Disabilities |

BOOK  868 PAGE  09

## Notice of Objection and Protest
## Use of Federal Reserve Notes

I, Mark J. Kronenberg the undersigned, hereby affirm and declare that:
I reject, waive and forfeit all commercial Consideration associated
with the use of those negotiable circulating commercial equity
instruments of debt called Federal Reserve Notes (Title 12, Section
411).  Items of commercial Consideration include but may not be limited
to:

- Commercial profit or gain in Interstate Commerce.
- A National currency providing a stable economic environment.
- Convenience, familiarity and universal acceptance.
- The enhanced market value of Federal Reserve Notes due to Legal
  Tender Statutes.

I am using Federal Reserve Notes against my will.  This use is for
minimum survival purposes only, and that even this use is reluctant.

My STATE OF MIND is not one of beneficial acceptance and enjoyment of
Federal Reserve Notes, but one of a forced DE MINIMIS coercion.  I am
not using Federal Reserve Notes for Commercial profit or gain, but such
use is out of practical necessity since the State has physically
removed all currency competitors from the marketplace under various
penal statutes and literally by physical duress.  So now my use of
Federal Reserve Notes is by lack of alternatives to select from, not
freedom of choice.

By such monopoly tactics, the State is engaging in unfair Trade
Practices, which if I did the identical same thing, I would be
incarcerated for it under numerous Racketeering and Sherman Anti-Trust
criminal statutes.  Yet the FORCED monopoly of a currency serves no
beneficial public interest, and is actually an instrumentality to work
MAGNUM damages on us all, especially since the State has replaced the
initial hard currency with a paper currency.

I do not accept any Consideration the State is handing me when Federal
Reserve Notes circulate into my possession.  My occasional use of
Federal Reserve Notes is involuntary, and transpires because I am
seeking to avoid being incarcerated as an accessory to the criminal
circulation of illegal currency under Federal statutes.

Respectfully Submitted,

*Mark J Kronenberg*

Mark James Kronenberg
31198 IL Rt 40
Milledgeville, Illinois


State of Illinois
County of Carroll

Signed before me on October 13, 2006 by Mark J. Kronenberg.

*Vicki Deets*



"OFFICIAL SEAL"
Vicki Deets
Notary Public, State of Illinois
My Commission Expires 07/24/2009

Page 1 of 3

BOOK 868 PAGE 10

cc:

Alberto R. Gonzales
Attorney General of the US
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001


ADDENDUM

Historical Background

In a previous day and in a previous era, the State used police powers to seal a monopoly on currency instruments, and so now I have no choice in selecting between different currency instruments to use.

The Federal mint, which had long been agitated for in California, went into partial operation in April 1854. Within a few years it satisfied all the demand for coins. Until it went into full-scale operation, however, the demand for circulating coins was met by the issues of such private concerns as Kellogg & Richter, Kellogg & Humbert, and Wass, Molitor & Co. At the end of 1855 it was estimated that there was still some five to eight million dollars' worth of private coin in circulation. In the summer of 1856 coin was needed in San Francisco for export purposes, and both the issues of the U.S. mint and private coins were used to meet this need. By October 1856 the Federal mint was apparently able to meet all demands for coins in domestic circulation and for export, so that private issues of gold coin quietly passed out of existence. There is no record of any further private minting in California after this time.

Federal Statutes Forbidding Private Currency

Starting with the LEGAL TENDER Laws in 1862, "…That the Secretary of the Treasury is hereby authorized to issue, on the credit of the United States, one hundred and fifty millions of dollars of United States notes, not bearing interest, payable to bearer, at the Treasure of the United States…" to fund the civil war, the State put into its course of action the monopolizing of circulating currency.

The criminalizing of circulating private currency began in 1864:

"...That it shall be unlawful for any officer acting under the provisions of this act to countersign or deliver to any association, or to any other company or person, any circulating notes contemplated by this act, except as herein before provided, and in accordance with the true intent and meaning of this act. Any officer who shall violate the provisions of this section shall be deemed guilty of a high misdemeanor, and on conviction thereof shall be punished by fine not exceeding double the amount so countersigned and delivered, and imprisonment not less than one year and not exceeding fifteen years, at the discretion of this court in which he shall be tried."
    -    13 UNITED STATES STATUTES AT LARGE 107, Chapter 106,
Section 27 "National Banking Act", 38th Congress, First Session (1864).

BOOK 368 PAGE 11

An act in 1865 imposed a 10% tax on state bank note issues.  In VEAZIE BANK VS. FENNO [75 U.S. 533 (1869)], the Supreme Court ruled that a tax of 10% on state bank notes in circulation was held to be Constitutional.

The combined effect of those Civil War era penal statutes collectively was to monopolize the entire American currency supply under Federal jurisdiction.

By the time the 1940's came around, 13 U.S. STATUTES AT LARGE had been changed slightly and placed into Title 12, Section 581 "Unauthorized Issue of Circulating Notes", with the threatened incarceration retained.  In June of 1948, the Congress repealed Title 12, Section 581, and so today the State retains the monopoly on circulating instruments by prohibiting banking associations from issuing currency, and also by prohibiting anyone anywhere from circulating their own coins:

"Whoever makes, issues, circulates, or pays out any note, check, memorandum, token, or other obligation for a less sum than $1.00, intended to circulate as money or be received or used in lieu of lawful money of the United States, shall be fined not more than $10,000 or imprisoned not more than one year, or both."
-    Title 18, Section 336 "Issuance of Circulating Obligations of less than $1".

By these penal statutes, both privately circulated coins and paper notes were outlawed, and die-hard private mints were later purchased by the State, and otherwise put out of business, permanently.  And in the 1900's, under an administrative regulation promulgated by the Board of Governors of the Federal Reserve Board, the issuance, if even for brief promotional purposes, of publicly circulating private bank notes by member banks, is forbidden.

END

BOOK   868 PAGE   12

Notice of Citizenship and Residency Renunciation
Rejection of Benefits
Notice as Non-Taxpayer

I, Mark James Kronenberg, being NATURAL-BORN on October 14, 1963, in the state of Illinois, voluntarily[1] renounce my status as U.S. Citizen and Illinois State Citizen as presumed at my birth[2]. I also renounce my status as Resident of the State of Illinois or any other State or municipality. I will remain within the geographical boundaries of the several states as an Inhabitant Without Juristic Benefits and neither a Resident nor a Domiciliary Benefit Acceptant[3]. My intent is to live peaceably and respect the laws of the US and state of Illinois.

My conscience will not allow me to testify to the "Oath of Allegiance" to the US[4]. Since my new birth as a Christian, I bear true faith and allegiance to the only true Sovereign, the King of kings and Lord of lords, Jesus Christ. My citizenship is in the Kingdom of Heaven. Therefore I cannot bear true faith and allegiance to any earthly prince, potentate, state, or sovereignty.

As an Inhabitant Without Juristic Benefits I must necessarily reject, waive and forfeit all Federal, State and Local public benefits available to US citizens and Residents, including but not limited to: Any grant, contract, loan, professional license, commercial license, or foreign consular service; any retirement (particularly all Social Security benefits attached to the number 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), welfare, health, disability, public or assisted housing, postsecondary education, food assistance, any employment or unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States, State or local government or by appropriated funds of the United States, State or local government. Furthermore I reject all constitutional benefits, the Police protectorate powers and the benefits of the availability of the State courts.

Since a correlative concise presentation of the benefits of Citizenship and residency does not exist based on my knowledge and research, in the action of the different branches of the political government nor by course of judicial decisions in the courts, I cannot formulate a comprehensive list of all specific benefits inuring to Citizenship and Residency. Nonetheless, this waiver is comprehensive.

By this declaration of Failure of Consideration, my duties required of Citizenship are terminated, including but not limited to: Loyalty and allegiance to the US Government and the State of Illinois Government, voting, service in the Armed Forces and National Guard, payment of income taxes and property taxes, and jury duty. This objection to Citizenship and Residency along with rejection of all correlative benefits therewith, establishes my status as Non-Taxpayer.

Please notify me within 30 days if any of the terms of this renunciation are found to be contrary to the laws of the United States or State of Illinois.

Respectfully Submitted,

*Mark J. Kronenberg*

Mark James Kronenberg
31198 IL Rt 40
Milledgeville, Illinois

State of Illinois
County of Carroll

Signed before me on October 13, 2006 by
Mark J. Kronenberg.

*Vicki Deets*

"OFFICIAL SEAL"
Vicki Deets
Notary Public, State of Illinois
My Commission Expires 07/24/2009

Page 1 of 3

BUUK  888 PAGE  13

cc:

Alberto R. Gonzales
Attorney General of the US
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Lisa Madigan
Illinois Attorney General
100 West Randolph Streit
Chicago, IL 60601

Mark W. Everson
Commissioner
Internal Revenue Service
211 S. Court St.
Rockford, IL 61101

Brian Hamer
Director
Illinois Department of Revenue
James R. Thompson Center
Concourse Level
100 West Randolph Street
Chicago, Illinois 60601-3274

---

[1] An Attorney General once said that:
    "... our Constitution, in speaking of NATURAL-BORN CITIZENS, uses no
affirmative language to make them such, but only recognizes and reaffirms the
universal Principle, common to all nations, and as old as political society,
that the people born in a country do constitute the nation, and, as
individuals, are NATURAL members of the body politic.
    "If this be a true Principle, and I do not doubt it, it follows that
every person born in the Country is, at the moment of birth, PRIMA FACIE a
Citizen; and he who would deny it must take upon himself the burden of
proving some great disenfranchisement strong enough to override the "NATURAL-
BORN" right as recognized by the Constitution in terms the most simple and
comprehensive, and without any reference to race or color, or other
accidental circumstance.
    "That NATIVITY furnishes the rule, both of duty and of right, as
between the individual and the Government, is a historical and political
truth so old and so universally accepted that it is needless to prove it by
authority...
    "In every civilized Country, the individual is BORN to duties and
rights, the duty of allegiance and the right to protection; and these are
correlative obligations, the one the price of the other, and they constitute
the all-sufficient bond of union between individual and his Country; and the
Country he is born in is, PRIMA FACI , his Country.  In most countries the
old law was broadly laid down that this natural connection between the
individual and his native country was perpetual; at least, that the tie was
indissoluble by the act of the subject alone...
    "But that law of the perpetuity of allegiance is now changed..."
[meaning Americans can dissolve the tie whenever they feel like it, a
severance not possible under the old Britannic rule of Kings.]
    - Edward Bates, United States Attorney General, in ["Citizenship"], 10
      Opinions of the Attorney General 382 at 394, [W.H. & O.H. Morrison,
      Washington (1868)].

BOOK 868 PAGE 14

*Afroyim v. Rusk.* 387 U.S. 253 (5/29/67) Mr. Justice Black, in a case considering if Congress possessed the power to expatriate an individual against his will delivered the opinion of the court: "We hold that the fourteenth amendment was designed to, and does, protect every citizen of this nation against a Congressional forcible destruction of his citizenship, whatever his Creed, color, or race. Our holding does no more than to give to this Citizen that which is his own, a constitutional right to remain a Citizen in a free country unless he voluntarily relinquishes that Citizenship.

[2] Title 8, Section 1401 ("Nationality and Naturalization") - "The following shall be nationals and citizens of the United States at birth: (a) A person born in the United States, and subject to its jurisdiction thereof;" also:

Amendment XIV US Constitution
Section 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.

[3] *Lawrence v. State Tax Commission*, 286 U.S. 276, at 279 (1931) "The obligation of one domiciled with a state to pay taxes there, arise from unilateral action of the state Government in the exercise of its most plenary of sovereign powers, that to raise revenue to defray the expenses of Government and to distribute its burdens equally among those who enjoy its benefits. Hence, domicile in itself establishes a basis for taxation."

[4] 8 CFR 337.1 "Oath of Allegiance"

BUUK   868 PAGE   15

### Notice of Severance, Waiver, Forfeiture, and Rejection of Admiralty Benefits

The purpose of this notice is to declare publicly and to all who are concerned that I, Mark James Kronenberg, am severed from the Admiralty Jurisdiction that the 14th Amendment creates for the State and that is derived from my birth certificate.  My acceptance of this assertion of Admiralty Jurisdiction on me is now terminated.  Furthermore, all Enfranchisement benefits the State intends to offer, particularly those benefits of Limited Debt Liability, Social Security and all Commercial Benefits offered by the Uniform Commercial Code are now declined, rejected, and waived.

Additionally, I declare that I am a Stranger to the Public Trust.  I waive and forfeit all benefits of the protective contract offered by the State for its Citizens.

Respectfully Submitted,

*Mark J Kronenberg*

Mark James Kronenberg
31198 IL Rt 40
Milledgeville, Illinois

cc:

Alberto R. Gonzales
Attorney General of the US
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

State of Illinois
County of Carroll

Signed before me on October 13, 2006 by
Mark J. Kronenberg.

*Vicki Deets*



"OFFICIAL SEAL"
Vicki Deets
Notary Public, State of Illinois
My Commission Expires 07/24/2009

6

BOOK 912 PAGE 46

### Rejection and Waiver of State Protectorate Benefits
### for Married Persons and Lawful Children

RE:  Illinois Marriage License No. 137483

The marriage between Mark J. and Kimberly S. Kronenberg, as of this declaration, is a private Christian marriage.  The contract with the State, initiated by the registered marriage[1] that is documented by the above license number, is null and void.  Both parties here-named reject State guardianship of this marriage and enforcements of any kind.  Accordingly, all benefits and services offered to registered marriages and the children thereof, including judicial enforcement, in the State of Illinois are hereby waived, rejected and forfeited.

This marriage is lawful under the authority of Jesus Christ.  This marriage is a solemn and exclusive covenant between the two parties here-named and God the Heavenly Father.  The Lord God ministers to this marriage directly and through the earthly Church as instituted by Jesus Christ to provide protection, support and assistance, and to enforce all binding Ecclesiastical statutes as defined in the Bible.

Waived and rejected services and benefits include family planning, sterilization and abortion services, child protection, financial assistance, child and family welfare, medical assistance, medical insurance assistance, prescription drug assistance, housing assistance, child support enforcement, energy assistance and developmental disabilities assistance.  These services offered by State agencies such as the Department of Children and Family Services, the Department of Healthcare and Family Services and the Department of Public Health, are delineated in 750 ILCS "Families", 305 ILCS "Public Aid" and 325 ILCS "Children" among others.

Rejected benefits related to marriage include but are not limited to:

The right to dissolve the marriage[2]
Enforcement of premarital agreements[3]
Enforcement of support and maintenance of spouse, including children, in need[4]
The cooperative protections among other States, territories under jurisdiction of the United States and foreign reciprocating countries[5]
All child support services[6]
Declaration by the State of legal status of any children of this marriage as an emancipated person with power to enter into valid legal contracts[7]
Child custody determinations and enforcement by the courts[8]
All rights and remedies provided for heterologous artificial insemination[9]
Declaration by the State of the Father-Child relationship and the Mother-Child relationship[10]
Enforcement of gestational surrogacy contracts[1.]
All rights and remedies provided for the adoption of children[12]
All rights, remedies, protection and enforcement proceedings for abused spouses[13]
The right to sue or be sued by a spouse as if unmarried in disputes involving civil injuries, debts, earnings, contracts, property, etc[14]
Notice by the State of an unemancipated minor's intent to have an abortion[15]

BOOK **912** PAGE **47**

Rejected benefits related to financial assistance include but are not limited to:

Provision of financial aid to the aged, blind or disabled[16]
Provision of temporary financial assistance for needy families[17]
Provision of medical care, rehabilitative services, hospitalization, prescription drugs, handicap needs, long term care needs, etc.[18]

Rejected benefits related to children include but are not limited to:

Protection for abandoned, abused and neglected children[19]
Birth control services for minors[20]
Child sexual abuse prevention programs[21]
Child privacy protection[22]
Early educational intervention to avoid developmental delays[23]
High risk youth career development services[24]
Services for children who are deaf[25]
Missing children services[26]
Surgical treatments for children with deformities and injuries[27]

Offers of State enforcement services for the above and other applicable benefits and constraints previously applicable to our marriage are hereby waived and rejected.

Respectfully Submitted,

*Mark J. Kronenberg*

Lawful Husband
Mark James Kronenberg
31198 IL Rt 40
Milledgeville, Illinois

Respectfully Submitted,

*[signature]*

Lawful Wife
Kimberly S. Kronenberg
31198 IL Rt 40
Milledgeville, Illinois

State of Illinois
County of Carroll

                Signed before me on Oct 12, 200_ by Mark J. Kronenberg
and Kimberly S. Kronenberg.

"OFFICIAL SEAL"
KIMBERLY K. MOBLEY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/20/2010

*[notary signature]*

BOOK   912 PAGE   48

cc:

Bryan Samuels
Director Dept of Children and Family Services
406 East Monroe St.
Springfield, IL 62701

Barry S. Maram
Director Dept of Healthcare and Family Services
201 South Grand Avenue East, 3rd Floor
Springfield, IL 62763

Carol L. Adams
Secretary Dept of Human Services
100 S Grand Ave E
Springfield, IL 62762

Eric E. Whitaker
Director Dept of Public Health
535 W. Jefferson St.
Springfield, IL 62761

Endnotes:

[1] 750 ILCS 5/101
    Sec. 101. Short Title.) This Act may be cited as the "Illinois Marriage and Dissolution of Marriage Act".
750 ILCS 5/102
    Sec. 102. Purposes; Rules of Construction. This Act shall be liberally construed and applied to promote its underlying purposes, which are to:
    (1) provide adequate procedures for the solemnization and registration of marriage;
    (2) strengthen and preserve the integrity of marriage and safeguard family relationships;
    (3) promote the amicable settlement of disputes that have arisen between parties to a marriage;
    (4) mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage;
    (5) make reasonable provision for spouses and minor children during and after litigation, including provision for timely awards of interim fees to achieve substantial parity in parties' access to funds for litigation costs;
    (6) eliminate the consideration of marital misconduct in the adjudication of rights and duties incident to the legal dissolution of marriage, legal separation and declaration of invalidity of marriage;
    (7) secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children during and after the litigation; and
    (8) make provision for the preservation and conservation of assets during the litigation.

750 ILCS 5/201
    Sec. 201. Formalities. A marriage between a man and a woman licensed, solemnized and registered as provided in this Act is valid in this State.

BOOK   912 PAGE   49

2 750 ILCS 5/Illinois Marriage and Dissolution of Marriage Act
3 750 ILCS 10/Illinois Uniform Premarital Agreement Act
4 750 ILCS 16/Non-Support Punishment Act
5 750 ILCS 22/Uniform Interstate Family Support Act
6 750 ILCS 24/Unified Child Support Services Act, and 750 ILCS 25/Expedited
Child Support Act of 1990, and 750 ILCS 27/Child Support Payment Act, and
750 ILCS 28/Income Withholding for Support Act
7 750 ILCS 30/Emancipation of Minors Act
8 750 ILCS 36/Uniform Child-Custody Jurisdiction and Enforcement Act
9 750 ILCS 40/Illinois Parentage Act
10 750 ILCS 45/Illinois Parentage Act of 1984
11 750 ILCS 47/Gestational Surrogacy Act
12 750 ILCS 50/Adoption Act, and 750 ILCS 55/Contest of Adoptions Act
13 750 ILCS 60/Illinois Domestic Violence Act of 1986, and 750 ILCS 61/Address
Confidentiality for Victims of Domestic Violence Act
14 750 ILCS 65/Rights of Married Persons Act
15 750 ILCS 70/Parental Notice of Abortion Act of 1995
16 305 ILCS 5/Aid To The Aged, Blind or Disabled
17 305 ILCS 5/Temporary Assistance For Needy Families
18 305 ILCS 5/Medical Assistance, 305 ILCS 5/Hospital Provider Funding, 305
ILCS 5/Long-Term Care Provider Funding, 305 ILCS 5/Developmentally Disabled
Care Provider Funding
19 325 ILCS 2/ Abandoned Newborn Infant Protection Act and (325 ILCS 5/)
Abused and Neglected Child Reporting Act.
20 (325 ILCS 10/) Birth Control Services to Minors Act
21 (325 ILCS 15/) Child Sexual Abuse Prevention Act
22 (325 ILCS 17/) Children's Privacy Protection and Parental Empowerment Act
23 (325 ILCS 20/) Early Intervention Services System Act
24 (325 ILCS 25/) High Risk Youth Career Development Act
25 (325 ILCS 35/) Interagency Board for Children who are Deaf or Hard-of-
Hearing and have an Emotional or Behavioral Disorder Act
26 (325 ILCS 40/) Intergovernmental Missing Child Recovery Act of 1984,
(325 ILCS 45/) Minor Identification and Protection Act, (325 ILCS 50/)
Missing Children Records Act, (325 ILCS 55/) Missing Children Registration
Law, (325 ILCS 57/) Find Our Children Act
27 (325 ILCS 60/) Surgical Institute for Children Act

**7**

# STATE OF ILLINOIS • JESSE WHITE • SECRETARY OF STATE

## APPLICATION FOR DRIVERS LICENSE

DOL: 1028 076

RENEWAL TAG:6

CARR

K655 5506 3293 0   6 01 160 BRN BRN   M 10-14-63

MARK J KRONENBERG
11985 IL RT 40
MILLEDGEVILLE

1637J   D M • • B   10 14 06

61051

291 CO 1313 10-13-06 6 15.00 CH

N
A B C D E F G H I J   K L
N   N   M
DD Y   10   11 10

K655   5506   3293

APPLICATION PRESENTED   DL

REMARKS

UNMARRIED PERSON UNDER AGE 18
SIGNATURE of father, mother, guardian or other responsible adult:

FOR DRIVER EDUCATION STUDENTS ONLY

IL   K655-5506-3293-0   10-15-02   10-14-06

ATTACHMENTS
CLEMENCY
LETTER
VSR
MED REVIEW
SCH BUS
OTHER

## STATE OF ILLINOIS • JESSE WHITE • SECRETARY OF STATE

# RENEWAL APPLICATION

## APPLICANT QUESTIONS

1. Is your driver's license or ID card or privilege to obtain a license or ID card suspended, revoked, cancelled or refused in any state under that or any other name? (If yes, a letter of clearance is required.)

   Do you presently hold a valid driver's license or ID card in this or any other state?

2. Is your driver's license being held by a court in lieu of bail?

3. Do you presently hold a valid driver's license or ID card in this or any other name?

4. Has a court found you to have a mental disability or disease or has a court committed you to a mental health facility? (If yes, copies of related court orders and/or physician's statement and a signed medical agreement are required.)

5. Do you have any condition that might cause a temporary loss of consciousness? (If yes, a physician's statement and a signed medical agreement are required.)

6. Do you have any mental or physical condition that might impair your driving ability? (If yes, a physician's statement and a signed medical agreement are required.)

7. Do you use any drugs, including prescription medication or alcohol to an extent that may impair your driving ability? (If yes, a physician's statement and a signed medical agreement are required.)

8. Are your Commercial Driver's License privileges currently disqualified or subject to an out of service order?

9. Do you certify that you meet the "Qualifications of Drivers" portion of Part 391 of the Federal Motor Carrier Safety Regulations? If not, indicate why you are not subject to these qualifications.

10. Do you certify that you meet the hearing requirements outline in 49 CFR 391.41 (b)(11)?

I understand that my Social Security number will be disclosed to other states pursuant to the Commercial Motor Vehicle Act of 1986 (applies only to CDL applicants).

## NOTICE OF REQUIREMENT TO REGISTER

The Secretary of State is required to provide notice to the following persons of their duty to register under the Sex Offender Registration Act. Those convicted of any felony as defined by Section 2 of the Sex Offender Registration Act [730 ILCS 150/2].

NOTICE TO MALES AGE 18 TO 25: In accordance with Section P.A. 92-0117, your signature on this application certifies that you have already registered with the Selective Service System or authorizes the Secretary of State to transmit your registration information to the Selective Service System for the purposes of registration, if so required by law.

## DISCLOSURE STATEMENT

Under penalties of perjury, I swear or affirm that all information submitted by me regarding this application is true and no fictitious documents have been presented by me. I acknowledge that (a) disclosure of my Social Security number for the purpose of this application is required by 625 ILCS 5/6-106(b); and (b) my Social Security number may be redisclosed as allowed by the Federal Privacy Act for use by other governmental agencies as outlined in 625 ILCS 5/2-123(f), including the Illinois Department of Public Aid for utilization in child support enforcement.

---

### ORAL EXAM

REASON

| DRIVE(S) | | | |
|---|---|---|---|
| VEH SAFETY INSP - 1) PASS | | | |
| | 1 | 2 | |
| CLASS | PASS | FAIL | 2) PASS FAIL |
| PLATE | | | |
| STATE | | POINTS | POINTS |
| YEAR | FAIL | | DANG ACTION |
| MAKE | | | LACK OF CODE |
| CC'S | POINTS | | VIOLATION |
| | | | ACCIDENT |
| | | | OTHER |

FILE UPDATE BY _____

## MOTOR VOTER DECLINATION STATEMENT

I affirm that I was asked if I would like to register to vote under the National Voter Registration Act and I have declined.

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I hereby swear or affirm that the motor vehicle to be used for this road test is insured, pursuant to the provisions of the Illinois mandatory insurance law of the Illinois Vehicle Code or falls under one of the exempted categories.

PRINTED BY AUTHORITY OF THE STATE OF ILLINOIS. June 2006 — SSM / CDD DDPA-14.25 / REG. 0001 0001 750

*Exhibit A*

**Objection to the Assertion of
Beneficent Taxable Juristic Commercial Status
on Driver's License**

I, Mark J. Kronenberg, am applying for this Driver's License under objection and protest. The Driver's License is a Compelled License, existing as a coerced instrument signed by me to avoid incarceration as an unlicensed driver,[1] and is not to be used by the IRS or anyone else for the expansive purposes of evidence of either Residency or of Domiciliary, nor as evidence as entrance into Commerce, or of the taxable acceptance of Federal or State created benefits, or of an act of enfranchisement in any way, or of consent to be bound by any statute other than the Illinois State Motor Vehicle Statutes, 625 ILCS 5 - Illinois Vehicle Code.[2] This license is to be used for evidence of highway competency only.

My use of the highways is for private purposes only with no intent to experience commercial gain in any form whatsoever.

That since the license was compelled out of me with some DE MINIMIS tension in effect with a Substantive Right (The Right to Travel),[3] and since the avowed purpose of the license itself is to adduce Evidence of Competency,[4] then the extraneous collateral expectations of reciprocity in any area outside of the Illinois Vehicle Code it would otherwise create when left unchallenged, is to be terminated.

Furthermore, I have purchased an automobile liability insurance policy under objection and protest. The Illinois Vehicle Code requires a liability insurance policy or a bond meeting prescribed minimum amounts. Failure to comply with this requirement results in a penalty and the suspension of the license and vehicle registration.[5] This requirement violates my religious conviction that forbids insurance policies, bonds or any other form of surety.

Please cancel or rescind this license application within 30 days if the application of Commercial Status and/or Residency Status is deemed mandatory on all Drivers License holders.

Respectfully Submitted,

*Mark J. Kronenberg*

Mark James Kronenberg
31198 IL Rt 40
Milledgeville, Illinois

State of Illinois
County of Carroll

Signed before me on October 13, 2006 by Mark J. Kronenberg.

*Vicki Deets*

"OFFICIAL SEAL"
Vicki Deets
Notary Public, State of Illinois
My Commission Expires 07/24/2009

cc:

Jesse White
Secretary of State
State of Illinois
213 State Capitol
Springfield, IL 62706

Lisa Madigan
Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601

---

Notes:

Illinois Statutes criminalizing unlicensed driving:

{625 ILCS 5/6-101} {from Ch. 95 1/2, par. 6-101}
Sec. 6-101. Drivers must have licenses or permits.
  (a) No person, except those expressly exempted by Section 6-102,
shall drive any motor vehicle upon a highway in this State unless
such person has a valid license or permit, or a restricted driving
permit, issued under the provisions of this Act.

{625 ILCS 5/6-303} {from Ch. 95 1/2, par. 6-303}
Sec. 6-303. Driving while driver's license, permit or privilege to
operate a motor vehicle is suspended or revoked.
  (a) Any person who drives or is in actual physical control of a
motor vehicle on any highway of this State at a time when such
person's driver's license, permit or privilege to do so or the
privilege to obtain a driver's license or permit is revoked or
suspended as provided by this Code or the law of another state,
except as may be specifically allowed by a judicial driving permit,
family financial responsibility driving permit, probationary license
to drive, or a restricted driving permit issued pursuant to this
Code or under the law of another state, shall be guilty of a Class A
misdemeanor.

{625 ILCS 5/6-601} {from Ch. 95 1/2, par. 6-601}
Sec. 6-601. Penalties.
  (a) It is a petty offense for any person to violate any of the
provisions of this Chapter unless such violation is by this Code or
other law of this State declared to be a misdemeanor or a felony.
  (b) General penalties. Unless another penalty is in this Code or
other laws of this State, every person convicted of a petty offense
for the violation of any provision of this Chapter shall be punished
by a fine of not more than $500.
  (c) Unlicensed driving. Except as hereinafter provided a
violation of Section 6-101 shall be:
    1. A Class A misdemeanor if the person failed to obtain a
driver's license or permit after expiration of a period of
revocation.
    2. A Class B misdemeanor if the person has been issued a
driver's license or permit, which has expired, and if the period of
expiration is greater than one year; or if the person has never been
issued a driver's license or permit, or is not qualified to obtain a
driver's license or permit because of his age.

When addressing an evidentiary question -- such as the
appropriateness of assigning BURDENS OF PROOF to either government

or the Individual, under circumstances where the Individual does not want to do something but penal statutes intervene to change his reluctance -- Justice Frankfurter once said that:

*Nishikawa v. Dulles*, 356 U.S. 129, at 141 (1957), "Where an individual engages in conduct by command of a penal statute... to whose laws he is subject, the gravest doubt is cast on the applicability of the normal assumption -- even in a prosecution for murder (see LELAND VS. OREGON, 343 U.S. 790) -- that what a person does, he does of his own free will. When a consequence as drastic as [enfranchisement] may be the effect of such conduct, it is not inappropriate that the Government should be charged with proving that the Citizen's conduct was a response, not to the command of the statute, but to his own direction. The ready provability of the critical fact -- existence of an applicable [penal] law, particularly a criminal law, commanding the act in question -- provides protection against shifting the burden to the Government on the basis of a frivolous assertion of the defense of duress. Accordingly, the Government should, under the circumstances of this case, have the burden of proving by clear, convincing, and unequivocal evidence that the Citizen voluntarily performed an act causing [enfranchisement]."

A brief recap of some of the Right to Travel cases in the US Supreme Court:

*U.S. v. Guest*, 383 U.S. 745 (1966), the Court noted, "It is a right that has been firmly established and repeatedly recognized."

*Shapiro v. Thompson*, 394 U.S. 618 (1969), Justice Stewart noted in a concurring opinion that "it is a right broadly assertable against private interference as well as governmental action. Like the right of association, ... it is a virtually unconditional personal right, guaranteed by the Constitution to us all."

In *Kent v. Dulles*, 357 U.S. 116 (1958), the United States Secretary of State had refused to issue a passport, based on the suspicion that the plaintiff was going abroad to promote communism. Justice William O. Douglas wrote for the Court: "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. . . . Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, . . . may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values."

In *Saenz v. Roe*, 526 U.S. 489 (1999), Justice John Paul Stevens, writing for the majority, held that the United States Constitution protected three separate aspects of the right to travel among the states: the right to enter one state and leave another, the right to be treated as a welcome visitor rather than a hostile stranger protected by the Privileges and Immunities Clause in Article IV, §2, and for those who become permanent residents of a state, the

right to be treated equally to native born citizens (this is
protected by the 14th Amendment Privileges or Immunities clause.)

[4] *Delaware v. Prouse*, 440 U.S. 648, at 658 (1978), "Automobile
licenses are issued periodically to evidence that the drivers
holding them are sufficiently familiar with the rules of the road
and are physically qualified to operate a motor vehicle."

[5] Illinois Statutes requiring liability insurance:

(625 ILCS 5/7-601) (from Ch. 95 1/2, par. 7-601)
Sec. 7-601. Required liability insurance policy.
    (a) No person shall operate, register or maintain registration
of, and no owner shall permit another person to operate, register or
maintain registration of, a motor vehicle designed to be used on a
public highway unless the motor vehicle is covered by a liability
insurance policy.

(625 ILCS 5/7-606) (from Ch. 95 1/2, par. 7-606)
Sec. 7-606. Uninsured motor vehicles - suspension and reinstatement.
The Secretary shall suspend the vehicle registration of any motor
vehicle determined by the Secretary to be in violation of Section
7-601 of this Code, including any motor vehicle operated in
violation of Section 3-707, 3-708 or 3-710 of this Code by an
operator other than the owner of the vehicle.

Sec. 3-707. Operation of uninsured motor vehicle - penalty.
    (a) No person shall operate a motor vehicle unless the motor
vehicle is covered by a liability insurance policy in accordance
with Section 7-601 of this Code.
    (b) Any person who fails to comply with a request by a law
enforcement officer for display of evidence of insurance, as
required under Section 7-602 of this Code, shall be deemed to be
operating an uninsured motor vehicle.
    (c) Any operator of a motor vehicle subject to registration under
this Code who is convicted of violating this Section is guilty of a
business offense and shall be required to pay a fine in excess of
$500, but not more than $1,000. However, no person charged with
violating this Section shall be convicted if such person produces in
court satisfactory evidence that at the time of the arrest the motor
vehicle was covered by a liability insurance policy in accordance
with Section 7-601 of this Code. The chief judge of each circuit may
designate an officer of the court to review the documentation
demonstrating that at the time of arrest the motor vehicle was
covered by a liability insurance policy in accordance with Section
7-601 of this Code.
    (c-1) A person convicted of violating this Section shall also
have his or her driver's license, permit, or privileges suspended
for 3 months. After the expiration of the 3 months, the person's
driver's license, permit, or privileges shall not be reinstated
until he or she has paid a reinstatement fee of $100. If a person
violates this Section while his or her driver's license, permit, or
privileges are suspended under this subsection (c-1), his or her
driver's license, permit, or privileges shall be suspended for an

additional 6 months and until he or she pays the reinstatement fee.

(625 ILCS 5/3-708) (from Ch. 95 1/2, par. 3-708)
Sec. 3-708. Operation of motor vehicle when registration suspended
for non-insurance.

No person shall operate a vehicle the registration of which is
suspended pursuant to Section 7-606 or 7-607 of this Code.
    Any person convicted of violating this Section is guilty of a
business offense and shall be required to pay a fine of not less
than $1,000 and not more than $2,000. Any person convicted of a
second or subsequent violation of this Section is guilty of a Class
B misdemeanor and shall be required to pay a fine of not less than
$1,000 and not more than $2,000.